## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                    Bky. No. 18-50378

ERP IRON ORE, LLC,                                        Chapter 7

                              Debtor.

---

### OBJECTION OF LIQUIDITY SOLUTIONS, INC. TO (I) MOTION OF CERTAIN PETITIONING CREDITORS AND ERP IRON ORE, LLC FOR ENTRY OF AN ORDER DISMISSING THE INVOLUNTARY CHAPTER 7 PETITION AND FOR EXPEDITED RELIEF AND (II) ALTERNATIVE MOTION OF ALLEGED DEBTOR FOR AN ORDER ABSTAINING OR DISMISSING INVOLUNTARY CHAPTER 7 PETITION

---

Liquidity Solutions, Inc. ("LSI"), for its Objection (this "Objection") to the (i) *Motion of Certain Petitioning Creditors and ERP Iron Ore, LLC for Entry of an Order Dismissing the Involuntary Chapter 7 Petition and for Expedited Relief* [Docket No. 11] (the "Motion to Dismiss"), and (ii) *Alternative Motion of Alleged Debtor for an Order Abstaining or Dismissing Involuntary Chapter 7 Petition* [Docket No. 13] (the "Motion to Abstain" and, together with the Motion to Dismiss, the "Motions"),[1] respectfully represents:

### INTRODUCTION AND SUMMARY

1.       ERPI and the Petitioning Creditors have asked this Court to dismiss this case on the purported grounds that (i) ERPI has paid the Petitioning Creditors in full and (ii) dismissal would be in the best interests of ERPI's creditors (because such dismissal allegedly would permit ERPI to integrate its business with that of Mesabi Metallics). ERPI, however, cannot utilize section 303 of the Bankruptcy Code to dismiss this case solely by paying off certain creditors

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Motions, as applicable.

(like the Petitioning Creditors) and prejudicing other similarly situated creditors (like LSI and the other MLCs). Dismissal is also not appropriate under section 305 of the Bankruptcy Code, as the interests of ERPI's creditors would be best served by this case not being dismissed. There are several events of default presently outstanding under the MLC Note (as defined below) and ERPI has actively misled LSIs and the MLCs. Moreover, additional events of default and fraudulent transfers by ERPI (to the detriment of EPI's creditors) will occur under the MLC Note if the ERPI and Mesabi integration is permitted to move forward. This Court should retain the jurisdiction granted to it pursuant to the Bankruptcy Code. At minimum, the Court should hold an evidentiary hearing to get to the bottom of the troubling issues regarding ERPI.

2.      LSI is one of a number of "mechanics lien claimants" (each, an "MLC" and, collectively, the "MLCs") that are beneficiaries under that certain Promissory Note, dated as of January 27, 2017 (the "MLC Note"), in the aggregate original principal amount of $32,008,807.64, issued by ERP Iron Ore, LLC ("ERPI" or the "Debtor") to Lighthouse Management Corp. ("Lighthouse"), as administrative agent, for the benefit of the MLCs. The indebtedness owed under the MLC Note is secured by a perfected lien on all of ERPI's assets.[2]

3.      The MLC Note and related transaction documents (collectively, the "MLC Documents") were executed as part of a "global" settlement (the "MLC Settlement") among ERPI, the MLCs, and Magnetation, LLC ("Magnetation"), in that certain chapter 11 case captioned *In re: Magnetation, LLC*, Case No. 15-50307, pursuant to which ERPI acquired various "iron ore" operating assets from Magnetation that were secured by valid and perfected statutory "mechanics" liens in favor of the MLCs. The MLC Settlement, and entry into the MLC

---

[2] At present, LSI has not joined in the involuntary petition. LSI reserves the right, however, to join the involuntary petition, as LSI's secured claim under the MLC Note appears to be at least $15,000 undersecured, and ERPI's counsel has suggested, although LSI does not concede, that the MLC Note is undersecured far in excess of $15,000.

Documents, was premised, among other things, on the condition that ERPI would pay the MLCs pursuant to the terms of the MLC Note and that, until such payment occurred, the MLCs would retain their liens on ERPI's assets. The MLC Note has not been paid and, as a consequence, LSI and the other MLCs continue to hold perfected liens against all of ERPI's assets.

4.    The MLC Documents provide for various prepayment events, including, among other things, (i) any equity investments in, or loans to, ERPI, and (ii) any shipments of iron ore from the processing plants that ERPI owns (and against which the MLCs hold "all asset" liens). Upon the occurrence of any such event, ERPI is required under the MLC Documents to make payments to the MLCs according to certain formulae set forth in the MLC Note. The MLC Note also provides for various events of default (each of which would cause the immediate acceleration of the MLC Note indebtedness), including, among other things, (a) any sale of ERPI's assets pledged as collateral to the MLCs, (b) a merger of ERPI into another entity, and (c) any failure by ERPI to pay amounts owed under the MLC Note, including the prepayment amounts referenced above.

5.    LSI has been informed on multiple occasions (and as recently as June 25, 2018) by Tom Clarke, the controlling shareholder of ERPI, that Clarke or Chippewa (as defined below) directly or indirectly (i) provided funds to ERPI to enable ERPI to pays its debts or (ii) paid such debts on behalf of ERPI. Either action would constitute an equity investment in or loan to ERPI requiring prepayment(s) to the MLCs. To date, however, no payments have been made under the MLC Note, notwithstanding that such amounts are presently due and owing. The failure to make such prepayments constitutes an event of default under the MLC Note, rendering the entire amount thereunder due and payable in full as of the date hereof.

6.      This case was commenced by several parties (the "Petitioning Creditors")[3] who alleged in connection with such filing that the various prerequisites for an involuntary chapter 7 case were met here, including that the Debtor was and is not paying its debts when they became due. LSI understands that such allegation is true and correct.[4] As noted above, one or more events of default have already occurred under the MLC Note. In addition, should the involuntary case be dismissed and ERPI is thereby permitted to move forward with the "integration" of its business with Mesabi Metallics (a former affiliate of Essar Steel) and the associated $650 million exit financing - - which ERPI has stated is the "end goal" of its efforts to have this case dismissed - - consummation of such transactions would cause additional or further events of default under the MLC Note. Specifically, such transactions would involve a merger or integration of ERPI with Mesabi Metallics or a sale of assets previously pledged as collateral to the MLCs. Moreover, and significantly, ERPI has stated that the Mesabi combination requires that ERPI provide Mesabi's new lenders with (i) a lien on all of ERPI's assets and/or (ii) a guarantee of the new Mesabi debt. *Any such value provided to the new lenders by ERPI would constitute fraudulent transfers under applicable insolvency laws*.

7.      In the Motion to Dismiss filed by the Petitioning Creditors and ERPI, movants seek to dismiss this case "consensually," solely on the purported basis that the unsecured claims of the Petitioning Creditors have been paid in full by ERPI following the petition date (while other creditors of the Debtor, including LSI and the other MLCs, have not been and would not be paid). LSI respectfully submits that Section 303 of the Bankruptcy Code does not provide or allow for such a dismissal. ERPI may not "cherrypick" certain creditors without regard to

---

[3] The "Petitioning Creditors" are (i) Glacier Park Iron Ore Properties LLC, (ii) Chester Company Limited, and HT Surface and (iii) Mineral LLC. Minnesota Power has also, apparently, joined in the involuntary petition.

[4] LSI has no knowledge of the amount or validity of the Petitioning Creditors' unsecured claims against ERPI.

4

payment priority, among other things, in order to remove itself from this Court's jurisdiction. As noted above, LSI and the other MLCs hold due and payable secured claims against ERPI which have priority over the claims allegedly held on the petition date by the Petitioning Creditors. In addition, in requesting dismissal of this case, the movants ask this Court to ignore or disregard the troubling allegations contained in the involuntary petition and raised herein (without the benefit of an evidentiary hearing to determine the legitimacy of such allegations).

8.      In addition to the Motion to Dismiss, ERPI also filed the Motion to Abstain.[5] In the Motion to Abstain, ERPI asks this Court to abstain from hearing (or dismiss) this case pursuant to Section 305 of the Bankruptcy Code, on the purported grounds that abstention (or dismissal) would be in the best interests of ERPI's creditors and ERPI, and that any issues relating to ERPI should more properly be addressed under non-bankruptcy law (*i.e.*, in a non-bankruptcy forum). In short, ERPI argues that dismissal of this chapter 7 case is necessary to enable ERPI and Mesabi Metallics, LLC ("Mesabi") to consummate a transaction whereby ERPI and Mesabi would be "integrated" together and Mesabi (or the integrated entity) would consummate a secured loan financing in the aggregate amount of approximately $650 million (the "Mesabi Financing"). ERPI suggests that, absent consummation of such transaction, including the Mesabi Financing, ERPI (and/or the integrated business) may not survive as a viable entity.[6] Indeed, in many respects, the Motion to Abstain resembles a "liquidation" motion by ERPI rather than a motion to dismiss, in that ERPI makes it clear that ERPI's business has significantly underperformed and is already, or may become, insolvent.

---

[5] Although ERPI asks this Court to "abstain" from hearing this case under Section 305 of the Bankruptcy Code, the relief requested by ERPI appears to be dismissal of the case.

[6] ERPI also states, however, in the Motion to Abstain that more than $100 million has been paid to ERPI's creditors since ERPI acquired the Magnetation assets in early 2017 and that the Petitioning Creditors' unsecured claims have been paid in full.

9.     The "integration" of the ERPI and Mesabi businesses cannot occur, however, without payment of the MLC Note. Specifically, as noted above, two material aspects of the contemplated "integration" between ERPI and Mesabi are that (i) ERPI provide a guaranty of the Mesabi Financing Indebtedness and/or (ii) ERPI grant liens on all of ERPI's assets (on which LSI and the MLCs have perfected liens) to the Mesabi Financing noteholders. It is not clear whether ERPI will receive any consideration in connection with such grants. As a consequence, if the ERPI and Mesabi businesses are "integrated" together, through a merger or sale of ERPI's assets to Mesabi (and including the contemplated guaranty and lien grant), an event of default will occur under the MLC Note.  In addition, because ERPI (and its creditors, who are the true parties in interest, due to ERPI's apparent insolvency) will not receive reasonably equivalent value for such integration (through transfer, lien grant, guaranty, or otherwise), *any value transferred to Mesabi, the "integrated business" or the Mesabi Financing lenders would constitute fraudulent transfers subject to clawback by ERPI's creditors*, hence the significant need for this Court's jurisdiction.

10.     In addition to the existing and potentially forthcoming events of default and fraudulent conveyances described above, which are troubling enough in their own right and warrant retention of this case by the Court, LSI believes that ERPI has intentionally deceived the MLCs (including LSI), in order to stop LSI and the MLCs from taking actions to enforce their rights (in this case and otherwise). Specifically, LSI has been informed on several occasions by Tom Clarke, controlling shareholder of ERPI and "Chippewa," the plan sponsor under the Mesabi plan (and the acquirer of the Mesabi business), that the MLC Note would be paid in full upon consummation of the Mesabi Financing. *See Affidavit of Jeff Caress* attached hereto as

Exhibit A (the "Caress Affidavit").[7] Notwithstanding such representations by Clarke and/or ERPI, following the filing of the Motions, LSI and its counsel were told by ERPI's counsel that ERPI did not intend to pay the MLC Note upon consummation of the Mesabi Financing. LSI believes that Clarke and ERPI materially misinformed LSI and other MLCs regarding both ERPI's intention (or lack thereof) to pay the MLC Note and the existence of defaults under the MLC Note in order to stop LSI and other MLCs from taking action that could potentially jeopardize consummation of the Mesabi Financing.

11.    To be clear, LSI does not seek to hamper or endanger the Mesabi Financing. Indeed, LSI would like nothing more than for the Mesabi Financing to move forward and for ERPI's creditors (including the MLCs) to be paid in connection therewith. The Mesabi Financing, however, cannot be consummated without LSI and the other MLCs being paid in full under the MLC Note. There are both existing defaults outstanding under the MLC Note and defaults that will occur if the integration of the ERPI and Mesabi businesses is consummated. An intentional and constructive fraudulent conveyance would likewise occur, rendering the Mesabi Financing lenders liable to ERPI's creditors (including LSI and the other MLCs) for clawback damages. Simply put, if the Mesabi Financing and related integration is consummated, it can only be done on the condition that the MLC Note is paid.

12.    ERPI (and the Petitioning Creditors) have asserted in the Motions that this Court is not the most appropriate forum to adjudicate the numerous concerning issues relating to ERPI and Clarke, its controlling shareholder. LSI respectfully submits that this Court, with its equitable powers, is **precisely** the best forum in which these issues should be adjudicated. ERPI

_____

[7] Clarke has also informed LSI and the other MLCs on multiple occasions that Clarke (or an entity controlled by him) either funded money to ERPI in order for ERPI to pay its debts, or paid ERPI's creditors directly on ERPI's behalf. *See Caress Affidavit.*

and its representatives/affiliates have materially misled LSI and the other MLCs, and attempted to "bribe," for lack of a better term, certain creditors at the expense of others to have this case dismissed. Events of default have already occurred under the MLC Note, which ERPI has both failed to disclose and failed to satisfy. In addition, if this case is dismissed, as ERPI has requested, consummation of the Mesabi Financing and the integration of the ERPI and Mesabi businesses would both cause a default under the MLC Note and give rise to fraudulent transfer liability for the Mesabi Financing parties. This Court is the forum best suited to address each of the foregoing.

13.    LSI respectfully requests that the Court deny the Motions. If the Court does not deny the Motions outright, at minimum, the Court should adjourn the hearing on the Motions so that the Court can conduct an evidentiary hearing to determine whether the issues alleged by LSI and asserted in the involuntary petition have merit and allow LSI and other MLCs appropriate and limited discovery on the issued discussed herein.

## ADDITIONAL BACKGROUND

14.    In 2015, Magnetation LLC ("Magnetation") filed a petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota, commencing case number 15-50307. Thereafter, the MLCs, including Scheck Corporation (assignor of the claim held by LSI), asserted secured "mechanics lien" claims arising from various services provided to Magnetation in connection with the operation of Magnetation's business. Certain MLCs also commenced foreclosure actions (the "MLC Foreclosure Actions") against Magnetation, seeking turnover of the assets securing their mechanics liens.

15.    In 2016, Tom Clarke ("Clarke"), an individual that had recently began (in 2015) acquiring various coal mining and other mineral extraction and processing businesses across the

United States, formed ERPI. Clarke formed ERPI for the purpose of acquiring the Magnetation assets located in Minnesota and, upon information and belief, represented his opening step in attempting to "corner" a significant portion of the Minnesota iron extraction and processing market.

16.     Clarke's original proposal to acquire the Magnetation assets contemplated that ERPI would secure third party financing, with which Clarke proposed to pay a portion of the MLCs aggregate "mechanics lien" claims in exchange for, among other things, dismissal of the MLC Foreclosure Actions and acceptance by the MLCs of "delayed" payment on the balance of the MLC's claims under a secured note to be issued by ERPI. Clarke/ERPI memorialized this intent, along with other terms of a proposed "global settlement" of creditor claims against Magnetation, in late 2016 in a term sheet (the "Magnetation Term Sheet") which was approved by the Minnesota bankruptcy court presiding over the Magnetation chapter 11 case.

17.     For months following entry into the Magnetation Term Sheet, Clarke/ERPI (directly and through representatives) repeatedly informed the MLCs, and otherwise led them to believe, that the third party financing was an integral part of the "global settlement" and that the MLCs would be paid a significant cash payment upon acquisition of the Magnetation assets by ERPI. In January 2017, however, on the verge of closing of the Magnetation acquisition, ERPI informed the MLCs (including LSI) for the first time that the third party financing was not contemplated to occur, but that ERPI intended to consummate its acquisition of the Magnetation assets regardless. As described below, ERPI's eleventh hour reversal would not be the first "bait and switch" tried by Clarke and ERPI with respect to the MLCs.

18.     Upon being informed by ERPI that no cash payment would be made to the MLCs upon closing of the Magnetation asset acquisition, LSI informed ERPI that it would not accept

the terms of the "global settlement" unless ERPI complied with the terms of the Bankruptcy Court-approved Magnetation Term Sheet. ERPI then asked the Bankruptcy Court to compel LSI to execute the "global settlement" closing documents over LSI's objection. The Bankruptcy Court denied ERPI's request.

19.     Thereafter, LSI and ERPI negotiated terms whereby ERPI, or Clarke on ERPI's behalf, would fund $500,000 into an escrow account for the benefit of LSI. Such escrowed amounts would be set off or credited against the amounts owed to LSI under the terms of the secured note ERPI would issue to the MLCs. Such payments were ultimately made by Clarke or ERPI.

20.     On January 27, 2017, ERPI closed the transaction whereby it acquired substantially all of Magnetation's assets, including the numerous "operating" assets against which the MLCs had perfected "mechanics" liens. In connection with, and as a condition to the acquisition of the Magnetation assets and the "global settlement," ERPI issued that certain secured Promissory Note, dated January 27, 2017 (the "MLC Note") to Lighthouse Management Corp. ("Lighthouse"), as administrative agent, for the benefit of the MLCs. The MLC Note matures in December 2020 and, until paid in full, the obligations thereunder are secured by all assets of ERPI.  In connection with the closing, the MLCs dismissed the MLC Foreclosure Actions and delivered "lien releases" into an escrow held by Lighthouse, which releases would be delivered upon payment in full of the MLC Note.

21.     The MLC Note contains various events of default (each causing an acceleration of the amount owed thereunder). Specifically, an event of default occurs if, among other things:

> Maker fails to pay when due the principal and interest balance of this Note on the Maturity Date, and, with respect to any other payment of principal and interest, Maker fails to pay such principal

and interest and such failure shall continue for a period for five (5) consecutive Business Days; *See* MLC Note, at 6(a);

[there occurs] the sale of any material portion of the Pledged Collateral, except as permitted under the Security Agreement or with written consent of the Holder; *See* MLC Note, at 6(b);

or

[there occurs] the sale of all or substantially all of the assets of ERPI, or a merger or consolidation of ERPI with or into another party where ERPI is not the survivor, without the Holder's written consent. *See* MLC Note, at 6(c).

22.    In addition to the obligation to pay the full indebtedness upon an event of default or at maturity, the MLC Note contains several prepayment provisions, pursuant to which ERPI is required to make payments to the MLCs pursuant to certain specified formulae under the MLC Note if certain conditions occur. Specifically, (i) Section 3(b)I provides that ERPI must make various payments to the MLCs if (A) a third party equity investor invests less than $15 million into ERPI, and (B) any equity investments in, or loans to, ERPI are made in amounts in excess of $15 million, and (ii) Section 3(b)IV of the Note provides that payments must be made to the MLCs on a monthly basis if ERPI ships iron ore concentrate from any properties owned by ERPI located in Itasca County. *See* MLC Note, at 3(b).

23.    As of the date hereof, ERPI has not made any prepayments under the MLC Note, except for the payment to LSI.[8]

24.    In 2016, Mesabi Metallics Company LLC (along with its affiliated debtors, "Mesabi") filed a petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. In June 2018, Chippewa Capital Partners, LLC

---

[8] On the closing date of the MLC Note, ERPI agreed to make monthly payments to LSI in the aggregate amount of $500,000, which amounts would be set off against the amounts owed to LSI under the MLC Note. ERPI made such payments in early 2017, which have been credited against the aggregate amount owed to LSI.

("Chippewa"), a newly-formed entity controlled by Clarke and an affiliate of ERPI, acquired
Mesabi pursuant to a plan confirmed in the Mesabi chapter 11 cases (the "Mesabi Plan"). The
Mesabi Plan and related documents requires, among other things, that (i) ERPI be "integrated"
into Mesabi, and (ii) ERPI's assets be "delivered" to Mesabi under a secured guarantee or a
combination with Mesabi on or before June 30, 2018. *See* Motion to Abstain, pp. 2-3. In
addition, the Mesabi Plan provides that Chippewa (or Mesabi) obtain secured financing in the
aggregate amount of approximately $650 million, and that the lenders in such financing receive
liens against the ERPI assets.

25.    Upon information and belief, and as stated by ERPI in the Motion to Abstain, the
acquisition of Mesabi and attempted integration of ERPI into Mesabi (including the Mesabi
Financing) constitutes Clarke's second step in his attempt to obtain a significant presence in the
Minnesota iron ore extraction/processing market.

26.    Since the MLC Note was issued by ERPI, the MLCs and ERPI have had a number
of discussions regarding the ERPI business and other related matters. In such discussions, at
multiple times, Clarke or other representatives of ERPI have told the MLCs that ERPI would pay
the MLC Note in full upon consummation of the Mesabi Financing. *See Caress Affidavit*. Clarke
has also stated, on several occasions, that he (or an entity controlled by or affiliated with him)
had either invested money in ERPI to permit ERPI to pay its creditors or has paid such creditors
directly on ERPI's behalf. *See Caress Affidavit*.

27.    On May 25, 2018, this involuntary case was commenced by the Petitioning
Creditors. In connection with the involuntary petition, the Petitioning Creditors alleged that the
various requirements for commencement of an involuntary case were met, including, among

other things, that ERPI generally was not paying its debts as they became due. LSI has no reason to believe that the allegations made in the involuntary petition are not true and correct.

28.     On June 12, 2018, ERPI and the Petitioning Creditors filed the Motion to Dismiss and ERPI filed the Motion to Abstain. In the Motions, ERPI concedes that the Petitioning Creditors have been paid in full and that more than $100 million of ERPI obligations have been satisfied since early 2017. The Motions do not state from where the funds used to pay such amounts came. On June 25, 2018, however, Clarke informed LSI and the other MLCs that approximately $34 million had been invested in or loaned to ERPI by Clarke and/or Chippewa following January 2017 to permit ERPI to pay its creditors.

29.     Following the filing of the Motions, LSI and its counsel contacted counsel for ERPI and Clarke seeking assurances that the MLC Note would be paid in full upon consummation of the Mesabi Financing, as LSI had previously been informed. ERPI's counsel informed LSI and its counsel at that time that no payments would be made to the MLCs upon consummation of the Mesabi Financing.

30.     LSI believes that ERPI does not intend to pay the MLC Note upon consummation of the Mesabi Financing (and concomitant integration of ERPI's business with Mesabi), notwithstanding that (i) events of default have already occurred under the MLC Note and (ii) the consummation of the Mesabi Financing and Mesabi integration would cause an event of default under the MLC Note. Moreover, LSI believes that, if ERPI grants a security interest on ERPI's assets or provides a guaranty to the lenders in the Mesabi Financing, as is required under the Mesabi Plan, such grant would constitute a fraudulent conveyance by ERPI.

31.     LSI respectfully submits that the requirements for dismissal of this case under Sections 303 and 305 of the Bankruptcy Code have not been met and that dismissal is not

13

warranted, given the troubling circumstances surrounding ERPI. LSI also has not had the opportunity to conduct discovery regarding the issues raised in the Motions and this case. LSI requests that the Court permit the parties to conduct discovery and hold an evidentiary hearing to evaluate such concerns.

## ARGUMENT

### A.    EVENTS OF DEFAULT HAVE ALREADY OCCURRED UNDER THE MLC NOTE

32.    Under the MLC Note, an event of default occurs if, among other things:

> Maker fails to pay when due the principal and interest balance of this Note on the Maturity Date, and, with respect to any other payment of principal and interest, Maker fails to pay such principal and interest and such failure shall continue for a period for five (5) consecutive Business Days; *See* MLC Note, at 6(a)…

33.    In addition to the obligation to pay the full indebtedness upon an event of default or at maturity, the MLC Note contains several prepayment provisions, pursuant to which ERPI is required to make payments to the MLCs pursuant to certain specified formulae under the MLC Note if certain conditions occur. Specifically, (i) Section 3(b)I provides that ERPI must make various payments to the MLCs if (A) a third party equity investor invests less than $15 million into ERPI, and (B) any equity investments in, or loans to, ERPI are made in amounts in excess of $15 million, and (ii) Section 3(b)IV of the Note provides that payments must be made to the MLCs on a monthly basis if ERPI ships iron ore concentrate from any properties owned by ERPI located in Itasca County. *See* MLC Note, at 3(b).

34.    Clarke, controlling shareholder and representative of ERPI, has informed LSI and the other MLCs on multiple times that Clarke directly or indirectly either advanced money to ERPI to permit ERPI to pay its creditors or paid ERPI's creditors directly. Moreover, the Motions state that more than $100 million of ERPI creditor claims have been paid since January

14

2017 and that the alleged unsecured claims of the Petitioning Creditors have been paid. All such

payments have apparently been made while ERPI has not, according to ERPI, been operating.[9]

If ERPI's creditors have been paid in the amounts alleged by ERPI, and the funds used to make

such payments did not arise in their entirety from ERPI's operations, but rather by another party

(whether Clarke or otherwise), then an event of default has occurred under the MLC Note. Such

payments, by definition, constitute either equity investments in or loans to ERPI.

**B.**     **IF THE MESABI PLAN IS CONSUMMATED, ADDITIONAL EVENTS OF DEFAULT
WILL OCCUR UNDER THE MLC NOTE**

35.     The MLC Note also provides that an event of default occurs if:

> [there occurs] the sale of any material portion of the Pledged
> Collateral, except as permitted under the Security Agreement or
> with written consent of the Holder; *See* MLC Note, at 6(b);
>
> or
>
> [there occurs] the sale of all or substantially all of the assets of
> ERPI, or a merger or consolidation of ERPI with or into another
> party where ERPI is not the survivor, without the Holder's written
> consent. *See* MLC Note, at 6(c).

36.     ERPI has conceded that its principal intent in seeking to dismiss this case is to

permit ERPI to move forward with consummation of the Mesabi Plan. The Mesabi Plan requires

that the ERPI assets be "integrated" into the Mesabi assets, through merger or a sale of ERPI's

assets to Mesabi (or the integrated entity). In either case, such consummation would constitute an

event of default under the MLC Note.

**C.**     **CONSUMMATION OF THE MESABI PLAN WILL
CAUSE FRAUDULENT TRANSFER LIABILITY**

37.     As noted above, if this case is dismissed and ERPI is permitted to move forward

with the Mesabi Financing, ERPI intends to "integrate" ERPI's assets with those of Mesabi. In

---

[9] No "iron ore pellet" prepayments under the MLC Note have been made pursuant to Section 3(b)IV.

addition to the merger of ERPI into another entity and/or the sale of ERPI's assets, such "integration" also involves a potential incurrence of a guaranty by ERPI of the Mesabi Financing debt and/or a grant of a lien by ERPI on ERPI's assets, each in favor of the new Mesabi Financing lenders.

38.     The Petitioning Creditors have alleged in the involuntary petition that ERPI is not paying its debts when they become due. ERPI has certainly not paid LSI and the MLCs on account of the events of default under the MLC Note described herein. LSI respectfully submits that there is, therefore, cause to believe that ERPI is insolvent. LSI also believes that ERPI will not receive value, let alone reasonably equivalent value, in exchange for the contemplated guaranty or lien grant under the Mesabi Plan. If ERPI does not receive reasonably equivalent value for such transfers, such transfers would constitute fraudulent conveyances under applicable bankruptcy and state law.

### D.      LSI HAS "STANDING" TO OBJECT TO THE REQUESTED DISMISSAL

39.     ERPI's counsel has informed LSI and its counsel that ERPI believes that LSI does not have "standing" to object to the dismissal of this case. ERPI's argument is without merit. LSI is an express third party beneficiary under the MLC Note and holds a secured claim against ERPI thereunder. All creditors of a debtor, whether secured or unsecured, have standing to object to a proposed dismissal, and they need not meet the qualifications necessary to initiate or join in an involuntary petition to object to dismissal under Bankruptcy Code section 303(j). *In re Savannah Yacht Corp.*, 2004 WL 6044671, at *4 (Bankr. S.D. Ga. Mar. 30, 2004); *In re Taub*, 150 B.R. 96, 97 (Bankr. D. Conn. 1993). LSi unquestionably has standing to object to the Motions.

E.  **THIS CASE SHOULD NOT BE DISMISSED UNDER SECTION 303**

40.    ERPI and the Petitioning Creditors have requested that this case be dismissed under Section 303 of the Bankruptcy Code on the sole grounds that ERPI has paid the Petitioning Creditors following the petition date. Section 303 of the Bankruptcy Code, however, does not permit debtors to "cherrypick" certain creditors at the expense of others as a means to having an involuntary case dismissed. *See In re Warren*, 181 B.R. 136 (Bankr. N.D. Ala. 1995) (a settlement between the debtor and petitioning creditors providing for dismissal cannot be prejudicial to similarly situated creditors); *see also In re NRG Energy, Inc.*, 294 B.R. 71 (Bankr. D. Minn. 2003). Here, the Debtor allegedly paid the Petitioning Creditors without regard to payment priority and the Debtor's obligations to its other creditors (including LSI and the MLCs, who hold secured claims that are presently due and payable). Such payment should not be permissible grounds for dismissing this case, particularly when there are myriad concerning issues relating to the Debtor and its actions relating to the MLC Note.

41.    Moreover, the Court should not dismiss this case when there appear to be significant questions regarding the allegations made in connection with the involuntary petition. The Petitioning Creditors have alleged, among other things, that ERPI was not paying its debts when they became due. LSI submits that the Court should not abdicate the jurisdiction bestowed upon it under the Bankruptcy Code, and should take this opportunity to inquire as to the legitimacy of such allegations. Particularly under the present circumstances, where ERPI has made material misrepresentations to LSI and the other MLCs and ERPI has failed to pay amounts owed under the MLC Note as a result of the defaults that have occurred, retention of jurisdiction by this Court is necessary. ERPI should not be permitted to "pay off" the Petitioning Creditors to make this case, and adjudication of the issues raised herein, go away.

17

**B.**    <u>THIS CASE SHOULD NOT BE DISMISSED UNDER SECTION 305</u>

42.    ERPI has also argued that the Court should "abstain" from hearing this case under Section 305 of the Bankruptcy Code, on the purported basis that abstention would be in the best interests of ERPI and its creditors. ERPI's argument is, in fact, a thinly veiled request that the Court dismiss this case to allow ERPI to move forward with the Mesabi Financing and integration of the ERPI and Mesabi businesses without paying the MLCs what they are owed under the MLC Note.

43.    As described above, LSI would like nothing more than for the Mesabi Financing to occur and the "integrated" ERPI and Mesabi business to move forward with the best chance of success. Such integration, however, would cause events of default under the MLC Note and fraudulent conveyances under applicable state and federal insolvency law. The integration cannot occur without ERPI paying the MLC Note in full. LSI respectfully submits that it would not be in the best interests of ERPI's creditors to permit ERPI to (i) continue to fail to honor its obligations under the MLC Note for the defaults that have previously occurred and are outstanding and (ii) move directly into a transaction that would cause additional defaults under the MLC Note. Moreover, it would be in the interests of all of ERPI's creditors, given the troubling circumstances and issues surrounding ERPI and Clarke, for this Court to retain jurisdiction over this case and "get to the bottom" of the situation. The Court should not dismiss this case and delay such adjudication or review to some unspecified later date.

18

## CONCLUSION

44.     LSI does not want to jeopardize the Mesabi Financing or the integration of the ERPI and Mesabi businesses. LSI submits, however, that such integration cannot occur without LSI and the other MLCs being paid in full under the MLC Note. Although LSI does not seek to stand in the way of the financing that may enable ERPI to become a viable operating enterprise, LSI is also very concerned that ERPI does not intend to pay the MLC Note if this case is dismissed and the integration is consummated. LSI is also very troubled by the misrepresentations that ERPI and Clarke have made. Indeed, Clarke and ERPI have a troubling history of misleading LSI and the MLCs regarding their intentions (as they did in connection with ERPI's acquisition of the Magnetation assets, and as they've done in recent months in connection with the Mesabi integration). LSI respectfully submits that this Court should not dismiss this case and should hold an evidentiary hearing to determine, among other things, whether (i) the Debtor is not generally paying its debts as they become due, (ii) any events of default have occurred, or are anticipated to occur, under the MLC Note, (iii) ERPI or its representatives (including Clarke) have misled or deceived LSI and the MLCs, and/or (iv) LSI and other MLCs (and other creditors) are eligible petitioning creditors herein.

## RESERVATION OF RIGHTS

45.     LSI reserves its rights to amend and/or supplement this Objection. LSI also expressly requests that the Court adjourn the hearing on the Motions to permit LSI to conduct discovery with respect to the allegations contained herein and in the Petitioning Creditors' petition.

WHEREFORE, LSI hereby requests that the Court enter an Order (i) either (a) denying the Motions and not dismissing this case, or (b) adjourning the hearing on the Motions to permit LSI to conduct discovery and/or for the Court to hold an evidentiary hearing, and (ii) granting such other and further relief as the Court deems just and necessary.

Dated:  June 27, 2018                      FAFINSKI MARK & JOHNSON, P.A.

                                           By:____/s/  David E. Runck_____
                                                David E. Runck, #0289954
                                                Lorie A. Klein, #0311790
                                           400 Flagship Corporate Center
                                           775 Prairie Center Drive
                                           Eden Prairie, Minnesota 55344
                                           Telephone:  (952) 995-9500
                                           Facsimile:  (952) 995-9577
                                           david.runck@fmjlaw.com
                                           lorie.klein@fmjlaw.com

                                           and

                                           Paul N. Silverstein (*pro hac vice* pending)
                                           Jeremy B. Reckmeyer (*pro hac vice* pending)
                                           HUNTON ANDREWS KURTH LLP
                                           450 Lexington Avenue, 15th Floor
                                           New York, New York 10017
                                           Telephone: (212) 850-2800
                                           Facsimile: (212) 850-2929

                                           ATTORNEYS FOR LIQUIDITY SOLUTIONS, INC.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                    Bky. No. 18-50378

ERP IRON ORE, LLC,                                        Chapter 7

                          Debtor.

---

### UNSOWN CERTIFICATE OF SERVICE

---

I, David E. Runck, declare under penalty of perjury that on June 27, 2018, I caused the following document:

**OBJECTION OF LIQUIDITY SOLUTIONS, INC. TO (I) MOTION OF CERTAIN PETITIONING CREDITORS AND ERP IRON ORE, LLC FOR ENTRY OF AN ORDER DISMISSING THE INVOLUNTARY CHAPTER 7 PETITION AND FOR EXPEDITED RELIEF AND (II) ALTERNATIVE MOTION OF ALLEGED DEBTOR FOR AN ORDER ABSTAINING OR DISMISSING INVOLUNTARY CHAPTER 7 PETITION**

to be served electronically with the Clerk of Court through ECF, and that the above document(s) will be delivered by automatic email notification to all ECF participants participating in this case, and this constitutes service or notice to those participants under Local Rule 9006-1(a).

Dated:  June 27, 2018                    FAFINSKI MARK & JOHNSON, P.A.

                                         /e/ David E. Runck
                                         David E. Runck, #0289954
                                         400 Flagship Corporate Center
                                         775 Prairie Center Drive
                                         Eden Prairie, Minnesota 55344
                                         Telephone: (952) 995-9500
                                         Facsimile: (952) 995-9577
                                         david.runck@fmjlaw.com

                                         ATTORNEYS FOR LIQUIDITY SOLUTIONS, INC.