UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                                                  Chapter 7
                                                                                                     BKY 18-50378 (WJF)
ERP Iron Ore, LLC,

                Debtor.

**ORDER AUTHORIZING SALE OF CERTAIN OF THE DEBTOR'S PROPERTY FREE AND CLEAR OF LIENS, ENCUMBRANCES AND OTHER INTERESTS**

This matter came before the court on the motion of Nauni Jo Manty, the chapter 7 trustee of the bankruptcy estate of ERP Iron Ore, LLC, for an order authorizing her to sell certain of the debtor's assets free and clear of liens, encumbrances and other interests. Based upon all of the files, records and proceedings herein,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT:**

1. As stated on the record, the relief granted is in the best interest of the estate, all creditors and other interested parties in this case.

2. The sale of the property to MJM Minerals, LLC ("MJM") is a good-faith transaction within the meaning of 11 U.S.C. § 363(m), and MJM is found not to be a continuation of, or a successor to, debtor or any entity owned by debtor.

3   It appears that actual written notice of the sale motion, and a reasonable opportunity to object or be heard with respect to the sale motion and the relief requested therein, has been afforded to all known interested entities and parties, including, but not limited to the following entities and parties (the "Notice Parties"): (i) the United States Trustee for the District of Minnesota; (ii) all parties who have expressed a written interest in some or all of the Assets; (iii) all known holders of liens, encumbrances, and other claims secured by the Assets; (iv) the

Case 18-50378    Doc 477    Filed 07/17/19    Entered 07/17/19 15:22:15    Desc Main
            Document      Page 2 of 9

District Counsel and the District Director of the Internal Revenue Service; (v) the Collection Division of the Minnesota Department of Revenue; (vi) all applicable state and local taxing authorities; (vii) all of the creditors listed on the Debtor's matrix filed under Local Rule 1007-2(a); (viii) the United States Attorney for the District of Minnesota; (ix) the United States Bureau of Land Management; (x) each governmental agency that is an interested party with respect to the sale and transactions proposed thereunder; and (xi) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 and Local Rules 6004-1(e), 2002-1(b) and 2002-4(a).

4. The sale of the assets identified below as the Plant 2 assets constitutes the highest and best offer for those assets, and will provide a greater recovery for the debtor's estate than would be provided by any other available alternative. The trustee's determination that the transaction with MJM constitutes the highest and best offer for the Plant 2 assets constitutes a valid and sound exercise of the trustee's business judgment.

**IT IS HEREBY ORDERED:**

1. The motion for sale of certain of the debtor's property free and clear of liens, encumbrances and other interests is granted.

2. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the trustee is authorized to sell the property of the debtor described herein free and clear of any and all liens, encumbrances and other interests to MJM for $1,700,000.00, including the following real property (the "Real Property"):

The identified parcel of real property located in Itasca County, Minnesota, legally described as follows:

**Parcel No. 97-034-1301**

>That part of the Southwest Quarter of the Northeast Quarter, Section 34, Township 56 North, Range 24 West, described as follows: Assuming the west property line thereof to bear true north and beginning at the northwest corner thereof and proceeding thence due south along the said west property line a distance of 350 feet to the point of beginning; thence due east a distance of 500 feet; thence due south a distance of 360 feet; thence due east a distance of 600 feet; thence due north a distance of 360 feet; thence due east a distance of 220.6 feet, more or less, to a point on the east property line thereof; thence southerly along said east property line to the southeast corner thereof; thence westerly along the south property line thereof to the southwest corner there; and thence northerly along the west property line thereof to the point of beginning.

3.      The Real Property includes all of the trustee's right, title, and interest in all of the buildings, fixtures, improvements, leases, maps, reports, plans, and other such material having to do with the Real Property, including all land use entitlements, governmental permits and allocations, and other such governmental and agency approvals as may exist concerning the Real Property. The Real Property also includes all personal property of every kind which are or were used in connection with the ownership, mining, use, or occupancy of the Real Property or that are now or hereafter located on, attached to, incorporated in (regardless of where located), or affixed to the Real Property (the "Personal Property").  For the avoidance of doubt, sale to MJM includes the following Personal Property: (i) 980K Caterpillar Wheel Loader, S/N: W7K01913; (ii) 140M Caterpillar Grader, S/N: 0B9M00479 and (iii) D6T Caterpillar Bulldozer, S/N: ZJB00246.

4.      MJM is authorized, but is not obligated, in its sole discretion, to request that the trustee assume and assign, subject to bankruptcy court approval, any and all contracts, easements, licenses, and leases, including any and all rights to mine minerals, that are held by the estate, in any way related or appurtenant to the Real Property (collectively, the "Assigned Contracts").

5. All liens, encumbrances or other interests on the property sold, including without limitation any liens, encumbrances or other interests held by Wilmington Savings Fund Society, FSB, as Indenture Trustee, Merida National Resources, LLC, Progress Rail Leasing Corporation, and Lighthouse Management Group, Inc., as administrative agent for certain mechanic's and/or miner's lien claimants, shall attach to the proceeds of the sale of the property with the same dignity, priority and extent as held against the property prior to the sale and such proceeds shall be held by the trustee in a segregated account pending further order of the court. Notwithstanding anything set forth in the trustee's sale motion or herein, any issues as to the characterization of the property as real or personal property and as to priority of the secured creditors that assert liens in and to such property can be determined at a later time and all of the secured creditors' rights as to such issues are hereby fully reserved, including any rights of offset or other claims and defenses that may be asserted by the trustee. The trustee's rights, if any, to surcharge are preserved.

6. The trustee is authorized to use the sale proceeds to pay all expenses of the sale within thirty days of closing.

7. The fourteen-day stay as provided by Fed. R. Bankr. P. 6004(h) is waived.

8. The debtor's property is being sold "as is, where is" without any representations and warranties.

9. The trustee and her representatives are authorized to take such other actions and execute and deliver such additional documents or instruments as will be reasonably necessary to effectuate the transactions contemplated in the trustee's motion, including providing for MJM to access and take possession of the Real Property and Personal Property wherever currently located.

10. The trustee is authorized to sell the Real Property and Personal Property upon all the terms set forth in the trustee's motion, this order, and any agreement entered into by the parties. Any and all Personal Property in the possession or control of any person shall be deemed transferred to MJM at closing of the sale free and clear of liens, claims, interests, encumbrances, and interests, whether known or unknown, asserted or unasserted, of any kind or nature whatsoever.

11. Nothing in this order discharges, releases, enjoins or otherwise bars or limits: (A) any liability to the State of Minnesota of the debtor, its estate, or the successors, transferees, or assigns of the debtor or its estates if such liability arises on or after the effective date; (B) any liability to the State of Minnesota that is not a "claim" within the meaning of 11 U.S.C. § 101(5); (C) any right of setoff or recoupment against the debtor (and all such setoff and recoupment rights are preserved and not waived whether or not asserted in a timely-filed proof of claim); (D) any police or regulatory action of the State; (E) any environmental liability to the State of Minnesota that the debtors, its estates, or the successors, transferees, or assigns of the debtor's or its estates may have as an owner or operator of a mine property, or otherwise; or (F) any liability to the State of Minnesota that the debtor, its estates, or the successors, transferees, or assigns of the debtor or its estates may have as a holder of a permit to mine, water appropriation permit, dam permit, or state disposal system (SDS) permit; *provided, however*, that, notwithstanding the foregoing, nothing in this paragraph shall limit, diminish or otherwise alter any party's defenses, claims, causes of action or other rights under applicable non-bankruptcy or bankruptcy law with respect to any liability that may exist to the State of Minnesota.

12. Endurance Assurance Corporation and Continental Heritage Insurance Co., (collectively, "Sureties" and, each individually, "Surety") have issued commercial surety bonds

on behalf of the debtor with respect to assets and other contractual obligations to be transferred from the chapter 7 trustee to MJM (collectively, the "Existing Surety Bonds" and, each individually, an "Existing Surety Bond").

13. To the extent that any of the Existing Surety Bonds relate to the debtor's assets to be transferred, which include, without limitation, the Real Property, subject to reclamation claims from the State of Minnesota, mining permits, surface leases and mine related facilities, and other contractual obligations, to the extent required by the Minnesota Department of Natural Resources, such Existing Surety Bonds shall be replaced (collectively, the "Replacement Surety Bonds" and, each individually, a "Replacement Surety Bond") or other financial accommodations shall be provided, by MJM, subject to the following conditions:

> i. The necessity of any Replacement Surety Bond on the Real Property or other financial accommodations, and the penal sum of the replacement bonds as financial assurance or other financial accommodations, if any, is subject to determination by the Minnesota Department of Natural Resources according to Minnesota law and applicable federal law. Applications for the transfer of permits, if any, from the Trustee to MJM, as required by applicable law, will be made no later than thirty (30) days after closing. A Replacement Surety Bond or other financial accommodations, to the extent required by the Minnesota Department of Natural Resources, shall be timely submitted as required as part of any applicable permit transfer and bonding regulations. In no event shall this provision be construed to require that MJM obtain or provide financial

     assurances related to any real property other than the Real Property that is the subject of this order.

   ii. The debtor entered into certain indemnity agreements or related agreements with the Sureties (collectively, the "Existing Indemnity Agreements" and, each, an "Existing Indemnity Agreement"). Upon the transfer or acquisition of a permit, if any, as described in Paragraph 13(i) above, and upon the request of any of the sureties providing a Replacement Surety Bond, MJM agrees to execute a new indemnity agreement, either with the Sureties or with some other replacement surety or sureties, in a form satisfactory to the applicable surety in its discretion, which shall be exercised in a reasonably commercial manner, for any Replacement Surety Bond, but in no event shall a surety require a form of indemnity agreement that is in any way materially different from the Existing Indemnity Agreement, which was attached as Exhibit C to Claim 12-1 at 49–55 filed in the above-captioned proceeding.

14. The discharge or release of any claim contained in any purchase agreement or in this order shall not release, discharge, preclude, or enjoin any obligation of the debtor (prior to the closing date) to the Sureties under the Existing Surety Bonds, Existing Indemnity Agreements, and obligations under the common law of suretyship and, solely to the extent that such Existing Surety Bonds are not replaced by the Replacement Surety Bonds, such obligations to the Sureties are not being released, discharged, precluded or enjoined by any purchase agreement, this order or agreements with third parties.

15. Notwithstanding any other provision of the purchase agreement or this order all collateral on which the applicable Surety had a perfected lien as of the closing date, other than any assets contained in the purchase agreement and letters of credit and proceeds from drawn letters of credit issued to the Sureties as security for the debtor's obligations under the Existing Surety Bonds (collectively, the "Surety Collateral"), shall remain in place to secure all payment and performance obligations of (a) the debtor under the Existing Surety Bonds or for obligations arising under the Existing Indemnity Agreements until replaced or released in the bonds entirety and (b) thereafter MJM under Replacement Surety Bonds from Surety, if any, any new indemnity agreements, or new collateral trust agreements and accounts related thereto; provided, however, that nothing in the purchase agreement or this order shall be deemed to limit such Surety's right to utilize any Surety Collateral.

16. Notwithstanding any other provisions of the purchase agreement or other agreements between the debtor/trustee and third parties, nothing in the release provisions of the purchase agreement or this order shall be deemed to apply to the Sureties' claims to pursue the Surety Collateral, nor shall these provisions be interpreted to bar, impair, prevent or otherwise limit the Sureties from exercising their valid rights under or with respect to any of the Existing Surety Bonds (until fully replaced), Replacement Surety Bonds, any related indemnity agreements, letters of credit, or applicable law, including the common law of suretyship. Nothing in the purchase agreement or this order shall be interpreted to alter, diminish, or enlarge the rights or obligations of the Sureties in regard to state and federal agencies, third parties, or otherwise under any surety bonds, any indemnity agreements or applicable law. Further, nothing contained in the purchase agreement shall constitute or be deemed a waiver of any cause of

action that in any way relates to the Existing Surety Bonds held by the debtor or the Trustee against any entity.

17. Upon the closing of the sale contemplated herein, all creditors, employees, and equity holders of Debtor, are bound by this Order to treat MJM, the Real Property and the Personal Property as free and clear of their respective claims, liens, encumbrances and interests, whether known or unknown, asserted or unasserted, of any kind or nature whatsoever, except as otherwise specifically set forth herein.

18. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the final purchase agreement between the trustee and MJM, all amendments thereto, any waivers and consents thereunder, and of any agreements executed in connection therewith in all respects.

Dated:  *July 17, 2019*

/e/ William J. Fisher
_____
William J. Fisher
United States Bankruptcy Judge