**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:                                                           Case No.: BKY 18-50378 (WJF)
                                                                                   Chapter 7

ERP Iron Ore, LLC,

                                                                          **AFFIDAVIT OF**
Debtor.                                                              **ROGER TROUT**

---

STATE OF MINNESOTA          )
                                                )  ss.
COUNTY OF RAMSEY            )

I, ROGER TROUT, being first duly sworn, deposes and says:

1.      I am a Senior Engineering Specialist in the Division of Lands and Minerals, Department of Natural Resources.

2.      Lease No. R-103, Lease for Iron-Bear Materials Canisteo Mine Second Tailings Basin dated October 3, 2011, as amended on January 6, 2014, April 25, 2016, and January 25, 2017, between the State of Minnesota and ERP Iron Ore, LLC, requires the payment of rent and production guarantees.  The lease is attached as *Exhibit A*.

3.      As described in paragraph 7 of the Lease and paragraph 1` of the Second Amendment, rent under Lease No. R-103 in the amount of $31,171.00 is due on January 1 each year of the lease term.

4.      Production guarantees are payable on January 20 of each year for the preceding year.

5.      Paragraph 1 of the First Amendment to Lease R-103 requires a production guarantee of 300,000 dry metric tons of iron-bearing materials for the calendar year 2018.  This production guarantee is payable January 20, 2019.  Because ERP Iron Ore, LLC was not operating in 2018, the deficiency in the required tonnage was the entire 300,000 dry metric tons.

6.     To calculate the amount of the payment, I multiplied 300,000 dry metric tons by $0.89 as described in paragraph 1 of the First Amendment.  I did not increase the multiplier -- $0.89 -- pursuant to the escalator clause as described in paragraph 1 of the First Amendment and paragraph 9 of the lease.  Because the "Adjusted Brazil Price" as defined in paragraph 9 of the lease was less than the "Base Brazil Price" as defined in paragraph 9 of the lease, I did not apply an escalator clause.  I multiplied 300,000 dry metric tons by $0.89, calculating an amount due of $267,000.00

7.     Lease No. R-108, Lease for Iron-Bearing Materials Buckeye Tailings Basin #2 dated May 31, 2012, as amended on April 25, 2016, and January 25, 2017, between the State of Minnesota and ERP Iron Ore, LLC, requires the payment of rent and production guarantees.  The lease is attached as *Exhibit B.*

8.     As described in paragraph 6 of the Lease and paragraph 1 of the First Amendment, rent under Lease No. R-108 in the amount of $12,676.00 is due January 1 of each year.

9.     Because the state-owned iron-bearing materials have been mined out of Buckeye Tailings Basin #2, the production guarantee under this lease does not apply.

10.    Lease No. R-125, Lease for Iron Bearing Materials Canisteo Mine First Tailings Basin dated January 7, 2015, as amended on April 25, 2016, and January 25, 2017, between the State of Minnesota and ERP Iron Ore, LLC, requires the payment of rent and production guarantees.  The lease is attached as *Exhibit C.*

11.    As described in paragraph 6 of the Lease and paragraph 1 of the First Amendment, rent under Lease No. R-125 in the amount of $13,955.00 is due January 1 of each year.

12.    Production guarantees under Lease No. R-125 are also payable on January 20 of each year for the preceding year.

13.    Paragraph 10 of Lease No. R-125 requires a production guarantee of 80,000 dry metric tons of iron-bearing materials for the calendar year 2018.  This production guarantee is payable January 20, 2019.  Because ERP Iron Ore, LLC was not operating in 2018, the deficiency in the required tonnage was the entire 80,000 dry metric tons.

14.    To calculate the amount of the payment, as described in paragraph 10 of the lease, I multiplied 80,000 dry metric tons by $0.50.  I did not increase the multiplier -- $0.50 – pursuant to the escalator clause as described in paragraphs 8 and 10 of the lease.   Because the "Adjusted Brazil Price" as defined in paragraph 8 of the lease was less than the "Base Brazil Price" as defined in paragraph 8 of the lease, I did not apply an escalator clause.  I multiplied 80,000 dry metric tons by $0.50, calculating an amount due of $40,000.00.

FURTHER YOUR AFFIANT SAYETH NOT.

DEBRA E. MAYERICH
Notary Public
State of Minnesota
My Commission Expires
January 31, 2022

_____
ROGER TROUT

Subscribed and sworn to before me on this 23 day of July, 2019

_____
NOTARY PUBLIC

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS

LEASE FOR IRON-BEARING MATERIALS
CANISTEO MINE SECOND TAILINGS
BASIN NORTH AND SOUTH

Lease No. R-103

This lease, executed in triplicate this _3rd_ day of _October_, 2011, and effective
October 1, 2011, by and between the State of Minnesota, under authority and subject to the
provisions of Minnesota Statutes 2010, section 93.285, subd. 3, acting by and through its
Commissioner of Natural Resources, hereinafter called the "State", and Magnetation LLC, a
Delaware limited liability company, hereinafter called the "Lessee."

### WITNESSETH:

1. **Premises.**  The State, in consideration of the covenants and agreements hereof to be
   performed by the Lessee, hereby leases unto the Lessee, subject to the conditions hereinafter
   stated, the state-owned portions of the tailings, without warranty of title, located in Canisteo
   Mine Second Tailings Basin North and South, described as follows:

   see attached Exhibit A;

   all in Itasca County, Minnesota, containing approximately 579.37 acres;

   which shall hereafter be collectively referred to as the "Premises." The attached Map Exhibit
   1 depicts the leased Premises.

2. **Lease Term.**  This lease shall be in effect for a period of 25 years from the effective date
   noted above.

3. **Use of Premises.**  The premises are leased to the Lessee for the purpose of mining and
   processing tailings.

4. **State's Right to Lease Surface and Sell Timber.**  The State reserves the right to sell and
   dispose of, under the provisions of law now or hereinafter governing the sale of timber on
   state lands, all the timber upon the land hereby leased, and reserves to the purchaser of such
   timber, or agents and servants of the purchaser, the right at all times to enter thereon, and to
   cut and remove any and all such timber therefrom, according to the terms of the purchaser's
   contract with the state, and without let or hindrance from the Lessee, but such purchaser shall
   not unnecessarily or materially interfere with the mining operations carried on thereon.  The
   purchaser of the timber will agree to assume entire responsibility and liability for all damages

Page 1 of 13

**Exhibit A**

and injury to all persons and property whether caused by the purchaser, the purchaser's officers, agents or employees, arising from activities undertaken based on the timber permit or the purchaser's use or occupancy of the Premises covered by the timber permit.

The State further reserves the right to grant leases, permits or licenses to any portion of the surface of the demised Premises to any person or corporation under authority of section 92.50, or other applicable laws, without let or hindrance from the Lessee, but such leases, permits or licenses shall not unnecessarily or materially interfere with the mining operations carried on thereon. The surface lessee will agree, for the benefit of both parties to this lease, to assume entire responsibility and liability for all damages and injury to all persons and property whether caused by the surface lessee or the surface lessee's officers, agents or employees, arising from activities undertaken based on the surface lease or the surface lessee's use or occupancy of the premises covered by the surface lease.

5. **Material Removal and Processing Plan.** A plan for mining and processing the iron-bearing materials shall be submitted in writing to the State for review and approval in writing by the Commissioner of Natural Resources, prior to the mining or processing of any iron-bearing material from the Premises. Such plan shall include, but not be limited to, the method and measurement of determining the quantity and volume of iron-bearing materials mined and processed, the locations of mining, the method of mining iron-bearing materials and the equipment that will be used, and if residues are to be re-deposited onto the Premises, the location of such planned depositions.

Mining and processing of all iron-bearing materials on the Premises are subject to Canisteo Mine Tailings Agreement dated January 3, 1944, January 2, 1945, and January 3, 1945, as modified and amended by agreements dated January 2, 1954, October 5, 1961, and January 1, 1972. The January 1, 1972 Canisteo Mine Fine Tailings Agreement was recorded on March 30, 1977 in the Itasca County Recorder's Office as Document Number 315698, and registered on March 30, 1977 in the Itasca County Registrar of Titles' Office as Document Number 20135.

Upon the commencement of mining, failure by the Lessee to implement the plan as approved by the commissioner is a default of the lease herein. Any changes to the approved plan shall be submitted in writing to the State and be approved in writing by the Commissioner of Natural Resources before any such changes may be implemented.

6. **Property Lines to be Posted.** Prior to the mining or processing of any iron-bearing material from the Premises, the Lessee must survey and post the property line between Township Fifty-six (56), Range Twenty-four (24) and Township Fifty-six (56), Range Twenty-five (25). The location of the property line must be verified and approved in writing by the Commissioner of Natural Resources prior to the mining or processing of any iron-bearing materials from the Premises. The plan for mining and processing the iron-bearing materials submitted to the State pursuant to paragraph 5 herein shall address how the Lessee will volumetrically account for iron-bearing materials mined and removed across the above said property line within the Canisteo Mine Second Tailings Basin North and South.

7. **Rental.**   Rental for the state-owned portion of the tailings basin shall be $44,530.00 per year for the term of the lease, payable on January 1 of each year.

Any amount paid for rental accrued for any calendar year shall be credited on royalty due only for iron-bearing materials mined and removed that may become due during the same calendar year in which the rental was due but no further.  Rental paid for any calendar year shall not be credited on any royalty paid due to the failure to meet the quarterly production guarantee as specified in paragraph 11 herein, nor shall rental paid for any calendar year be credited on any payment made for unmined state-owned iron-bearing materials as specified in paragraph 17 herein.  If this lease is canceled, terminated, or expires during a year for which rental has been paid, there shall be no reimbursement of the rental payment for that year.

8. **Royalty Payable.**
   (a)  The base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be $0.89, subject to the escalator provisions of paragraph 9 herein.

   (b)  The Lessee shall be liable for royalty on all state-owned iron-bearing materials mined from the Premises. The Canisteo Mine Fine Tailings Agreement dated January 1, 1972, recorded on March 30, 1977 in the Itasca County Recorder's Office as Document Number 315698, and registered on March 30, 1977 in the Itasca County Registrar of Deeds' Office as Document Number 20135 defines ownership interests in the Canisteo Mine Second Tailings Basin by iron units.

The following is the State's current fractional ownership in the iron-bearing materials located on the Premises:

As to the portions of the Canisteo Mine Second Tailings Basin North and South located in Twp. 56, Rg. 24:

| Owner | Fractional Ownership as of June 1, 2011 |
|---|---|
| State | 88.92% |
| Other Owners | 11.08% |
| TOTAL: | 100% |

As to the portions of the Canisteo Mine Second Tailings Basin North and South located in Twp. 56, Rg. 25:

| Owner | Fractional Ownership as of June 1, 2011 |
|---|---|
| State | 82.75% |
| Other Owners | 17.25% |
| TOTAL: | 100% |

c)  Subject to the lien of the State as provided herein for any royalty payable thereon, iron-bearing materials so mined, upon which such royalty is paid or payable (and not delinquent) hereunder, and the residues resulting from the treatment thereof, shall be the property of the Lessee.

(d) If the royalty due on the iron-bearing materials shall not be determined and accounted for as herein otherwise provided by the next quarterly payment date after the end of the quarter in which such iron-bearing materials are removed, the State may determine such royalty by such reasonable method as the State deems appropriate and give the Lessee written notice thereof, whereupon such royalty shall be due and payable within 20 days after the mailing or delivery of such notice, unless the time therefore shall be extended by the commissioner.  Final settlement and adjustment of the royalty due shall be made as soon as determination becomes possible.

9. **Escalator Clause**.
(a) The royalties to be paid by the Lessee to the State on iron-bearing materials mined in each calendar quarter that the lease remains in force as hereinbefore specified shall be subject to increase by the monthly average price for iron ore published by <u>Platts Steel Market Daily</u> (FOB Brazil), defined as follows as the Brazil Price, as adjusted herein.

*Brazil Price*
<u>Platts Steel Market Daily</u> refers to a Brazil route under the caption currently titled "FOB netbacks per route/basis IODEX 62% Fe".  The Brazil Price in dollars per dry metric ton is found under this caption in the column entitled "IODEX ($/dmt)".  The monthly average of the daily published Brazil Price for the first month of each calendar quarter shall be used as the Brazil Price for purposes of calculating the royalty escalation for each calendar quarter. The monthly average shall be rounded to the nearest cent.

*Iron Content Adjustment (62% iron to 65% iron)*
The monthly average Brazil Price will be adjusted from 62% iron to 65% iron.  <u>Platts Steel Market Daily</u> publishes a number in dollars per dry metric ton ($/dmt), currently titled in the daily publication as "Per 1% Fe differential (Range 60 - 63.5% Fe), $/dmt."  The monthly average of the daily published price for 1% Fe differential (Range 60 – 63.5% Fe), in dollars per dry metric ton, shall be determined for the first month in each calendar quarter and used for determining the quarterly royalty escalator calculation.  The monthly average Fe differential, rounded to the nearest cent, shall be multiplied by 3.00 to determine the iron content adjustment.  The iron content adjustment figure shall be rounded to the nearest cent.

*Adjusted Brazil Price*
The iron content adjustment figure shall be added to the monthly average Brazil Price and the sum divided by 65.  The resulting dollar figure, rounded to the nearest one-hundredth of a cent, shall then be converted into U.S. cents, hereinafter referred to as the Adjusted Brazil Price.

If the Adjusted Brazil Price per dry metric ton iron unit exceeds 101.00 (U.S. cents), which is the Base Brazil Price negotiated by the Lessee and the State, the excess shall be

computed and this excess shall become the numerator of a fraction, the denominator of which shall be the Base Brazil Price, and the resulting fraction shall be multiplied by the base royalty rate per metric ton removed.

For example, if for July 2012, the monthly average published Brazil Price is 153.21 per dry metric ton, and the monthly average published 1% Fe differential is 5.01, the following adjustments will be made:

Iron Content Adjustment    5.01 x 3.00 = 15.03
Adjusted Brazil Price      (15.03 + 153.21)/65 = $2.5883 or 258.83 U.S. cents

Escalation to base royalty    ((258.83-101.00)/101.00) x $0.89 = $1.3908

In this example, the royalty rate per dry metric ton for the third quarter of 2012 would be $2.2808.
($0.89 + $1.3908= $2.2808)

In no event shall the royalty rate payable be less than the royalty rates payable under any of those certain leases or licenses issued to the Lessee herein and covering the remaining portions of iron-bearing materials located in the Canisteo Mine Second Tailings Basin North and South, nor less than the minimum royalty rate prescribed in paragraph 8(a), whichever is higher.

(b) In the event Platts Steel Market Daily or its successors cease to quote a prevailing iron ore price FOB Brazil or a prevailing Fe differential, or these quotations cease to reflect transactions sold at arms length, or these quotations cease to accurately reflect market conditions, the quotations to be used as previously provided must be the quotations independently published, which, after necessary adjustments, if any, provide the most reasonable substitutes for the quotations published in Platts Steel Market Daily, it being intended to substitute quotations that most accurately reflect arms length transactions of the prevailing price of iron ore FOB Brazil or the prevailing Fe differential, in the manner currently reported by Platts Steel Market Daily. In case such published quotations shall cease to be available, or cease to reflect arms length transactions, or cease to be deemed accurate, and the parties hereto fail within a reasonable time to agree upon such new method or formula for the adjustment of royalty rates hereunder, the same shall be determined by arbitration in the manner hereinafter provided.

10. **Method of Computing Royalty Rates.** In computing royalty rates hereunder, any fraction of a cent less than five-thousandths shall be disregarded and any fraction amounting to five-thousandths or more shall be counted as one-hundredth of a cent.

11. **Production Guarantee.**
    (a) From and after January 1, 2014, the Lessee agrees to mine and remove from the Premises 75,000 dry metric tons of iron-bearing materials during each calendar quarter for the remaining term of the lease.

(b) If Lessee fails to mine and remove the tonnage of iron-bearing materials from the Premises as noted, above, in clause (a), it shall on or before the twentieth day of the month following the calendar quarter during which such tonnage should have been mined and removed report to the State the deficiency between the tons mined and removed and the amount required to equal the required amount of production for that calendar quarter. Lessee shall pay on or before the twentieth day of the month following the calendar quarter to the State, as a production guarantee royalty, an amount computed by multiplying $0.89 plus the escalation amount applicable as of the calendar quarter pursuant to paragraph 9, above, by the deficiency between the number of tons of iron-bearing materials mined and removed and the amount needed to equal the required production for that calendar quarter. The production guarantee royalty shall be paid in the same manner as the rentals and royalties provided for in this lease. No amount paid as production guarantee royalty shall be credited against any future royalties.

(c) If Lessee pays a production guarantee royalty as provided above, the State shall have no further remedy, and shall claim no further damages, arising out of the failure of Lessee to mine and remove the required tonnages, except as provided for in paragraph 26(g) herein.

12. **State Lien for Unpaid Sums Due.** The State reserves and shall at all times have a lien upon all iron-bearing materials mined from the Premises and upon all improvements made by the Lessee upon the land covered by this lease for any unpaid sums due hereunder.

13. **Quarterly Royalty Payment on Iron-Bearing Materials Removed.** The Lessee covenants and agrees to pay to the State, on or before the twentieth day of April, July, October, and January in each year during the period this lease continues in force, royalty at the rates hereinbefore specified for iron-bearing materials mined from said Premises during the three months preceding the first day of the month in which such payment is due as hereinbefore provided.

14. **Statement of Iron-Bearing Materials Removed and Royalty Due.** The Lessee shall transmit to the State with each royalty payment an exact and truthful statement of the tonnage of iron-bearing materials mined during the three months for which such payment is made and the royalty due thereon, determined as herein provided. The Lessee shall provide for all the operations required for such determination except as otherwise specified.

15. **Weighing and Sampling.** a) The Lessee shall submit a plan for determining the weight of iron-bearing materials mined from the Premises to the State and such plan must be approved in writing by the Commissioner of Natural Resources before any iron-bearing materials are mined from the Premises.

1) Using the state-approved plan, the Lessee will determine the weight of iron-bearing material mined and determine the moisture of such materials to calculate a dry weight. The moisture of the iron-bearing materials will be sampled and determined according to the sampling program as in paragraph 15(a)(2) below.

2) A sampling program for moisture determination must be submitted to the State and approved in writing by the Commissioner of Natural Resources, prior to the mining of any iron-bearing material from the Premises.

3) The State shall periodically inspect the Premises, moisture sampling procedures, and scale calibrations.

b) The Lessee shall install and properly maintain belt scales certified by the State of Minnesota or other weighing devices certified by the State of Minnesota for the determination of the weight of iron-bearing materials mined. The Lessee shall adopt suitable methods and practices for determining, allocating and recording such weights. The scales and weighing devices installed, and the methods and practices for determining, allocating and recording such weights, shall be subject to the prior review and approval by the State, and the Lessee shall comply with all reasonable requirements of the State with respect thereto.

c) The State shall have the right to inspect, review and test the correctness of any weighing devices installed or weighing methods used by the Lessee and the weights shown thereby, and the manner and method of weighing, at any and all times. Any errors in weighing, when ascertained by the State, shall be promptly recognized and corrected by the Lessee.

d) The State may appoint such special inspectors of such scales, weighing devices, and methods and practices as the State deems necessary to insure proper accounting and protect the interests of the State, and the Lessee shall reimburse the State monthly for the cost of all such inspection service upon notification thereof by the Commissioner.

16. **Arbitration Clause.** If any dispute shall arise between the parties as to the method of computing the weight and the royalty rate per dry metric ton of iron-bearing materials mined, or if the parties to this lease cannot agree upon substitute quotations as provided under paragraph 9(b) herein, each shall choose an arbitrator and the two thus selected shall choose a third. The decision of the arbitrators or any two of them shall be final and binding on the parties in interest. The agreement or the decision of the arbitrators shall be attached as a supplement to the lease.

The Lessee shall reimburse the State for all costs and expenses incurred in connection with the determination of the weight of iron-bearing materials mined. Each party to the arbitration shall bear their respective share of the costs for arbitration as to substitute quotations as provided under paragraph 9(b).

17. **Ownership of Unmined Iron-Bearing Materials.** Any unmined state-owned iron-bearing materials on the Premises shall remain the property of the State. At the time of termination of this lease, the Commissioner of Natural Resources may, at his or her discretion, make a final determination of the amount of unmined state-owned iron-bearing materials remaining on the Premises. If the Commissioner of Natural Resources chooses to determine the amount of unmined state-owned iron-bearing materials, such materials shall be transferred to the Lessee upon compensation in full to the State for such materials at the royalty rate as

provided in paragraph 8(a), subject to escalation as stated in paragraph 9. If compensation is to be made by the Lessee to the State for such materials, payment in full shall be made on or before the termination of this lease.

18. **Monthly Reports.** Except as otherwise permitted by the State, the Lessee shall transmit to the State on or before the tenth of each month a statement in such form as the State shall prescribe, covering all iron-bearing materials mined from said Premises during the preceding calendar month, showing the weight of the iron-bearing materials, the royalty computed to be due thereon, and such other information pertaining thereto as the State may require. With the approval of the Commissioner of Natural Resources, for the purpose of computing and accounting for royalty, iron-bearing materials may be considered as mined from said land in the month in which it was weighed, but the Lessee shall nevertheless be liable for the royalty on all iron-bearing materials from and after the actual time of mining from said Premises. The weights of iron-bearing materials as set forth in said monthly statements shall be prima facie binding as between the parties, but the State shall have the right at any time, and in such manner as it may see fit, to sample the iron-bearing materials, check the analyses, and inspect, review, and test the correctness of the methods, books, records, accounts, tabulations, maps, reports, and digital data, of the Lessee in sampling, analyzing, recording, and reporting such grades and weights, and to inspect, review, and test the correctness of the scales and other equipment used in weighing the iron-bearing materials and of the weights reported as aforesaid, it being understood that any errors in these respects, when ascertained, shall be corrected.

The monthly report shall be sent within ten (10) days after the end of each month to the Minnesota Department of Natural Resources, Division of Lands and Minerals, 1525 Third Avenue East, Hibbing, Minnesota 55746.

19. **State Inspection.** The State shall have the right to inspect the Premises at any and all times for any purpose. The books, records and documents of Lessee relevant to this lease are subject to examination by the State. The provisions of this section shall survive the termination of this lease.

The State, or agents thereof, shall have the right to enter and inspect at any time any plant where iron-bearing materials from said Premises are treated or beneficiated, and to take such samples and make such tests as may be necessary to determine the effects of such treatment or beneficiation.

20. **Maintenance of Premises.** The Lessee hereby expressly agrees to keep and leave the premises neat, clean, and in safe condition, and to remove therefrom all refuse and debris that may from time to time accumulate. The Lessee shall take all necessary precautions, including appropriate dike maintenance, to prevent spillage or sloughing of materials onto lands abutting the tailings basin area.

21. **Invasive Species.** The Lessee is responsible for controlling invasive species on the Premises.

22. **Liability.** This lease shall not be construed as imposing any liability on the State for injury to persons or property of the Lessee or any other persons or property, arising out of any use of the described Premises hereunder or under any other license, lease, easement or permit now or hereafter made. The Lessee shall indemnify and hold harmless the State from all claims arising out of use of said Premises hereunder, whether such claims are asserted by civil action or otherwise.

23. **Legal Obligations.** The provisions of this lease are subject to all applicable state and federal statutes, orders, rules and regulations, and all operations under this lease shall be conducted in conformity with them.

24. **Transfers.** This lease shall extend to, and bind successors, heirs, legal representatives and assigns of the State and Lessee. In addition, the Lessee shall not, without the State's prior written consent:
    a) assign, convey, mortgage, pledge, encumber or otherwise transfer this lease or any interest under it;
    b) allow any transfer or any lien upon Lessee's interest by merger, operation of law, or otherwise;
    c) sublet the Premises or any part thereof; or
    d) permit the use or occupancy of the Premises or any part thereof by anyone other than the Lessee.

25. **Taxes.** The Lessee shall pay, when due, all taxes assessed against or levied upon the Premises or upon structures, improvements, furnishings, equipment and other personal property of the Lessee located on the Premises during the term of this lease.

26. **Termination/Cancellation.**
    a) This lease may be terminated at any time by mutual written agreement.

    b) The Lessee may at any time deliver to the State written notice of intention to terminate this lease, and this lease shall terminate 60 days after the delivery unless the notice is revoked by the Lessee by further written notice delivered to the State before the expiration of the 60 days. All sums due to the State under this lease up to the effective date of termination must be paid by the Lessee.

    c) This lease is granted upon the express condition that, if any sum owed under it by the Lessee for rental, royalty or otherwise remains unpaid after the time when it became due, or if the Lessee knowingly or willingly makes any false statement in any report, account, or tabulation submitted to the State pertaining to any matter under this lease, or if the Lessee fails to perform any of the conditions required by this lease, the State may cancel this lease by mailing or delivering to the Lessee 60 days' notice of the cancellation in writing, specifying such nonpayment or other default as the case may be. This lease shall terminate at the expiration of the 60 days, and the Lessee and all persons claiming under the Lessee shall be wholly excluded from the Premises, except as provided herein.

If the default consists of a nonperformance of an act required under this lease other than the payment of rental or royalty, the Lessee may perform within the 60 days and the lease continues in effect. If the correction of any such default requires more time than 60 days after the notice has been received by the Lessee, the Commissioner of Natural Resources, upon written request of the Lessee and for good cause shown, may, at his or her discretion, grant an extension of the period of 60 days.

If the default consists of a nonpayment of rental or royalty and the Lessee performs within 15 days from the mailing or delivery of such notice of cancellation, the lease continues in effect; and if the Lessee performs at any time thereafter within the period of 60 days, the Commissioner of Natural Resources, at his or her discretion, may continue the lease in effect.

d)  Termination or cancellation does not relieve the Lessee from any liability for payment or other liability incurred under this lease.

e)  The Lessee shall have 90 days after the termination or cancellation of this lease in which to remove all equipment, materials, structures, and other property placed or erected by the Lessee upon said Premises and must restore the Premises to a condition satisfactory to the State. The Lessee shall not remove or impair any dikes, dams, structures or other supports necessary to the maintenance of the tailings basin. If the Lessee fails to remove its property and clean up the Premises, the State may dispose of such property and restore the Premises to a neat and orderly condition. In this case, the Lessee agrees to repay the expense incurred by the State.

f)  It is understood and agreed that upon termination of this lease by expiration of the term thereto or otherwise, the Lessee shall peacefully and quietly surrender the Premises to the State.

g)  This lease may be cancelled by the State if Lessee has not mined and removed iron-bearing materials from the Premises prior to March 31, 2015.

27. **Lessee to Acquire Necessary Rights to Interests Not Owned by State.** It is understood and agreed that in case any interest in the land covered by this lease or in any minerals or iron-bearing materials therein is owned by anyone other than the State, this lease shall not be construed as authorizing any invasion of or trespass upon such other interest, that in case it shall be necessary to make use of any such other interest in connection with any operations hereunder, the Lessee shall obtain all necessary legal rights therefore before proceeding therewith, that the Lessee shall be liable for all damages to any such other interest caused by any operations hereunder, and that the State shall not incur or be subject to any liability therefore.

28. **Wetlands Construction.** In the event the Lessee wishes to create wetlands on the Premises, prior to the creation of any wetlands the Lessee will provide its wetlands construction plan to the State for review and approval in writing by the Commissioner of Natural Resources. Such plan shall include the acreages and locations of wetlands to be created. A separate agreement

between the Lessee and the State will be necessary to address outstanding issues involving the state-owned lands and tailings and the created wetlands, such as compensation to the State for state-owned lands and tailings in the wetlands.

29. **No Waiver.** No delay on the part of the State in enforcing any conditions in this lease, including termination for violation of the terms of this lease, shall operate as a waiver of any rights of the State.

30. **No Use of Government Funding.** Lessee agrees it will not use any state or governmental grant, loan, or other funding to make payments required under this lease.

31. **Construction of Lease.** If any clause or provision of this lease is or becomes illegal, invalid, or unenforceable because of present or future laws or any rule or regulation of any governmental body, the intention of the State and Lessee is that the remaining parts of this lease shall not be affected thereby.

32. **Notices.** Any notice given under this lease shall be in writing and served upon the other party either personally or by depositing such notice in the United States mail with proper first class postage and address. Unless changed by written notice to all parties, the mailing address for the State shall be: Director, Division of Lands and Minerals, Minnesota Department of Natural Resources, 500 Lafayette Road, St. Paul, Minnesota 55155-4045; and the mailing address for the Lessee shall be: Magnetation LLC, 832 First Street, Suite 130, Nashwauk, Minnesota 55769.

33. **Miscellaneous.** This lease contains the entire agreement of the parties hereto with respect to the use of the premises. This lease may be modified only by a writing executed and delivered by both parties. Nothing contained in this lease shall be deemed or construed to create a partnership or joint venture of or between the State and the Lessee, or to create any other relationship between the parties other than that of landlord and tenant.

IN TESTIMONY WHEREOF, the parties hereto have set their hands in triplicate the date and year first above written.

Signed in the Presence of:

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

_____

_____
As to State

By _____
Larry R. Kramka, Director
Division of Lands and Minerals

Signed in the Presence of:                    MAGNETATION LLC

By _____

As to Lessee                                  By _____


STATE OF MINNESOTA   )
                     ) SS
COUNTY OF _Ramsey_   )

This instrument was acknowledged before me this _3_ day of _October_, 2011, by
Larry R. Kramka, Director, Division of Lands and Minerals, Department of Natural Resources,
on behalf of the State of Minnesota.

BRIDGET LOUISE JACOBSON
Notary Public
Minnesota
My Commission Expires January 31, 2015

Notary Public
My commission expires: _January 31, 2015_

Page **12** of 13

STATE OF Minnesota ⟩
⟩ SS
COUNTY OF Itasca ⟩

    This instrument was acknowledged before me this 26th day of September, 2011, by Larry Lehtinen, as President and by David Chappie, as VP-Engineering and Operations of Magnetation LLC, a Delaware limited liability company, on behalf of the company.

HOPE ELIZABETH WILSON
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2014

Hope Elizabeth Wilson
Notary Public
My commission expires: 1/31/2014

Office of Commissioner of Natural Resources
STATE OF MINNESOTA

I hereby certify that this instrument was filed in this office on October 10, 2011.

By Victoria H. Sellner

This Instrument was drafted by:

Minnesota Department of Natural Resources
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

**Canisteo Mine Second Tailings Basin North**

The following described lands all lying and being in Section Nineteen (19), Township Fifty-six (56) North, Range Twenty-four (24) West of the Fourth Principal Meridian, in Itasca County, Minnesota:

All that part of Lot One (1) described as follows:
Assuming the west property line thereof to bear North 0 degree 36 minutes 36 seconds East and beginning at the southwest corner thereof proceed thence North 65 degrees 51 minutes 36 seconds East a distance of 930 feet; thence North 89 degrees 22 minutes 52 seconds East, more or less, a distance of 744.22 feet, more or less, to a point on the East property line thereof 420.04 feet northerly of the southeast corner thereof; thence southerly along said East property line a distance of 363.54 feet; thence southwesterly along a straight line to a point on the south property line thereof 84.36 feet westerly of said southeast corner; thence westerly along said south property line to the point of beginning, containing 10.72 acres, more or less (also known as Revised Description 1 of Lot 1);

All that part of Lot Two (2) described as follows:
Assuming the south property line thereof to bear South 88 degrees 45 minutes 24 seconds East and beginning at the southwest corner thereof proceed South 88 degrees 45 minutes 24 seconds East along said South property line a distance of 1059 feet; thence North 01 degree 14 minutes 36 seconds East a distance of 363 feet; thence North 68 degrees 29 minutes 36 seconds East a distance of 26 feet; thence North 12 degrees 34 minutes 36 seconds East a distance of 180 feet; thence North 31 degrees 17 minutes 36 seconds East a distance of 125 feet; thence North 48 degrees 3 minutes 36 seconds East a distance of 93 feet; thence North 21 degrees 20 minutes 36 seconds East a distance of 247 feet; thence North 11 degrees 20 minutes 36 seconds East a distance of 162 feet; thence North 19 degrees 37 minutes 24 seconds West a distance of 57 feet; thence North 28 degrees 13 minutes 36 seconds East a distance of 88 feet; thence North 48 degrees 20 minutes 36 seconds East a distance of 111 feet; thence North 57 degrees 40 minutes 36 seconds East, more or less, a distance of 17.52 feet, more or less, to a point on the North property line thereof 84.36 feet westerly of the northeast corner thereof; thence westerly along said North property line to the northwest corner thereof; thence southerly along the West property line thereof to the point of beginning, containing 37.05, acres more or less (formerly known as Revised Description 1 of Lot 2);

Lot Three (3), except the south 100 feet.

**Exhibit A**

The following described lands all lying and being in Section Twenty-four (24), Township Fifty-six (56) North, Range Twenty-five (25) North of the Fourth Principal Meridian, in Itasca County, Minnesota:

All that part of the Northeast Quarter (NE1/4) described as follows:
Assuming the east property line thereof to bear North 0 degree 36 minutes 36 seconds East and beginning at the sixteenth (1/16) corner south of the northeast corner thereof and proceeding thence South 85 degrees 18 minutes 36 seconds West a distance of 160 feet; thence North 61 degrees 43 minutes 24 seconds West a distance of 1,053.50 feet; thence South 52 degrees 3 minutes 32 seconds West a distance of 351.19 feet; thence South 86 degrees 14 minutes 15 seconds West a distance of 660 feet; thence South 52 degrees 48 minutes 43 seconds West a distance of 633.70 feet; thence South 22 degrees 2 minutes 5 seconds East, more or less, a distance of 1,325.09 feet, more or less, to a point on the south property line thereof 720 feet easterly of the southwest corner thereof; thence easterly along said south property line to the southeast corner thereof; thence northerly along the said east property line to the point of beginning; containing 83.96 acres, more or less;

All that part of the Southeast Quarter (SE1/4) described as follows:
Assuming the north property line thereof to bear North 88 degrees 4 minutes 15 seconds East and beginning at the northwest corner thereof and proceeding thence North 88 degrees 4 minutes 15 seconds East along said north property line a distance of 720 feet to the point of beginning; thence South 22 degrees 2 minutes 5 seconds East a distance of 390 feet; thence South 73 degrees 44 minutes 6 seconds East, more or less, a distance of 1,945.72 feet, more or less, to a point on the east property line thereof 975 feet southerly of the northeast corner thereof; thence northerly along said east property line a distance of 975 feet to the said northeast corner; thence westerly along said north property line to the point of beginning; containing 29.54 acres, more or less.

**Canisteo Mine Second Tailings Basin South**

The following described lands all lying and being in Section Nineteen (19), Township Fifty-six (56) North, Range Twenty-four (24) West of the Fourth Principal Meridian, in Itasca County, Minnesota:

The south 100 feet of Lot Three (3);

Lot Four (4);

The west 300 feet of Southeast Quarter of Southwest Quarter (SE1/4-SW1/4).

**Exhibit A**

Lease R-103

The following described lands all lying and being in Section Thirty (30), Township Fifty-six (56) North, Range Twenty-four (24) West of the Fourth Principal Meridian, in Itasca County, Minnesota:

Lot One (1);

That part of Lot Two (2) lying northwesterly of a straight line between a point on the east property line of Lot 2 800 feet south of the northeast corner thereof, measured along said east property line, and a point on the south property line thereof which is 900 feet east of the southwest corner thereof, measured along said south property line; containing 41.45 acres, more or less;

That part of Lot Three (3) lying northwesterly of a straight line between a point on the west property line of Lot 3 900 feet south of the northwest corner thereof, measured along said west property line, and a point on the north property line thereof which is 900 feet east of said northwest corner, measured along said north property line; containing 9.30 acres, more or less;

All that part of the Northeast Quarter of the Northwest Quarter (NE1/4-NW1/4), described as follows:
Assuming the south property line thereof to bear due east and west and beginning at the southwest corner thereof and proceeding thence due east along said south property line a distance of 410 feet; thence due north a distance of 100 feet; thence due west a distance of 300 feet; thence due north a distance of 930 feet; thence due east a distance of 188.72 feet; thence due north, more or less, a distance of 291.52 feet, more or less, to a point on the north property line thereof 300 feet easterly of the northwest corner thereof; thence westerly along said north property line a distance of 300 feet to the said northwest corner; thence southerly along the west property line thereof to the point of beginning; containing 5.31 acres, more or less.

The following described lands all lying and being in Section Twenty-four (24), Township Fifty-six (56) North, Range Twenty-five (25) West of the Fourth Principal Meridian, in Itasca County, Minnesota:

All that part of the Southeast Quarter (SE1/4) described as follows:
Assuming the north property line thereof to bear North 88 degrees 04 minutes 15 seconds East and beginning at the northwest corner thereof and proceeding thence North 88 degrees 04 minutes 15 seconds East along said north property line a distance of 720 feet; thence South 22 degrees 02 minutes 05 seconds East a distance of 390 feet to the point of beginning; thence South 22 degrees 02 minutes 05 seconds East a distance of 550 feet; thence South 37 degrees 31 minutes 04 seconds West , more or less, a distance of 1,769.47 feet, more or less, to a point on the west property line thereof 410 feet northerly of the southwest corner thereof; thence southerly along said west property line a distance of 410 feet to the said southwest corner; thence easterly along the south property line thereof to the southeast corner thereof; thence northerly along the east property line

**Exhibit A**

thereof to a point on said east property line 975 feet southerly of the northeast corner thereof; thence North 73 degrees 44 minutes 06 seconds West, more or less, a distance of 1,945.72 feet, more or less, to the point of beginning; containing 101.82 acres, more or less.

The following described lands all lying and being in Section Twenty-five (25), Township Fifty-six (56) North, Range Twenty-five (25) West of the Fourth Principal Meridian, in Itasca County, Minnesota:

East Half of the Northeast Quarter (E1/2-NE1/4);

All of the Northeast Quarter of the Southeast Quarter (NE1/4-SE1/4), except 4.80 acres described as follows:

Assuming the east property line thereof to bear due north and south and beginning at the southeast corner thereof and proceeding thence due north along said east property line a distance of 476 feet to the point of beginning; thence due north along said east property line a distance of 196 feet; thence North 54 degrees 55 minutes West a distance of 276 feet; thence South 69 degrees 50 minutes West a distance of 318 feet; thence due west a distance of 237 feet; thence due south a distance of 245 feet; thence due east, more or less, a distance of 761.40 feet, more or less, to the point of beginning.

**Exhibit A**



| | | Scale 1:15000 | Plot Date 03-Sep-2011 | Sheet 1 of 1 | Canisteo Mine Second Tailing Basin North and South | |
|---|---|---|---|---|---|---|
| MICROMINE | | Map Exhibit #1 | | Pot File Draft Tailing Basins | | |
| | | 400    0    400Ft | | | | |

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS

FIRST AMENDMENT TO
LEASE FOR IRON-BEARING MATERIALS
NUMBERED R-103
CANISTEO MINE SECOND TAILINGS
BASIN NORTH AND SOUTH

This first amendment to Lease No. R-103 made this 6 th day of January,
20 14, and effective December 15, 2013, by and between THE STATE OF MINNESOTA,
under authority and subject to the provisions of Minnesota Statutes 2012, section 93.285, subd.
3, acting by and through its Commissioner of Natural Resources, hereinafter called the "State"
and Magnetation, LLC., a Delaware limited liability company, hereinafter called the "Lessee",

WITNESSETH

The Lessee currently holds State Lease for Iron-Bearing Materials Numbered R-103,
hereinafter referred to as the "Lease," that remains in effect.

The Lessee has requested certain revisions to the lease terms.

NOW, THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES
HERETO, THAT STATE IRON-BEARING MATERIALS LEASE NUMBERED R-103 is
amended as follows:

**1. Paragraph 11 of the Lease is amended to read as follows:**

11.  Production Guarantee.  (a) From and after July 1, 2015, the Lessee agrees to mine and
remove from the Premises 150,000 dry metric tons of iron-bearing materials during the
period of July 1 through December 31, 2015 and 300,000 dry metric tons of iron-bearing
materials during each calendar year thereafter for the remaining term of the lease.

(b)  If Lessee fails to mine and remove the tonnage of iron-bearing materials from the
Premises as noted, above, in clause (a), it shall on or before the twentieth day of January
following the calendar year during which such tonnage should have been mined and removed
report to the State the deficiency between the tons mined and removed and the amount
required to equal the required amount of production for that calendar year.  Lessee shall pay
on or before the twentieth day of January following the calendar year to the State, as a
production guarantee royalty, an amount computed by multiplying $0.89 plus the escalation
amount applicable as of the fourth calendar quarter of the calendar year for which the
production guarantee is required pursuant to paragraph 9, above, by the deficiency between

1

the number of tons of iron-bearing materials mined and removed and the amount needed to equal the required production for that calendar year. The production guarantee royalty shall be paid in the same manner as the rentals and royalties provided for in this lease. Any amount paid as production guarantee royalty for the calendar year shall be credited against royalties for iron-bearing materials mined that may become due during the next calendar year but no further. For example, production guarantee royalty paid for calendar year 2018 shall be credited against royalties owed for iron-bearing materials mined during calendar year 2019, but no further. Production guarantee royalties paid shall not be credited against any future production guarantee royalties.

(c) If Lessee pays a production guarantee royalty as provided above, the State shall have no further remedy, and shall claim no further damages, arising out of the failure of Lessee to mine and remove the required tonnages, except as provided for in paragraph 26(g) herein.

## 2. Paragraph 26(g) of the Lease is amended to read as follows:

(g) From and after January 1, 2016, this lease may be cancelled by the State if Lessee has not mined and removed iron-bearing materials from the Premises.

## 3. Paragraph 34 is added to the Lease:

34. Ownership of Residues Re-Deposited into the Canisteo Second Tailings Basin North and South. Any residues resulting from the processing of state-owned iron-bearing materials mined from the Premises and re-deposited onto the Premises shall remain the property of the State, in the same proportion as its current ownership of iron-bearing materials, upon the termination or expiration of this lease. If Lessee intends to subsequently reprocess such residues through its plant, then any residues re-deposited onto the Premises must be segregated from unmined iron-bearing materials. Lessee, in consultation with engineering staff of the Department of Natural Resources, Division of Lands and Minerals, shall designate a location for the deposition of residues to be reprocessed. This location must be identified in Lessee's mining and processing plan to be submitted to the Lessor according to the terms of this Lease.

Lessee shall not deposit any residues mined from other properties onto the Premises.

Except as expressly provided herein, all of the provisions of the Lease shall remain in full force and effect.

IN TESTIMONY WHEREOF, the parties hereto have hereunto set their hands in triplicate the date and year first above written.

Signed in Presence of:

_____

_____
As to State

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____
   Jess Richards, Director
   Division of Lands and Minerals

Signed in Presence of:

_____

_____

_____

_____
As to Magnetation, LLC

MAGNETATION, LLC

By _____
Title: _____

By _____
Title: _____

3

STATE OF MINNESOTA      )
                        ) SS
COUNTY OF _Ramsey_      )

     The  foregoing instrument was acknowledged before me this _6th_ day of
_January_ , 20 _14_ by Jess Richards, Director, Division of Lands and Minerals, Department
of Natural Resources, on behalf of the State of Minnesota.

JENNIFER A NARVESON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES
JANUARY 31, 2017

Notary Public
My commission expires: _1/31/17_


STATE OF _Minnesota_     )
                         ) SS
COUNTY OF _Itasca_       )

     The foregoing instrument was acknowledged before me this _30_ day of _December_,
20 _13_ , by _Joe Broking_ , as _CFO_
and _Hope Wilson_ , as _CAO_ of
MAGNETATION, LLC, a Delaware limited liability company, on behalf of the company.

MICHELLE L. SERICH
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan 31, 2017

_Michelle L. Serich_
Notary Public
My commission expires: _1·31·2017_


This Instrument was drafted
by:

DEPT. OF NATURAL RESOURCES
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

4

ASSIGNMENT of
LEASE FOR IRON BEARING MATERIALS
NUMBERED R-103
CANISTEO MINE SECOND TAILINGS
BASIN NORTH AND SOUTH

Magnetation LLC, a Delaware limited liability company, 102 Northeast Third Street, Suite 120, Grand Rapids, MN 55744 does hereby assign, effective January 1, 2015, to Mag Mining, LLC, a Delaware limited liability company, 102 Northeast Third Street, Suite 120, Grand Rapids, MN 55744, all of its rights and interest under that certain LEASE FOR IRON BEARING MATERIALS NUMBERED R-103 CANISTEO MINE SECOND TAILINGS BASIN NORTH AND SOUTH dated October 3, 2011 and subsequently amended on January 4, 2014 (the "Lease R-103") between Magnetation LLC and The State of Minnesota (the "State") subject to consent by the State provided below.

Mag Mining, LLC does hereby accept such assignment, does hereby agree to perform all obligations of Magnetation LLC, as Lessee under said Lease R-103 and does hereby further agree to indemnify and hold harmless Magnetation LLC from any and all contractual obligations and liability from and after the effective date of this assignment.

DATED this 30th day of December, 2014.

MAGNETATION LLC

By: _____
Joe Broking, CFO

Witness _____

Witness _____

MAG MINING, LLC

By: _____
Joe Broking, CFO

Witness _____

Witness _____

1

R-103 assignment to Mag Mining, LLC

STATE OF MINNESOTA)
                         ) SS
COUNTY OF ITASCA   )

      The foregoing instrument was acknowledged before me this 30th day of December, 2014, by <u>Joe Broking</u> as <u>Chief Financial Officer</u> of MAGNETATION LLC, a Delaware corporation.

Notary Public
My commission expires: January 31, 2019

JANNIFER LYNN JOHNSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

STATE OF MINNESOTA)
                         ) SS
COUNTY OF ITASCA   )

      The foregoing instrument was acknowledged before me this 30th day of December, 2014, by <u>Joe Broking</u> as <u>Chief Financial Officer</u> of MAG MINING, LLC, a Delaware corporation.

Notary Public
My commission expires: January 31, 2019

JANNIFER LYNN JOHNSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

The foregoing Assignment, dated December 30, 2014, and effective January 1, 2015, between Magnetation LLC, a Delaware limited liability company, whose address is 102 NE Third Street, Suite 120, Grand Rapids, Minnesota 55744, and Mag Mining, LLC, a Delaware limited liability company, whose address is 102 NE Third Street, Suite 120, Grand Rapids, Minnesota 55744, as it affects State Lease for Iron-Bearing Materials No. R-103, and as amended, is hereby approved by the Commissioner of Natural Resources this _5th_ day of _January_, 2015, subject to the following:

1.  This approval does not relieve Magnetation LLC, and their assignees or successors in interest from any obligations, limitations or liabilities imposed by the terms of the above-described State Lease for Iron-Bearing Materials, and as amended.  This approval shall not in any way excuse the parties from compliance with any of the requirements of the State Lease for Iron-Bearing Materials, and as amended.

2.  This approval does not operate as a ratification or approval of any other assignment, agreement or contract affecting the above-described State Lease for Iron-Bearing Materials, and as amended, including subsequent assignments, agreements or contracts entered into between the parties under the Assignment.  It is clear from the term of state leases that each assignment agreement or contract affecting a state lease for iron-bearing materials, including those between parent and subsidiary corporations, requires a specific and individual approval from the state.

3.  This approval is not an assumption by the State of any obligation or liability to determine if the parties to the Assignment have complied with the provisions as specified in the Assignment.

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____
Peter Clevenstine, Assistant Director
Division of Lands and Minerals

This instrument was drafted by:
Minnesota Department of Natural Resources
Division of Lands and Minerals
500 Lafayette Road, Box 45
St. Paul, Minnesota 55155-4045

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS

SECOND AMENDMENT TO
LEASE FOR IRON-BEARING MATERIALS
NUMBERED R-103
CANISTEO MINE SECOND TAILINGS
BASIN NORTH AND SOUTH

This second amendment to Lease No. R-103 made this **25** day of **April**,
20**16**, by and between THE STATE OF MINNESOTA, under authority and subject to the
provisions of Minnesota Statutes 2014, section 93.285, subd. 3, acting by and through its
Commissioner of Natural Resources, hereinafter called the "State" and Mag Mining, LLC., a
Delaware limited liability company, hereinafter called the "Lessee",

WITNESSETH

The Lessee currently holds State Lease for Iron-Bearing Materials Numbered R-103, as
amended, hereinafter referred to as the "Lease," that remains in effect.

The Lessee has requested certain revisions to the lease terms.

NOW, THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES
HERETO, THAT STATE IRON-BEARING MATERIALS LEASE NUMBERED R-103, AS
AMENDED, is amended as follows:

**1. Paragraph 7 of the Lease is amended to read as follows:**

7. **Rental.** Commencing January 1, 2016, rental for the state-owned portion of the tailings
basin shall be $31,171.00 per year for the term of the lease, payable on January 1 of each
year.

Any amount paid for rental accrued for any calendar year shall be credited on royalty due
only for iron-bearing materials mined and removed that may become due during the same
calendar year in which the rental was due but no further. Rental paid for any calendar year
shall not be credited on any royalty paid due to the failure to meet the quarterly production
guarantee as specified in paragraph 11 herein, nor shall rental paid for any calendar year be
credited on any payment made for unmined state-owned iron-bearing materials as specified
in paragraph 17 herein. If this lease is canceled, terminated, or expires during a year for
which rental has been paid, there shall be no reimbursement of the rental payment for that
year.

1

**2. Paragraph 8 is hereby amended to read:**

8. **Royalty Payable.**
    (a)  For the period from January 1, 2015 to March 31, 2015, the base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be $0.76, subject to the escalator provisions of paragraph 9 herein.

    (b) The percent of iron recovered from the plant, hereinafter referred to as "Plant Iron Recovery", shall be determined by dividing the weight of the dry iron units in the concentrate by the weight of the dry iron units in the crude plant feed.

    (c) From and after April 1, 2015, for calendar months in which monthly Plant Iron Recovery is at or below 50%, the base royalty rate for each dry metric ton of iron-bearing materials mined from the Premises shall be $0.54, subject to the escalator provisions of paragraph 9 herein.

    (d) From and after April 1, 2015, for calendar months in which monthly Plant Iron Recovery is above 50%, the base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be determined using the following formula:

$$\$0.54 \times \frac{\% \text{ plant iron recovery}}{50\%} = \text{ new base royalty rate}$$

For example, if Plant Iron Recovery for a calendar month is 56%, the new base royalty for each dry metric ton of iron bearing materials mined from the Premises during that calendar month would be:

$$\$0.54 \times \frac{0.56}{0.50} = \$0.6048/\text{ton}$$

The new base royalty is subject to the escalator provisions of paragraph 9 herein.

    (e)  The Lessee shall be liable for royalty on all state-owned iron-bearing materials mined from the Premises. The Canisteo Mine Fine Tailings Agreement dated January 1, 1972, recorded on March 30, 1977 in the Itasca County Recorder's Office as Document Number 315698, and registered on March 30, 1977 in the Itasca County Registrar of Deeds' Office as Document Number 20135 defines ownership interests in the Canisteo Mine Second Tailings Basin by iron units.

The following is the State's current fractional ownership in the iron-bearing materials located on the Premises:

2

As to the portions of the Canisteo Mine Second Tailings Basin North and South located in Twp. 56, Rg. 24:

| Owner | Fractional Ownership as of June 1, 2011 |
|---|---|
| State | 88.92% |
| Other Owners | 11.08% |
| TOTAL: | 100% |

As to the portions of the Canisteo Mine Second Tailings Basin North and South located in Twp. 56, Rg. 25:

| Owner | Fractional Ownership as of June 1, 2011 |
|---|---|
| State | 82.75% |
| Other Owners | 17.25% |
| TOTAL: | 100% |

(f) Subject to the lien of the State as provided herein for any royalty payable thereon, iron-bearing materials so mined, upon which such royalty is paid or payable (and not delinquent) hereunder; and, the residues resulting from the treatment or processing shall be the property of the State.

(g) If Lessee elects to reprocess state-owned residues placed on the Premises which have been previously processed in the same metallurgical processing plant, Lessee shall assay said residues with analytical methods, commercial lab analyses, and representative samples, which are approved by the State, prior to any assays being conducted, to determine the iron content of such residues.   Assaying shall be at the sole expense of Lessee.  Lessee shall pay to the State a royalty on reprocessed state-owned residues at a rate per ton determined as follows:

$$\$0.54 \times (\text{residue iron content}/0.2700) = \text{residue royalty rate per ton}$$

For example, if the reprocessed residue iron content is 18.00% (dry), the base royalty rate of residues is $0.3600 per ton.

$$\$0.54 \times (.1800/0.2700) = \$0.3600/\text{ton}$$

(h) If the royalty due on the iron-bearing materials shall not be determined and accounted for as herein otherwise provided by the next quarterly payment date after the end of the quarter in which such iron-bearing materials are removed, the State may determine such royalty by such reasonable method as the State deems appropriate and give the Lessee written notice thereof, whereupon such royalty shall be due and payable within 20 days after the mailing or delivery of such notice, unless the time therefore shall be extended by the

3

commissioner. Final settlement and adjustment of the royalty due shall be made as soon as determination becomes possible.

**3. Paragraph 9(a) is hereby amended to read:**

(a) The royalties to be paid by the Lessee to the State on iron-bearing materials mined in each calendar quarter that the lease remains in force as hereinbefore specified shall be subject to increase by the monthly average price for iron ore published by <u>Platts Steel Market Daily</u> (FOB Brazil), defined as follows as the Brazil Price, as adjusted herein.

*Brazil Price*

<u>Platts Steel Market Daily</u> refers to a Brazil route under the caption currently titled "FOB netbacks per route/basis IODEX 62% Fe". The Brazil Price in dollars per dry metric ton is found under this caption in the column entitled "IODEX ($/dmt)". The monthly average of the daily published Brazil Price for the first month of each calendar quarter shall be used as the Brazil Price for purposes of calculating the royalty escalation for each calendar quarter. The monthly average shall be rounded to the nearest cent.

*Iron Content Adjustment (62% iron to 65% iron)*

The monthly average Brazil Price will be adjusted from 62% iron to 65% iron. <u>Platts Steel Market Daily</u> publishes a number in dollars per dry metric ton ($/dmt), currently titled in the daily publication as "Per 1% Fe differential (Range 60 - 63.5% Fe), $/dmt." The monthly average of the daily published price for 1% Fe differential (Range 60 – 63.5% Fe), in dollars per dry metric ton, shall be determined for the first month in each calendar quarter and used for determining the quarterly royalty escalator calculation. The monthly average Fe differential, rounded to the nearest cent, shall be multiplied by 3.00 to determine the iron content adjustment. The iron content adjustment figure shall be rounded to the nearest cent.

*Adjusted Brazil Price*

The iron content adjustment figure shall be added to the monthly average Brazil Price and the sum divided by 65. The resulting dollar figure, rounded to the nearest one-hundredth of a cent, shall then be converted into U.S. cents, hereinafter referred to as the Adjusted Brazil Price.

If the Adjusted Brazil Price per dry metric ton iron unit exceeds 101.00 (U.S. cents), which is the Base Brazil Price negotiated by the Lessee and the State, the excess shall be computed and this excess shall become the numerator of a fraction, the denominator of which shall be the Base Brazil Price, and the resulting fraction shall be multiplied by the base royalty rate per metric ton removed.

For example, if for July 2017, the monthly average published Brazil Price is 153.21 per dry metric ton, the monthly average published 1% Fe differential is 5.01, and the monthly Plant Iron Recovery is at or below 50%, the following adjustments will be made:

Iron Content Adjustment    5.01 x 3.00 = 15.03
Adjusted Brazil Price       (15.03 + 153.21)/65 = $2.5883 or 258.83 U.S. cents

4

Escalation to base royalty   $((258.83-101.00)/101.00) \times \$0.54 = \$0.8438$

In this example, the escalated royalty rate per dry metric ton for the third quarter of 2017 would be $1.3838.
($0.54 + $0.8438 = $1.3838)

Using the same example as above, except with a monthly Plant Iron Recovery of 56%, the escalation to the base royalty would be as follows:

$((258.83-101.00)/101.00) \times \$0.6048 = \$0.9451$

$0.6048 + $0.9451 = $1.5499   escalated royalty rate

In no event shall the escalated royalty rate per ton payable to the State be less than the royalty rates per ton payable under any of those certain leases or licenses issued to the Lessee herein and covering the remaining portions of iron-bearing materials located in the Canisteo Mine Second Tailings Basin North and South, nor less that the following, whichever is higher:

   i) the base royalty rate stated in Paragraph 8(c) for months in which monthly Plant Iron Recovery is at or below 50%; or
   ii) the base royalty rate as calculated using the formula found in Paragraph 8(d) for months in which monthly Plant Iron Recovery is above 50%.

**4. Paragraph 34 of the Lease is hereby amended to read:**

   34. Ownership of Residues Re-Deposited into the Canisteo Second Tailings Basin North and South. Any iron-bearing residues resulting from the processing of state-owned iron-bearing materials mined from the Premises and re-deposited onto the Premises shall remain the property of the State.

The written approval of the State is required before any iron-bearing residues mined from other properties are deposited onto the Premises. Such iron-bearing residues become the property of the State upon deposition. Lessee shall keep an accounting of the amount of material deposited onto the Premises from other properties.

All residues placed on the Premises must be segregated from unmined iron-bearing materials. Lessee, in consultation with the engineering staff of the Department of Natural Resources, Division of Lands and Minerals, shall designate a location for the deposition of residues to be reprocessed. This location must be identified in Lessee's mining and processing plan to be submitted to and approved by the State, according to Paragraph 5 of this Lease.

**5.** For the period of April 1, 2015 through June 30, 2016, the royalty payable to the State shall be reduced by 18%. This royalty reduction shall not apply to the royalty payable to the State on reprocessed residues.

5

**6.** Notwithstanding any provision herein to the contrary, for the period of April 1, 2015 through December 31, 2016, in no event shall the escalated royalty rate per ton payable to the State be less than the following:

    a) the base royalty rate stated in Paragraph 8(c) for months in which monthly
          Plant Iron Recovery is at or below 50%; or

    b) the base royalty rate as calculated using the formula found in Paragraph 8(d)
          for months in which monthly Plant Iron Recovery is above 50%.


      Except as expressly provided herein, all of the provisions of the Lease shall remain in full force and effect.


IN TESTIMONY WHEREOF, the parties hereto have hereunto set their hands in triplicate the date and year first above written.


Signed in Presence of:

_____

_____
As to State

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____
   Jess Richards, Director
   Division of Lands and Minerals


Signed in Presence of:

_____

_____

_____

_____
As to Mag Mining, LLC

MAG MINING, LLC

By _____
Title:_____
        CEO

By _____
Title:_____
        CEO

STATE OF MINNESOTA          )
                            )SS
COUNTY OF ~~Ramsey~~        )

    The foregoing instrument was acknowledged before me this _25_ day of
_April_ , 20 _16_ by Jess Richards, Director, Division of Lands and Minerals, Department
of Natural Resources, on behalf of the State of Minnesota.

_____
Notary Public
My commission expires: _1/31/20_

PATRICIA D KANDAKAI
Notary Public
Minnesota
My Commission Expires January 31, 2020

STATE OF _Minnesota_          )
                             )SS
COUNTY OF _Itasca_           )

    The foregoing instrument was acknowledged before me this _8th_ day of _January_ ,
20 _16_ by _Jon Broking_ , as _CFO_
and _Larry Lehtinen_ , as _CEO_ of
MAG MINING, LLC, a Delaware limited liability company, on behalf of the company.

_____
Notary Public
My commission expires: _January 31, 2019_

JANNIFER LYNN JOHNSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

7

Office of Commissioner of Natural Resources
STATE OF MINNESOTA

I hereby certify that this instrument was filed in this office
on ____April 27_____, 20 16.

By _Vicki Sellner_____

This Instrument was drafted
by:

DEPT. OF NATURAL RESOURCES
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS

THIRD AMENDMENT TO
LEASE FOR IRON-BEARING MATERIALS
NUMBERED R-103, AND
SECOND AMENDMENT TO
LEASES FOR IRON-BEARING MATERIALS
NUMBERED R-108 AND R-125

This agreement, made this 25th day of January, 2017, by and between THE STATE OF MINNESOTA, under authority and subject to the provisions of Minnesota Statutes 2014, section 93.285, subd. 3, acting by and through its Commissioner of Natural Resources, hereinafter called the "State" and ERP IRON ORE, LLC., a Virginia limited liability company, hereinafter called ERPI or the "Lessee",

<u>WITNESSETH</u>

In accordance with the *Order Granting Joint Motion for an Order (I) Approving the Sale of Substantially All of the Debtors' Remaining Assets, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (Dkt. No. 1197), entered December 21, 2016, in the jointly administered under the caption *In re Magnetation LLC, et al.*, 15-50307 (WJF) (Bankr. D. Minn.) (the "Bankruptcy Case"), and the Settlement Agreement, Mag Mining, LLC has assumed and assigned to ERPI the following state leases, as further amended pursuant to the Settlement Agreement, hereinafter defined as "Mining Leases":

Lease No. R-103, for iron-bearing materials, Canisteo Mine Second Tailings Basin North and South, dated October 3, 2011, as amended January 6, 2014 and April 25, 2016.

Lease No. R-108, for iron bearing materials, Buckeye Tailings Basin # 2, dated May 31, 2012, as amended April 25, 2016.

Lease No. R-125, for iron bearing materials, Canisteo Mine First Tailings Basin North and South, dated January 7, 2015, as amended April 25, 2016.

The assumption and assignment of the leases is set forth in the Assumption and Assignment, State of Minnesota Leases, dated January 25, 2017.

In resolving issues pending in the Bankruptcy Case, the State and the Lessee have agreed on certain terms and conditions of the assumption and assignment to ERPI of the Mining Leases. Without limitation, the State and ERPI entered into a Settlement Agreement, dated January 25, 2017 (the "Settlement Agreement").

11

102171263

"Settlement Agreement").

NOW, THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES HERETO, as follows:

1. **Royalties.**

As set forth in the Settlement Agreement at paragraph 5(b), ERPI hereby accepts all duties and obligations under the terms and conditions of said Mining Leases for the remainder of the lease terms, and for the payment of all Assumed Liabilities (as defined in the Settlement Agreement) as set forth in paragraph 5(b) of the Settlement Agreement.

In addition, and as set forth in the Settlement Agreement at paragraph 5(d), the Royalties and Other Costs (as defined in the Settlement Agreement) shall be deferred and paid on or before January 1, 2018, with payments in three equal installments on July 1, 2017, October 1, 2017 and January 1, 2018.

2. **Event of Default.**

In consideration for the State's deferral of the payment of these amounts due to the State, ERPI agrees that failure by ERPI to make timely payments of the Royalties and Other Costs pursuant to the schedule set forth in paragraph 5(d) of the Settlement Agreement shall constitute an immediate event of default with respect to each and every one of the Mining Leases (an "Event of Default"). In the Event of Default, the unpaid amount of the Royalties and Other Costs due and owing shall constitute a lien on all real and personal property of ERPI in favor of the State, without need for further demand of ERPI by the State.

Except as expressly provided herein, all of the provisions of the Mining Leases shall remain in full force and effect.

IN TESTIMONY WHEREOF, the parties hereto have hereunto set their hands in triplicate the date and year first above written.

Signed in Presence of:                    STATE OF MINNESOTA
                                          DEPARTMENT OF NATURAL RESOURCES

                                          By _____
                                             Jess Richards, Director
                                             Division of Lands and Minerals

As to State

12

102171263

Signed in Presence of:                              ERP IRON ORE, LLC

_Amy Ardt_                                          By _[signature]_
_C. Vasylenko._                                     Title: Authorized Signatory

As to ERP Iron Ore, LLC


STATE OF ___VA___                )
                                 ) SS
COUNTY OF _Rockbridge_           )

    The foregoing instrument was acknowledged before me this _6_ day of _January_,
20_17_, by Thomas Clarke, as Authorized Signatory of ERP IRON ORE, LLC, a Virginia limited
liability company, on behalf of the company.


                                    _Jennifer Elaine Bell_
                                    Notary Public
                                    My commission expires: _10|31|2020_

102171263

Signed in Presence of:                    ERP IRON ORE, LLC


_____          By_____
                                          Title: Authorized Signatory

_____
As to ERP Iron Ore, LLC


STATE OF MINNESOTA      )
                        ) SS
COUNTY OF _Ramsey_____  )


    The foregoing instrument was acknowledged before me this _26th_ day of _January_____, 20_17_ by Jess Richards, Director, Division of Lands and Minerals, Department of Natural Resources, on behalf of the State of Minnesota.


KATHERINE EMILY GIEL
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2021

_____
Notary Public
My commission expires: _Jan. 31, 2021_


STATE OF _____  )
                          ) SS
COUNTY OF _____ )


    The foregoing instrument was acknowledged before me this ____ day of _____, 20____, by Thomas Clarke, as Authorized Signatory of ERP Iron Ore, LLC, a Virginia limited liability company, on behalf of the company.


_____
Notary Public
My commission expires: _____


13

102171263

This Instrument was drafted by:

DEPT. OF NATURAL RESOURCES
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

102171263

ASSUMPTION AND ASSIGNMENT
STATE OF MINNESOTA LEASES

Effective this 25th day of January, 2017, and in accordance with the *Order Granting Joint Motion for an Order (I) Approving the Sale of Substantially All of the Debtors' Remaining Assets, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (Dkt. No. 1197), entered December 21, 2016, in the case captioned *In re Magnetation, LLC, et al.*, No. 15-50307 (WJF) (Bankr. D. Minn. 2015), and that certain Settlement Agreement - State of Minnesota made as of January 25, 2017, Magnetation LLC and Mag Mining LLC hereby assume and assign the following state leases to ERP Iron Ore, LLC ("ERPI"), each as amended:

Lease No. R-103, for iron-bearing materials, Canisteo Mine Second Tailings Basin North and South, dated October 3, 2011.

Lease No. R-108, for iron bearing materials, Buckeye Tailings Basin # 2, dated May 31, 2012.

Lease No. R-125, for iron bearing materials, Canisteo Mine First Tailings Basin North and South, dated January 7, 2015.

Iron Ore Mining Lease No. 2105-N, dated March 7, 2013.

Iron Ore Mining Lease No. 2106-N, dated March 7, 2013.

Iron Ore Mining Lease No. 2107-N, dated March 7, 2013.

Iron Ore Mining Lease No. 2108-N, dated March 7, 2013.

Iron Ore Mining Lease No. I-5015-N, dated March 7, 2013.

LMIS000786, dated July 1, 2012.

LMIS000790, dated July 1, 2012.

Agreement for Maintenance and Use of DNR Water Level Observation Well By and Between The State of Minnesota and Magnetation, LLC, dated June 19, 2013.

6

IN TESTIMONY WHEREOF, the parties hereto have hereunto set their hands in triplicate the date and year first above written.

Signed in Presence of:

MAGNETATION LLC

By ~~Michael J. Talarico~~
Title: Chief Restructuring Officer

As to Magnetation LLC

STATE OF Minnesota )
                   ) SS
COUNTY OF Itasca )

NOTARY STAMP:
HOPE ELIZABETH WILSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

    The foregoing instrument was acknowledged before me this 13th day of January 20 17, by Michael Talarico, as Chief Restructuring Officer of MAGNETATION LLC, a Delaware limited liability company, on behalf of the company.

Hope Elizabeth Wilson
Notary Public
My commission expires: 1/31/2019

Signed in Presence of:

MAG MINING LLC

By ~~Michael J. Talarico~~
Title: Chief Restructuring Officer

As to Mag Mining, LLC

STATE OF Minnesota )
                   ) SS
COUNTY OF Itasca )

NOTARY STAMP:
HOPE ELIZABETH WILSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

    The foregoing instrument was acknowledged before me this 13th day of January 20 17, by Michael Talarico, as Chief Restructuring Officer of MAG MINING, LLC, a Delaware limited liability company, on behalf of the company.

Hope Elizabeth Wilson
Notary Public
My commission expires: 1/31/2017

16

102171263

Signed in Presence of:                          ERP IRON ORE, LLC



                                                By _____
                                                Title: Authorized Signatory

As to ERP Iron Ore, LLC


STATE OF _____VA_____ )
                      ) SS
COUNTY OF _Rockbridge_ )

        The foregoing instrument was acknowledged before me this _6_ day of _January_,
20_17_ , by Thomas Clarke, as Authorized Signatory of ERP IRON ORE, LLC, a Virginia limited
liability company, on behalf of the company.


                                        _Jennifer Elaine Bell_
                                        Notary Public
                                        My commission expires: _10|31|2020_


17

102171263

The State of Minnesota, acting through its commissioner of natural resources, hereby consents to the above assignment and assumption of state leases this 26th day of _January_, 20 17.

Signed in Presence of:

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____

Jess Richards, Director
Division of Lands and Minerals

As to State

STATE OF MINNESOTA    )
                     ) SS
COUNTY OF Ramsey      )

The foregoing instrument was acknowledged before me this 26th day of _January_, 20 17 by Jess Richards, Director, Division of Lands and Minerals, Department of Natural Resources, on behalf of the State of Minnesota.

KATHERINE EMILY GIEL
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2021.

Notary Public
My commission expires: Jan. 31, 2021

This Instrument was drafted by:

DEPT. OF NATURAL RESOURCES
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

9

102171263

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS


LEASE FOR IRON-BEARING MATERIALS
<u>BUCKEYE TAILINGS BASIN #2</u>

Lease No. R-108

This lease, executed in triplicate this 31st day of May, 2012, and effective May 1, 2012, by and between the State of Minnesota, under authority and subject to the provisions of Minnesota Statutes 2010, section 93.285, subd. 3, acting by and through its Commissioner of Natural Resources, hereinafter called the "State", and Magnetation LLC, a Delaware limited liability company, hereinafter called the "Lessee."


<u>WITNESSETH:</u>

1. **Premises.** The State, in consideration of the covenants and agreements hereof to be performed by the Lessee, hereby leases unto the Lessee, subject to the conditions hereinafter stated, the state-owned iron-bearing fine tailings, without warranty of title, located in the Buckeye Tailings Basin #2, described as follows:

That part of the Southeast Quarter of the Northwest Quarter (SE1/4-NW1/4), Southwest Quarter of the Northwest Quarter (SW1/4-NW1/4), Southwest Quarter (SW1/4), Northwest Quarter of the Southeast Quarter (NW1/4-SE1/4), and the Southwest Quarter of the Southeast Quarter (SW1/4-SE1/4) of Section Twenty-five (25), Township Fifty-six (56) North, Range Twenty-five (25) West of the Fourth Principal Meridian described as follows:

Assuming the east property line of said Southeast Quarter of the Northwest Quarter (SE1/4-NW1/4) in Section 25, Township 56, Range 25 to be due north and south and starting at the southeast corner of said Southeast Quarter of the Northwest Quarter (SE1/4-NW1/4) as the point of beginning; thence due North 1,276.67 feet; thence South 86 degrees 52 minutes, 17 seconds West 1,345.20 feet to a point on the west property line of said Southeast Quarter of the Northwest Quarter (SE1/4-NW1/4); thence South 88 degrees 0 minutes 49 seconds West 1,220.42 feet; thence South 0 degrees 48 minutes 12 seconds West 1,237.96 feet to a point on the south property line of said Southwest Quarter of the Northwest Quarter (SW1/4-NW1/4) of Section 25, Township 56, Range 25; thence South 0 degrees 35 minutes 17 seconds East 1,315.26 feet to a point on east-west one-sixteenth (1/16) line of said Southwest Quarter (SW1/4) of Section 25, Township 56, Range 25; thence South 1 degree 7 minutes 15 seconds East 816.37 feet; thence North 89 degrees 2 minutes 30 seconds East 195.48 feet; thence North 79 degrees 5 minutes, 49 seconds East 897.03 feet; thence South 89 degrees 12 minutes 37 seconds East 139.32 feet to a point on north-south one-sixteenth (1/16) line of said Southwest Quarter (SW1/4); thence on the same bearing 537.57 feet; thence North 83 degrees 26 minutes 40 seconds East 502.69 feet; thence South 88 degrees 48 minutes 5 seconds East

**Exhibit B**

298.32 feet to a point on the east property line of said Southwest Quarter (SW1/4); thence on the same bearing 127 feet; thence North 35 degrees 12 minutes 40 seconds East 83.30 feet; thence North 0 degrees 27 minutes 44 seconds East 611.57 feet to a point on the north property line of said Southwest Quarter of the Southeast Quarter (SW1/4-SE1/4) of Section 25, Township 56, Range 25; thence North 0 degrees 31 minutes 20 seconds West 1,089.63 feet; thence North 36 degrees 49 minutes 46 seconds West 283.60 feet to the point of beginning;

all in Itasca County, Minnesota, containing approximately 201.20 acres;

which shall hereafter be referred to as the "Premises." The attached Map Exhibit 1 depicts the leased Premises.

2. **Lease Term.** This lease shall be in effect for a period of 20 years from the effective date noted above.

3. **Use of Premises and Purpose of the Lease.** The Premises are leased to the Lessee for the purpose of mining iron-bearing fine tailings.

4. **State's Right to Lease Surface and Sell Timber.** The State reserves the right to sell and dispose of, under the provisions of law now or hereinafter governing the sale of timber on state lands, all the timber upon the land hereby leased, and reserves to the purchaser of such timber, or agents and servants of the purchaser, the right at all times to enter thereon, and to cut and remove any and all such timber therefrom, according to the terms of the purchaser's contract with the state, and without let or hindrance from the Lessee, but such purchaser shall not unnecessarily or materially interfere with the mining operations carried on thereon. The purchaser of the timber will agree to assume entire responsibility and liability for all damages and injury to all persons and property whether caused by the purchaser, the purchaser's officers, agents or employees, arising from activities undertaken based on the timber permit or the purchaser's use or occupancy of the Premises covered by the timber permit.

The State further reserves the right to grant leases, permits or licenses to any portion of the surface of the demised Premises to any person or corporation under authority of section 92.50, or other applicable laws, without let or hindrance from the Lessee, but such leases, permits or licenses shall not unnecessarily or materially interfere with the mining operations carried on thereon. The surface lessee will agree, for the benefit of both parties to this lease, to assume entire responsibility and liability for all damages and injury to all persons and property whether caused by the surface lessee or the surface lessee's officers, agents or employees, arising from activities undertaken based on the surface lease or the surface lessee's use or occupancy of the premises covered by the surface lease.

5. **Material Removal and Processing Plan.** A plan for mining and processing the iron-bearing materials shall be submitted in writing to the State for review and approval in writing by the Commissioner of Natural Resources, prior to the mining or processing of any iron-bearing material from the Premises. Such plan shall include, but not be limited to, the method and measurement of determining the quantity and volume of iron-bearing materials mined and

processed, the locations of mining, the method of mining iron-bearing materials and the equipment that will be used, and if residues are to be re-deposited onto the Premises, the location of such planned depositions.

Upon the commencement of mining, failure by the Lessee to implement the plan as approved by the commissioner is a default of the lease herein. Any changes to the approved plan shall be submitted in writing to the State and be approved in writing by the Commissioner of Natural Resources before any such changes may be implemented.

6. **Rental.** Rental for the state-owned portion of the tailings basin shall be $18,108.00 per year for the term of the lease, payable on January 1 of each year.

Any amount paid for rental accrued for any calendar year shall be credited on royalty due only for iron-bearing materials mined and removed that may become due during the same calendar year in which the rental was due but no further. Rental paid for any calendar year shall not be credited on any royalty paid due to the failure to meet the quarterly production guarantee as specified in paragraph 10 herein. If this lease is canceled, terminated, or expires during a year for which rental has been paid, there shall be no reimbursement of the rental payment for that year.

7. **Royalty Payable.**
   (a) The base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be $0.60, subject to the escalator provisions of paragraph 8 herein.

   (b) The Lessee shall be liable for royalty on all state-owned iron-bearing materials mined from the Premises.

The following is the State's current fractional ownership in the iron-bearing materials located on the Premises:

| Owner | Fractional Ownership as of June 1, 2011 |
|---|---|
| State (school trust fund) | 78.54% |
| State (tax forfeit fund) | 21.46% |
| TOTAL: | 100% |

   c) Subject to the lien of the State, as provided in paragraph 11 herein for any royalty payable thereon, iron-bearing materials so mined, upon which such royalty is paid or payable (and not delinquent) hereunder, and the residues resulting from the treatment thereof, shall be the property of the Lessee.

   (d) If the royalty due on the iron-bearing materials shall not be determined and accounted for as herein otherwise provided by the next quarterly payment date after the end of the quarter in which such iron-bearing materials are removed, the State may determine such royalty by such reasonable method as the State deems appropriate and give the Lessee

written notice thereof, whereupon such royalty shall be due and payable within 20 days after the mailing or delivery of such notice, unless the time therefore shall be extended by the commissioner. Final settlement and adjustment of the royalty due shall be made as soon as determination becomes possible.

8. **Escalator Clause**.

(a) The royalties to be paid by the Lessee to the State on iron-bearing materials mined in each calendar quarter that the lease remains in force as hereinbefore specified shall be subject to increase by the monthly average price for iron ore published by Platts Steel Market Daily (FOB Brazil), defined as follows as the Brazil Price, as adjusted herein.

*Brazil Price*
Platts Steel Market Daily refers to a Brazil route under the caption currently titled "FOB netbacks per route/basis IODEX 62% Fe". The Brazil Price in dollars per dry metric ton is found under this caption in the column entitled "IODEX ($/dmt)". The monthly average of the daily published Brazil Price for the first month of each calendar quarter shall be used as the Brazil Price for purposes of calculating the royalty escalation for each calendar quarter. The monthly average shall be rounded to the nearest cent.

*Iron Content Adjustment (62% iron to 65% iron)*
The monthly average Brazil Price will be adjusted from 62% iron to 65% iron. Platts Steel Market Daily publishes a number in dollars per dry metric ton ($/dmt), currently titled in the daily publication as "Per 1% Fe differential (Range 60 - 63.5% Fe), $/dmt." The monthly average of the daily published price for 1% Fe differential (Range 60 – 63.5% Fe), in dollars per dry metric ton, shall be determined for the first month in each calendar quarter and used for determining the quarterly royalty escalator calculation. The monthly average Fe differential, rounded to the nearest cent, shall be multiplied by 3.00 to determine the iron content adjustment. The iron content adjustment figure shall be rounded to the nearest cent.

*Adjusted Brazil Price*
The iron content adjustment figure shall be added to the monthly average Brazil Price and the sum divided by 65. The resulting dollar figure, rounded to the nearest one-hundredth of a cent, shall then be converted into U.S. cents, hereinafter referred to as the Adjusted Brazil Price.

If the Adjusted Brazil Price per dry metric ton iron unit exceeds 101.00 (U.S. cents), which is the Base Brazil Price negotiated by the Lessee and the State, the excess shall be computed and this excess shall become the numerator of a fraction, the denominator of which shall be the Base Brazil Price, and the resulting fraction shall be multiplied by the base royalty rate per metric ton removed.

For example, if for July 2015, the monthly average published Brazil Price is 153.21 per dry metric ton, and the monthly average published 1% Fe differential is 5.01, the following adjustments will be made:

Iron Content Adjustment   $5.01 \times 3.00 = 15.03$

Adjusted Brazil Price      (15.03 + 153.21)/65 = \$2.5883 or 258.83 U.S. cents

Escalation to base royalty   ((258.83-101.00)/101.00) x \$0.60 = \$0.9376

In this example, the royalty rate per dry metric ton for the third quarter of 2015 would be
\$1.7076.
(\$0.60 + \$0.9376 = \$1.7076)

In no event shall the royalty rate payable be less the minimum royalty rate prescribed in
paragraph 7(a).

(b) In the event <u>Platts Steel Market Daily</u> or its successors cease to quote a prevailing iron
ore price FOB Brazil or a prevailing Fe differential, or these quotations cease to reflect
transactions sold at arms length, or these quotations cease to accurately reflect market
conditions, the quotations to be used as previously provided must be the quotations
independently published, which, after necessary adjustments, if any, provide the most
reasonable substitutes for the quotations published in <u>Platts Steel Market Daily</u>, it being
intended to substitute quotations that most accurately reflect arms length transactions of the
prevailing price of iron ore FOB Brazil or the prevailing Fe differential, in the manner
currently reported by <u>Platts Steel Market Daily</u>. In case such published quotations shall
cease to be available, or cease to reflect arms length transactions, or cease to be deemed
accurate, and the parties hereto fail within a reasonable time to agree upon such new method
or formula for the adjustment of royalty rates hereunder, the same shall be determined by
arbitration in the manner hereinafter provided.

9. **Method of Computing Royalty Rates.** In computing royalty rates hereunder, any fraction of
a cent less than five-thousandths shall be disregarded and any fraction amounting to five-
thousandths or more shall be counted as one-hundredth of a cent.

10. **Production Guarantee.**
    (a) From and after October 1, 2014, the Lessee agrees to mine and remove from the
Premises 50,000 dry metric tons of state-owned iron-bearing materials during each calendar
quarter for the remaining term of the lease.

    (b) If Lessee fails to mine and remove the tonnage of iron-bearing materials from the
Premises as noted, above, in clause (a), it shall on or before the twentieth day of the month
following the calendar quarter during which such tonnage should have been mined and
removed report to the State the deficiency between the tons mined and removed and the
amount required to equal the required amount of production for that calendar quarter. Lessee
shall pay on or before the twentieth day of the month following the calendar quarter to the
State, as a production guarantee royalty, an amount computed by multiplying \$0.60 plus the
escalation amount applicable as of the calendar quarter pursuant to paragraph 8, above, by
the deficiency between the number of tons of state-owned iron-bearing materials mined and
removed and the amount needed to equal the required production for that calendar quarter.
The production guarantee royalty shall be paid in the same manner as the rentals and

royalties provided for in this lease. No amount paid as production guarantee royalty shall be credited against any future royalties.

(c) If Lessee pays a production guarantee royalty as provided above, the State shall have no further remedy, and shall claim no further damages, arising out of the failure of Lessee to mine and remove the required tonnages, except as provided for in paragraph 27(g) herein.

11. **State Lien for Unpaid Sums Due.** The State reserves and shall at all times have a lien upon all iron-bearing materials mined from the Premises and upon all improvements made by the Lessee upon the land covered by this lease for any unpaid sums due hereunder.

12. **Quarterly Royalty Payment on Iron-Bearing Materials Mined.** The Lessee covenants and agrees to pay to the State, on or before the twentieth day of April, July, October, and January in each year during the period this lease continues in force, royalty at the rates hereinbefore specified for iron-bearing materials mined from said Premises during the three months preceding the first day of the month in which such payment is due as hereinbefore provided.

13. **Statement of Iron-Bearing Materials Mined and Royalty Due.** The Lessee shall transmit to the State with each royalty payment an exact and truthful statement of the tonnage of iron-bearing materials mined during the three months for which such payment is made and the royalty due thereon, determined as herein provided. The Lessee shall provide for all the operations required for such determination except as otherwise specified.

14. **Weighing and Sampling.** a) The Lessee shall submit a plan for determining the weight of iron-bearing materials mined from the Premises to the State and such plan must be approved in writing by the Commissioner of Natural Resources before any iron-bearing materials are mined from the Premises.

  i) Using the state-approved plan, the Lessee will determine the weight of iron-bearing material mined and determine the moisture of such materials to calculate a dry weight. The moisture of the iron-bearing materials will be sampled and determined according to the sampling program as in paragraph 14(a)(ii) below.

  ii) A sampling program for moisture determination must be submitted to the State and approved in writing by the Commissioner of Natural Resources, prior to the mining of any iron-bearing material from the Premises.

  iii) The State shall periodically inspect the Premises, moisture sampling procedures, and scale calibrations.

b) The Lessee shall install and properly maintain belt scales certified by the State of Minnesota or other weighing devices certified by the State of Minnesota for the determination of the weight of iron-bearing materials mined. The Lessee shall adopt suitable methods and practices for determining, allocating and recording such weights. The scales and weighing devices installed, and the methods and practices for determining, allocating and

recording such weights, shall be subject to the prior review and approval by the State, and the Lessee shall comply with all reasonable requirements of the State with respect thereto.

c) The State shall have the right to inspect, review and test the correctness of any weighing devices installed or weighing methods used by the Lessee and the weights shown thereby, and the manner and method of weighing, at any and all times. Any errors in weighing, when ascertained by the State, shall be promptly recognized and corrected by the Lessee.

d) The State may appoint such special inspectors of such scales, weighing devices, and methods and practices as the State deems necessary to insure proper accounting and protect the interests of the State, and the Lessee shall reimburse the State monthly for the cost of all such inspection service upon notification thereof by the Commissioner.

e) The Lessee shall not mix the iron-bearing materials mined from the Premises with iron-bearing materials from any other tailings basin prior to the weighing, sampling, and payment in full of royalty owed thereon, without the prior written approval of the State.

15. **Stockpiling Off-Premises.** Should the Lessee stockpile state-owned iron-bearing materials off the Premises for a temporary period exceeding three (3) months, the State may prescribe methods of sampling and weighing such state-owned iron-bearing materials for the purpose of determining the amount of royalty due. Lessee shall keep accurate records of quantities of state-owned iron-bearing materials removed from and stockpiled off the Premises, and other information which the Commissioner of Natural Resources may prescribe. Royalty owed on such stockpiled iron-bearing materials shall be determined as of the date of removal from the Premises, according to paragraphs 7 and 8 herein. Royalty owed on such stockpiled state-owned iron-bearing materials shall be paid by the Lessee in accordance with paragraph 12 herein.

16. **Arbitration Clause.** If any dispute shall arise between the parties as to the method of computing the weight and the royalty rate per dry metric ton of iron-bearing materials mined, or if the parties to this lease cannot agree upon substitute quotations as provided under paragraph 8(b) herein, each shall choose an arbitrator and the two thus selected shall choose a third. The decision of the arbitrators or any two of them shall be final and binding on the parties in interest. The agreement or the decision of the arbitrators shall be attached as a supplement to the lease.

The Lessee shall reimburse the State for all costs and expenses incurred in connection with the determination of the weight of iron-bearing materials mined. Each party to the arbitration shall bear their respective share of the costs for arbitration as to substitute quotations as provided under paragraph 8(b).

17. **Ownership of Iron-Bearing Residues Re-Deposited into the Buckeye Tailings Basin #2.** Any iron-bearing residues resulting from the processing of iron-bearing materials mined from the Premises and re-deposited onto the Premises shall remain the property of the State.

Lessee shall not deposit any iron-bearing residues mined from other properties onto the Premises without the prior written approval of the Commissioner of Natural Resources.

18. **Ownership of Unmined Iron-Bearing Materials.**   Any unmined state-owned iron-bearing materials on the Premises shall remain the property of the State.

19. **Monthly Reports.**   Except as otherwise permitted by the State, the Lessee shall transmit to the State on or before the tenth of each month a statement in such form as the State shall prescribe, covering all iron-bearing materials mined from said Premises during the preceding calendar month, showing the weight of the iron-bearing materials, the royalty computed to be due thereon, and such other information pertaining thereto as the State may require.   With the approval of the Commissioner of Natural Resources, for the purpose of computing and accounting for royalty, iron-bearing materials may be considered as mined from said land in the month in which it was weighed, but the Lessee shall nevertheless be liable for the royalty on all iron-bearing materials from and after the actual time of mining from said Premises. The weights of iron-bearing materials as set forth in said monthly statements shall be prima facie binding as between the parties, but the State shall have the right at any time, and in such manner as it may see fit, to sample the iron-bearing materials, check the analyses, and inspect, review, and test the correctness of the methods, books, records, accounts, tabulations, maps, reports, and digital data, of the Lessee in sampling, analyzing, recording, and reporting such grades and weights, and to inspect, review, and test the correctness of the scales and other equipment used in weighing the iron-bearing materials and of the weights reported as aforesaid, it being understood that any errors in these respects, when ascertained, shall be corrected.

The monthly report shall be sent within ten (10) days after the end of each month to the Minnesota Department of Natural Resources, Division of Lands and Minerals, 1525 Third Avenue East, Hibbing, Minnesota 55746.

20. **State Inspection.**   The State shall have the right to inspect the Premises at any and all times for any purpose.   The books, records and documents of Lessee relevant to this lease are subject to examination by the State.   The provisions of this section shall survive the termination of this lease.

The State, or agents thereof, shall have the right to enter and inspect at any time any plant where iron-bearing materials from said Premises are treated or beneficiated, and to take such samples and make such tests as may be necessary to determine the effects of such treatment or beneficiation.

21. **Maintenance of Premises.**   The Lessee hereby expressly agrees to keep and leave the premises neat, clean, and in safe condition, and to remove therefrom all refuse and debris that may from time to time accumulate.   The Lessee shall take all necessary precautions, including appropriate tailings basin dike maintenance, to prevent spillage or sloughing of materials.

22. **Invasive Species.** The Lessee is responsible for controlling invasive species on the Premises.

23. **Liability.** This lease shall not be construed as imposing any liability on the State for injury to persons or property of the Lessee or any other persons or property, arising out of any use of the described Premises hereunder or under any other license, lease, easement or permit now or hereafter made. The Lessee shall indemnify and hold harmless the State from all claims arising out of use of said Premises hereunder, whether such claims are asserted by civil action or otherwise.

24. **Legal Obligations.** The provisions of this lease are subject to all applicable state and federal statutes, orders, rules and regulations, and all operations under this lease shall be conducted in conformity with them.

25. **Transfers.** This lease shall extend to, and bind successors, heirs, legal representatives and assigns of the State and Lessee. In addition, the Lessee shall not, without the State's prior written consent:
    a) assign, convey, mortgage, pledge, encumber or otherwise transfer this lease or any interest under it;
    b) allow any transfer or any lien upon Lessee's interest by merger, operation of law, or otherwise;
    c) sublet the Premises or any part thereof; or
    d) permit the use or occupancy of the Premises or any part thereof by anyone other than the Lessee.

26. **Taxes.** The Lessee shall pay, when due, all taxes assessed against or levied upon the Premises or upon structures, improvements, furnishings, equipment and other personal property of the Lessee located on the Premises during the term of this lease.

27. **Termination/Cancellation.**
    a) This lease may be terminated at any time by mutual written agreement.

    b) The Lessee may at any time deliver to the State written notice of intention to terminate this lease, and this lease shall terminate 60 days after the delivery unless the notice is revoked by the Lessee by further written notice delivered to the State before the expiration of the 60 days. All sums due to the State under this lease up to the effective date of termination must be paid by the Lessee.

    c) This lease is granted upon the express condition that, if any sum owed under it by the Lessee for rental, royalty or otherwise remains unpaid after the time when it became due, or if the Lessee knowingly or willingly makes any false statement in any report, account, or tabulation submitted to the State pertaining to any matter under this lease, or if the Lessee fails to perform any of the conditions required by this lease, the State may cancel this lease by mailing or delivering to the Lessee 60 days' notice of the cancellation in writing, specifying such nonpayment or other default as the case may be. This lease shall

terminate at the expiration of the 60 days, and the Lessee and all persons claiming under the Lessee shall be wholly excluded from the Premises, except as provided herein.

If the default consists of a nonperformance of an act required under this lease other than the payment of rental or royalty, the Lessee may perform within the 60 days and the lease continues in effect. If the correction of any such default requires more time than 60 days after the notice has been received by the Lessee, the Commissioner of Natural Resources, upon written request of the Lessee and for good cause shown, may, at his or her discretion, grant an extension of the period of 60 days.

If the default consists of a nonpayment of rental or royalty and the Lessee performs within 15 days from the mailing or delivery of such notice of cancellation, the lease continues in effect; and if the Lessee performs at any time thereafter within the period of 60 days, the Commissioner of Natural Resources, at his or her discretion, may continue the lease in effect.

d) Termination or cancellation does not relieve the Lessee from any liability for payment or other liability incurred under this lease.

e) The Lessee shall have 90 days after the termination or cancellation of this lease in which to remove all equipment, materials, structures, and other property placed or erected by the Lessee upon said Premises and must restore the Premises to a condition satisfactory to the State. The Lessee shall not remove or impair any dikes, dams, structures or other supports necessary to the maintenance of the tailings basin. If the Lessee fails to remove its property and clean up the Premises, the State may dispose of such property and restore the Premises to a neat and orderly condition. In this case, the Lessee agrees to repay the expense incurred by the State.

f) It is understood and agreed that upon termination of this lease by expiration of the term thereto or otherwise, the Lessee shall peacefully and quietly surrender the Premises to the State.

g) From and after July 1, 2015, this lease may be cancelled by the State if Lessee has not mined and removed iron-bearing materials from the Premises.

28. **Lessee to Acquire Necessary Rights to Interests Not Owned by State.** It is understood and agreed that in case any interest in the land covered by this lease or in any minerals or iron-bearing materials therein is owned by anyone other than the State, this lease shall not be construed as authorizing any invasion of or trespass upon such other interest, that in case it shall be necessary to make use of any such other interest in connection with any operations hereunder, the Lessee shall obtain all necessary legal rights therefore before proceeding therewith, that the Lessee shall be liable for all damages to any such other interest caused by any operations hereunder, and that the State shall not incur or be subject to any liability therefore.

29. **Wetlands Construction.** In the event the Lessee wishes to create wetlands on the Premises, prior to the creation of any wetlands the Lessee will provide its wetlands construction plan to the State for review and approval in writing by the Commissioner of Natural Resources. Such plan shall include the acreages and locations of wetlands to be created. A separate agreement between the Lessee and the State will be necessary to address outstanding issues involving the state-owned lands and tailings and the created wetlands, such as compensation to the State for state-owned lands and tailings in the wetlands.

30. **No Waiver.** No delay on the part of the State in enforcing any conditions in this lease, including termination for violation of the terms of this lease, shall operate as a waiver of any rights of the State.

31. **No Use of Government Funding.** Lessee agrees it will not use any state or governmental grant, loan, or other funding to make payments required under this lease.

32. **Construction of Lease.** If any clause or provision of this lease is or becomes illegal, invalid, or unenforceable because of present or future laws or any rule or regulation of any governmental body, the intention of the State and Lessee is that the remaining parts of this lease shall not be affected thereby.

33. **Notices.** Any notice given under this lease shall be in writing and served upon the other party either personally or by depositing such notice in the United States mail with proper first class postage and address. Unless changed by written notice to all parties, the mailing address for the State shall be: Director, Division of Lands and Minerals, Minnesota Department of Natural Resources, 500 Lafayette Road, St. Paul, Minnesota 55155-4045; and the mailing address for the Lessee shall be: Magnetation LLC, 102 NE Third Street, Suite 120, Grand Rapids, Minnesota 55744.

34. **Miscellaneous.** This lease contains the entire agreement of the parties hereto with respect to the use of the premises. This lease may be modified only by a writing executed and delivered by both parties. Nothing contained in this lease shall be deemed or construed to create a partnership or joint venture of or between the State and the Lessee, or to create any other relationship between the parties other than that of landlord and tenant.

IN TESTIMONY WHEREOF, the parties hereto have set their hands in triplicate the date and year first above written.

Page **11** of **14**

Signed in the Presence of:

_____

_____
As to State

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____
Larry R. Kramka, Director
Division of Lands and Minerals

Signed in the Presence of:

_____

_____

_____

_____
As to Lessee

MAGNETATION LLC

By _____
CEO President

By _____
Vice President

STATE OF MINNESOTA    )
                      ) SS
COUNTY OF _Ramsey_    )

This instrument was acknowledged before me this _31st_ day of _May_, 2012, by
Larry R. Kramka, Director, Division of Lands and Minerals, Department of Natural Resources,
on behalf of the State of Minnesota.

_Jodi Marie Dehn_

Notary Public
My commission expires: _Jan 31, 2014_

JODI MARIE DEHN
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2017

STATE OF _Minnesota_    )
                        ) SS
COUNTY OF _Itasca_      )

This instrument was acknowledged before me this _17th_ day of _May_, 2012,
by _Larry Lehtinen_, as _President_
and by _Matthew Lehtinen_, as _Vice-President_
of Magnetation LLC, a Delaware limited liability company, on behalf of the company.

_Hope Elizabeth Wilson_

Notary Public
My commission expires: _1/31/2014_

HOPE ELIZABETH WILSON
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2014

Office of Commissioner of Natural Resources
STATE OF MINNESOTA

I hereby certify that this instrument was filed in this office
on ___June 13_____, 20 12.

By __Vicki Sellner_____

This Instrument was drafted by:

Minnesota Department of Natural Resources
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045



**Buckeye Tailings Basin #2**
**Section 25, Township 56, Range 25**
**Itasca County, Minnesota**


**Map Exhibit 1**

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS

FIRST AMENDMENT TO
LEASE FOR IRON-BEARING MATERIALS
NUMBERED R-108
<u>BUCKEYE TAILINGS BASIN #2</u>

This first amendment to Lease No. R-108 made this 25 day of April, 2016, and effective April 1, 2015, by and between THE STATE OF MINNESOTA, under authority and subject to the provisions of Minnesota Statutes 2014, Section 98.285, subd. 3, acting by and through its Commissioner of Natural Resources, hereinafter called the "State" and Mag Mining, LLC, a Delaware limited liability company, hereinafter called the "Lessee."

<u>WITNESSETH</u>

The Lessee currently holds State Lease for Iron-Bearing Materials Numbered R-108, hereinafter referred to as the "Lease," that remains in effect.

The Lessee has requested certain revisions to the lease terms.

NOW, THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES HERETO, THAT STATE IRON-BEARING MATERIALS LEASE NUMBERED R-108 is amended as follows:

**1. Paragraph 6 is hereby amended to read:**

6. **Rental.** Commencing January 1, 2016, rental for the state-owned portion of the tailings basin shall be $12,676.00 per year for the term of the lease, payable on January 1 of each year.

Any amount paid for rental accrued for any calendar year shall be credited on royalty due only for iron-bearing materials mined and removed that may become due during the same calendar year in which the rental was due but no further. Rental paid for any calendar year shall not be credited on any royalty paid due to the failure to meet the quarterly production guarantee as specified in paragraph 10 herein. If this lease is canceled, terminated, or expires during a year for which rental has been paid, there shall be no reimbursement of the rental payment for that year.

**2. Paragraph 7 is hereby amended to read:**

7. **Royalty Payable.**

1

(a)  The percent of iron recovered from the plant, hereinafter referred to as "Plant Iron Recovery", shall be determined by dividing the weight of the dry iron units in the concentrate by the weight of the dry iron units in the crude plant feed.

(b) For calendar months in which monthly Plant Iron Recovery is at or below 50%, the base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be $0.43, subject to the escalator provisions of paragraph 8 herein.

(c)  For calendar months in which monthly Plant Iron Recovery is above 50%, the base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be determined using the following formula:

$$\$0.43 \times \frac{\% \text{ plant iron recovery}}{50\%} = \text{new base royalty rate}$$

For example, if Plant Iron Recovery for a calendar month is 56%, the new base royalty for each dry metric ton of iron bearing materials mined from the Premises during that calendar month would be:

$$\$0.43 \times \frac{0.56}{0.50} = \$0.4816/\text{ton}$$

The new base royalty is subject to the escalator provisions of paragraph 8 herein.

(d) The Lessee shall be liable for royalty on all state-owned iron-bearing materials mined from the Premises.

The following is the State's current fractional ownership in the iron-bearing materials located on the Premises:

| Owner | Fractional Ownership as of June 1, 2011 |
|---|---|
| State (school trust fund) | 78.54% |
| State (tax forfeit fund) | 21.46% |
| TOTAL: | 100% |

(e)  Subject to the lien of the State as provided herein for any royalty payable thereon, iron-bearing materials so mined, upon which such royalty is paid or payable (and not delinquent) hereunder; and, the residues resulting from the treatment or processing shall be the property of the State.

(f) If Lessee elects to reprocess residues placed on the Premises which have been previously processed in the same metallurgical processing plant, Lessee shall assay said residues with analytical methods, commercial lab analyses, and representative samples, which are approved by the State, prior to any assays being conducted, to determine the iron

2

content of such residues.  Assaying shall be at the sole expense of Lessee.  Lessee shall pay to the State a royalty on reprocessed residues at a rate per ton determined as follows:

$$\$0.43 \times (\text{residue iron content}/0.2098) = \text{residue royalty rate per ton}$$

For example, if the reprocessed residue iron content is 16.78% (dry), the base royalty rate of residues is $0.3439 per ton.

$$\$0.43 \times (.1678/0.2098) = \$0.3439/\text{ton}$$

(g) If the royalty due on the iron-bearing materials shall not be determined and accounted for as herein otherwise provided by the next quarterly payment date after the end of the quarter in which such iron-bearing materials are removed, the State may determine such royalty by such reasonable method as the State deems appropriate and give the Lessee written notice thereof, whereupon such royalty shall be due and payable within 20 days after the mailing or delivery of such notice, unless the time therefore shall be extended by the commissioner.  Final settlement and adjustment of the royalty due shall be made as soon as determination becomes possible.

**3. Paragraph 8(a) is hereby amended to read:**

(a) The royalties to be paid by the Lessee to the State on iron-bearing materials mined in each calendar quarter that the lease remains in force as hereinbefore specified shall be subject to increase by the monthly average price for iron ore published by <u>Platts Steel Market Daily</u> (FOB Brazil), defined as follows as the Brazil Price, as adjusted herein.

*Brazil Price*
<u>Platts Steel Market Daily</u> refers to a Brazil route under the caption currently titled "FOB netbacks per route/basis IODEX 62% Fe".  The Brazil Price in dollars per dry metric ton is found under this caption in the column entitled "IODEX ($/dmt)".  The monthly average of the daily published Brazil Price for the first month of each calendar quarter shall be used as the Brazil Price for purposes of calculating the royalty escalation for each calendar quarter. The monthly average shall be rounded to the nearest cent.

*Iron Content Adjustment (62% iron to 65% iron)*
The monthly average Brazil Price will be adjusted from 62% iron to 65% iron.  <u>Platts Steel Market Daily</u> publishes a number in dollars per dry metric ton ($/dmt), currently titled in the daily publication as "Per 1% Fe differential (Range 60 - 63.5% Fe), $/dmt."  The monthly average of the daily published price for 1% Fe differential (Range 60 – 63.5% Fe), in dollars per dry metric ton, shall be determined for the first month in each calendar quarter and used for determining the quarterly royalty escalator calculation.  The monthly average Fe differential, rounded to the nearest cent, shall be multiplied by 3.00 to determine the iron content adjustment.  The iron content adjustment figure shall be rounded to the nearest cent.

*Adjusted Brazil Price*

3

The iron content adjustment figure shall be added to the monthly average Brazil Price and the sum divided by 65. The resulting dollar figure, rounded to the nearest one-hundredth of a cent, shall then be converted into U.S. cents, hereinafter referred to as the Adjusted Brazil Price.

If the Adjusted Brazil Price per dry metric ton iron unit exceeds 101.00 (U.S. cents), which is the Base Brazil Price negotiated by the Lessee and the State, the excess shall be computed and this excess shall become the numerator of a fraction, the denominator of which shall be the Base Brazil Price, and the resulting fraction shall be multiplied by the base royalty rate per metric ton removed.

For example, if for July 2017, the monthly average published Brazil Price is 153.21 per dry metric ton, the monthly average published 1% Fe differential is 5.01, and the monthly Plant Iron Recovery is at or below 50%, the following adjustments will be made:

Iron Content Adjustment   5.01 x 3.00 = 15.03
Adjusted Brazil Price     (15.03 + 153.21)/65 = $2.5883 or 258.83 U.S. cents

Escalation to base royalty   ((258.83-101.00)/101.00) x $0.43 = $0.6719

In this example, the escalated royalty rate per dry metric ton for the third quarter of 2017 would be $1.1019.
($0.43 + $0.6719 = $1.1019)

Using the same example as above, except with a monthly Plant Iron Recovery of 56%, the escalation to the base royalty would be as follows:
((258.83-101.00)/101.00) x $0.4816 = $0.7526

$0.4816 + $0.7526 = $1.2342  escalated royalty rate

In no event shall the escalated royalty rate per ton be less than the base royalty rate stated in Paragraph 7(b) for months in which monthly Plant Iron Recovery is at or below 50%. For months in which monthly Plant Iron Recovery is above 50%, in no event shall the escalated royalty rate per ton be less that the base royalty rate as calculated using the formula found in Paragraph 7(c).

4. **Paragraph 17 of the Lease is hereby amended to read:**

**17. Ownership of Iron-Bearing Residues Re-Deposited into the Buckeye Tailings Basin #2.** Any iron-bearing residues resulting from the processing of iron-bearing materials mined from the Premises and re-deposited onto the Premises shall remain the property of the State.

The written approval of the State is required before any iron-bearing residues mined from other properties are deposited onto the Premises. Such iron-bearing residues become the

4

property of the State upon deposition.  Lessee shall keep an accounting of the amount of material deposited onto the Premises from other properties.

All residues placed on the Premises must be segregated from unmined iron-bearing materials. Lessee, in consultation with the engineering staff of the Department of Natural Resources, Division of Lands and Minerals, shall designate a location for the deposition of residues to be reprocessed.  This location must be identified in Lessee's mining and processing plan to be submitted to and approved by the State, according to Paragraph 5 of this Lease.

5.  For the period of April 1, 2015 through June 30, 2016, the royalty payable each quarter shall be reduced by 18%.  This royalty reduction shall not apply to the royalty payable on reprocessed residues.

Except as expressly provided herein, all of the provisions of the Lease shall remain in full force and effect.

IN TESTIMONY WHEREOF, the parties hereto have set their hands in triplicate the date and year first above written.

Signed in the Presence of:

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____
Jess Richards, Director
Division of Lands and Minerals

As to State

Signed in the Presence of:

_Michael Twite_ (signature)

_J H Veal_ (signature)

Michael Twite

_J H Veal_ (signature)

As to Mag Mining LLC

MAG MINING, LLC

By _Jon Bid_ (signature)    CFO

By _Larry Lett_ (signature)    CEO

STATE OF MINNESOTA    )
                      ) SS
COUNTY OF _Ramsey_    )

        This instrument was acknowledged before me this __25__ day of __April__, 20__16__,
by Jess Richards, Director, Division of Lands and Minerals, Department of Natural Resources,
on behalf of the State of Minnesota.

_P. D. Kandakai_ (signature)
Notary Public
My commission expires: __1/31/20__

PATRICIA D KANDAKAI
Notary Public
Minnesota
My Commission Expires January 31, 2020

STATE OF _____MN_____ )
                                         ) SS
COUNTY OF _Itasca_____ )

    This instrument was acknowledged before me this _8_ day of _January_, 20_16_
by _Joe Broking_____, as _____CFO_____
and by _Larry Lehtinen_____, as _____CEO_____
of Mag Mining, LLC, a Delaware limited liability company, on behalf of the company.

JANNIFER LYNN JOHNSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

Notary Public
My commission expires: _January 31, 2019_

Office of Commissioner of Natural Resources
STATE OF MINNESOTA

I hereby certify that this instrument was filed in this office
on _April 27_____, 20_16_.

By _Vicki Sellner_____

This Instrument was drafted by:

Minnesota Department of Natural Resources
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

7

ASSIGNMENT of
LEASE FOR IRON BEARING MATERIALS
NUMBERED R-108
BUCKEYE TAILINGS BASIN #2

Magnetation LLC, a Delaware limited liability company, 102 Northeast Third Street, Suite 120, Grand Rapids, MN 55744 does hereby assign, effective January 1, 2015, to Mag Mining, LLC, a Delaware limited liability company, 102 Northeast Third Street, Suite 120, Grand Rapids, MN 55744, all of its rights and interest under that certain LEASE FOR IRON BEARING MATERIALS NUMBERED R-108 BUCKEYE TAILINGS BASIN #2 dated May 31, 2012 (the "Lease R-108") between Magnetation LLC and The State of Minnesota (the "State) subject to consent by the State provided below.

Mag Mining, LLC does hereby accept such assignment, does hereby agree to perform all obligations of Magnetation LLC, as Lessee under said Lease R-108 and does hereby further agree to indemnify and hold harmless Magnetation LLC from any and all contractual obligations and liability from and after the effective date of this assignment.

DATED this 30th day of December, 2014.

MAGNETATION LLC

_____
Witness

By _____
Joe Broking, CFO

_____
Witness


MAG MINING, LLC

_____
Witness

By _____
Joe Broking, CFO

_____
Witness

1

R-108 assignment to Mag Mining, LLC

STATE OF MINNESOTA)
                   ) SS
COUNTY OF ITASCA   )

The foregoing instrument was acknowledged before me this 30th day of December, 2014, by Joe Broking as Chief Financial Officer of MAGNETATION LLC, a Delaware corporation.

_Jannifer Lynn Johnson_
Notary Public
My commission expires: January 31, 2019

STATE OF MINNESOTA)
                   ) SS
COUNTY OF ITASCA   )

JANNIFER LYNN JOHNSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

The foregoing instrument was acknowledged before me this 30th day of December, 2014, by Joe Broking as Chief Financial Officer of MAG MINING, LLC, a Delaware corporation.

_Jannifer Lynn Johnson_
Notary Public
My commission expires: January 31, 2019

JANNIFER LYNN JOHNSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

2

The foregoing Assignment, dated December 30, 2014, and effective January 1, 2015, between Magnetation LLC, a Delaware limited liability company, whose address is 102 NE Third Street, Suite 120, Grand Rapids, Minnesota 55744, and Mag Mining, LLC, a Delaware limited liability company, whose address is 102 NE Third Street, Suite 120, Grand Rapids, Minnesota 55744, as it affects State Lease for Iron-Bearing Materials No. R-108 is hereby approved by the Commissioner of Natural Resources this _5th_ day of _January_, 2015, subject to the following:

1.  This approval does not relieve Magnetation LLC, and their assignees or successors in interest from any obligations, limitations or liabilities imposed by the terms of the above-described State Lease for Iron-Bearing Materials. This approval shall not in any way excuse the parties from compliance with any of the requirements of the State Lease for Iron-Bearing Materials, and as amended.

2.  This approval does not operate as a ratification or approval of any other assignment, agreement or contract affecting the above-described State Lease for Iron-Bearing Materials including subsequent assignments, agreements or contracts entered into between the parties under the Assignment. It is clear from the term of state leases that each assignment agreement or contract affecting a state lease for iron-bearing materials, including those between parent and subsidiary corporations, requires a specific and individual approval from the state.

3.  This approval is not an assumption by the State of any obligation or liability to determine if the parties to the Assignment have complied with the provisions as specified in the Assignment.

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____
   Peter Clevenstine, Assistant Director
   Division of Lands and Minerals

This instrument was drafted by:
Minnesota Department of Natural Resources
Division of Lands and Minerals
500 Lafayette Road, Box 45
St. Paul, Minnesota 55155-4045

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS

THIRD AMENDMENT TO
LEASE FOR IRON-BEARING MATERIALS
NUMBERED R-103, AND
SECOND AMENDMENT TO
LEASES FOR IRON-BEARING MATERIALS
NUMBERED R-108 AND R-125

This agreement, made this 25th day of January, 2017, by and between THE STATE OF
MINNESOTA, under authority and subject to the provisions of Minnesota Statutes 2014, section
93.285, subd. 3, acting by and through its Commissioner of Natural Resources, hereinafter called
the "State" and ERP IRON ORE, LLC., a Virginia limited liability company, hereinafter called
ERPI or the "Lessee",

## WITNESSETH

In accordance with the *Order Granting Joint Motion for an Order (I) Approving the Sale of
Substantially All of the Debtors' Remaining Assets, (II) Approving the Assumption and Assignment
of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (Dkt. No.
1197), entered December 21, 2016, in the jointly administered under the caption *In re Magnetation
LLC, et al.,* 15-50307 (WJF) (Bankr. D. Minn.) (the "Bankruptcy Case"), and the Settlement
Agreement, Mag Mining, LLC has assumed and assigned to ERPI the following state leases, as
further amended pursuant to the Settlement Agreement, hereinafter defined as "Mining Leases":

Lease No. R-103, for iron-bearing materials, Canisteo Mine Second Tailings Basin North
and South, dated October 3, 2011, as amended January 6, 2014 and April 25, 2016.

Lease No. R-108, for iron bearing materials, Buckeye Tailings Basin # 2, dated May 31,
2012, as amended April 25, 2016.

Lease No. R-125, for iron bearing materials, Canisteo Mine First Tailings Basin North and
South, dated January 7, 2015, as amended April 25, 2016.

The assumption and assignment of the leases is set forth in the Assumption and Assignment, State
of Minnesota Leases, dated January 25, 2017.

In resolving issues pending in the Bankruptcy Case, the State and the Lessee have agreed on
certain terms and conditions of the assumption and assignment to ERPI of the Mining Leases.
Without limitation, the State and ERPI entered into a Settlement Agreement, dated January 25,
2017 (the "Settlement Agreement").

11

102171263

"Settlement Agreement").

NOW, THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES
HERETO, as follows:

1. **Royalties.**

As set forth in the Settlement Agreement at paragraph 5(b), ERPI hereby accepts all duties
and obligations under the terms and conditions of said Mining Leases for the remainder of
the lease terms, and for the payment of all Assumed Liabilities (as defined in the Settlement
Agreement) as set forth in paragraph 5(b) of the Settlement Agreement.

In addition, and as set forth in the Settlement Agreement at paragraph 5(d), the Royalties
and Other Costs (as defined in the Settlement Agreement) shall be deferred and paid on or
before January 1, 2018, with payments in three equal installments on July 1, 2017, October
1, 2017 and January 1, 2018.

2. **Event of Default.**

In consideration for the State's deferral of the payment of these amounts due to the State,
ERPI agrees that failure by ERPI to make timely payments of the Royalties and Other Costs
pursuant to the schedule set forth in paragraph 5(d) of the Settlement Agreement shall
constitute an immediate event of default with respect to each and every one of the Mining
Leases (an "Event of Default"). In the Event of Default, the unpaid amount of the Royalties
and Other Costs due and owing shall constitute a lien on all real and personal property of
ERPI in favor of the State, without need for further demand of ERPI by the State.

Except as expressly provided herein, all of the provisions of the Mining Leases shall remain
in full force and effect.

IN TESTIMONY WHEREOF, the parties hereto have hereunto set their hands in triplicate the
date and year first above written.

Signed in Presence of:                          STATE OF MINNESOTA
                                                DEPARTMENT OF NATURAL RESOURCES

                                                By _____
                                                   Jess Richards, Director
                                                   Division of Lands and Minerals

As to State

12

102171263

Signed in Presence of:

ERP IRON ORE, LLC

By_____

Title: Authorized Signatory

As to ERP Iron Ore, LLC

STATE OF ___VA_____ )
                        ) SS
COUNTY OF _Rockbridge_ )

The foregoing instrument was acknowledged before me this _6_ day of _January_, 20_17_, by Thomas Clarke, as Authorized Signatory of ERP IRON ORE, LLC, a Virginia limited liability company, on behalf of the company.



_Jennifer Elaine Bell_____
Notary Public
My commission expires: _10|31|2020_

17

102171263

Signed in Presence of:

ERP IRON ORE, LLC

_____

By_____
    Title: Authorized Signatory

_____

As to ERP Iron Ore, LLC


STATE OF MINNESOTA    )
                       ) SS
COUNTY OF _Ramsey_____)

    The foregoing instrument was acknowledged before me this 20th day of _January_____, 20 17 by Jess Richards, Director, Division of Lands and Minerals, Department of Natural Resources, on behalf of the State of Minnesota.

KATHERINE EMILY GIEL
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2021

Notary Public
My commission expires: _Jan. 31, 2021___


STATE OF _____)
                     ) SS
COUNTY OF _____)

    The foregoing instrument was acknowledged before me this ____ day of_____, 20____, by Thomas Clarke, as Authorized Signatory of ERP Iron Ore, LLC, a Virginia limited liability company, on behalf of the company.


_____
Notary Public
My commission expires: _____

13

102171263

This Instrument was drafted by:

DEPT. OF NATURAL RESOURCES
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

I02171263

## ASSUMPTION AND ASSIGNMENT
## STATE OF MINNESOTA LEASES

Effective this 25th day of January, 2017, and in accordance with the *Order Granting Joint Motion for an Order (I) Approving the Sale of Substantially All of the Debtors' Remaining Assets, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (Dkt. No. 1197), entered December 21, 2016, in the case captioned *In re Magnetation, LLC, et al.*, No. 15-50307 (WJF) (Bankr. D. Minn. 2015), and that certain Settlement Agreement - State of Minnesota made as of January 25, 2017, Magnetation LLC and Mag Mining LLC hereby assume and assign the following state leases to ERP Iron Ore, LLC ("ERPI"), each as amended:

Lease No. R-103, for iron-bearing materials, Canisteo Mine Second Tailings Basin North and South, dated October 3, 2011.

Lease No. R-108, for iron bearing materials, Buckeye Tailings Basin # 2, dated May 31, 2012.

Lease No. R-125, for iron bearing materials, Canisteo Mine First Tailings Basin North and South, dated January 7, 2015.

Iron Ore Mining Lease No. 2105-N, dated March 7, 2013.

Iron Ore Mining Lease No. 2106-N, dated March 7, 2013.

Iron Ore Mining Lease No. 2107-N, dated March 7, 2013.

Iron Ore Mining Lease No. 2108-N, dated March 7, 2013.

Iron Ore Mining Lease No. I-5015-N, dated March 7, 2013.

LMIS000786, dated July 1, 2012.

LMIS000790, dated July 1, 2012.

Agreement for Maintenance and Use of DNR Water Level Observation Well By and Between The State of Minnesota and Magnetation, LLC, dated June 19, 2013.

102171263

IN TESTIMONY WHEREOF, the parties hereto have hereunto set their hands in triplicate the date and year first above written.

Signed in Presence of:

MAGNETATION LLC

By _Michael J Talarico_
Title: Chief Restructuring Officer

_Lang Lett_

As to Magnetation LLC

STATE OF __Minesota__ )
 ) SS
COUNTY OF __Itasca__ )

HOPE ELIZABETH WILSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

The foregoing instrument was acknowledged before me this 13ᵗʰ day of January, 20 1 7, by Michael Talarico, as Chief Restructuring Officer of MAGNETATION LLC, a Delaware limited liability company, on behalf of the company.

_Hope Elizabeth Wilson_
Notary Public
My commission expires: _1 | 31 | 2019_

Signed in Presence of:

MAG MINING LLC

By _Michael J Talarico_
Title: Chief Restructuring Officer

_Lang Lett_

As to Mag Mining, LLC

STATE OF __Minnesota__ )
 ) SS
COUNTY OF __Itasca__ )

HOPE ELIZABETH WILSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

The foregoing instrument was acknowledged before me this 13ᵗʰ day of January, 20 1 7, by Michael Talarico, as Chief Restructuring Officer of MAG MINING, LLC, a Delaware limited liability company, on behalf of the company.

_Hope Elizabeth Wilson_
Notary Public
My commission expires: _1 | 31 | 2019_

16

Signed in Presence of:                          ERP IRON ORE, LLC

*Amy Ault*
*C. Vasy lenko.*                                By _____
                                                Title: Authorized Signatory

As to ERP Iron Ore, LLC


STATE OF ___VA_____ )
                                    ) SS
COUNTY OF _Rockbridge_ )

    The foregoing instrument was acknowledged before me this _6_ day of _January_,
20_17_, by Thomas Clarke, as Authorized Signatory of ERP IRON ORE, LLC, a Virginia limited
liability company, on behalf of the company.




*Jennifer Elaine Bell*
Notary Public
My commission expires: _10|31|2020_

17

The State of Minnesota, acting through its commissioner of natural resources, hereby consents to the above assignment and assumption of state leases this 26th day of January, 20 17.

Signed in Presence of:

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____

Jess Richards, Director
Division of Lands and Minerals

As to State

STATE OF MINNESOTA    )
                      ) SS
COUNTY OF Ramsey      )

    The foregoing instrument was acknowledged before me this 20th day of January, 20 17 by Jess Richards, Director, Division of Lands and Minerals, Department of Natural Resources, on behalf of the State of Minnesota.

KATHERINE EMILY GIEL
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2021

_____
Notary Public
My commission expires: Jan. 31, 2021

This Instrument was drafted by:

DEPT. OF NATURAL RESOURCES
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

9

102171263

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS

LEASE FOR IRON-BEARING MATERIALS
CANISTEO MINE FIRST TAILINGS
BASIN NORTH AND SOUTH

Lease No. R-125

This lease, executed in triplicate this _7th_ day of _January_, 2015, and effective
January 1, 2015, by and between the State of Minnesota, under authority and subject to the
provisions of Minnesota Statutes 2014, section 93.285, subd. 3, acting by and through its
Commissioner of Natural Resources, hereinafter called the "State", and Mag Mining, LLC, a
Delaware limited liability company, hereinafter called the "Lessee."

WITNESSETH:

1. **Premises.**  The State, in consideration of the covenants and agreements hereof to be
performed by the Lessee, hereby leases unto the Lessee, subject to the conditions hereinafter
stated, the state-owned fine tailings located in the Canisteo Mine First Tailings Basin North
and South, in Itasca County, Minnesota, located within the following described lands:

That part of Lot 2 lying South and East of a straight line between the southwest corner
thereof and the midpoint of the east property line thereof,
South Half of Southeast Quarter of Northwest Quarter (S1/2 of SE1/4-NW1/4),
Northeast Quarter of Southwest Quarter (NE1/4-SW1/4),
Lot 3,
Revised Description 1 of Lot 4,
Revised Description 2 of Lot 4,
Southeast Quarter of Southwest Quarter (SE1/4-SW1/4),
in Section Eighteen (18); and

Revised Description 2 of Northeast Quarter of Northwest Quarter (NE1/4-NW1/4),
Revised Description 2 of Lot 1,
in Section Nineteen (19);

all in Township Fifty-six (56) North, Range Twenty-four (24) West of the Fourth
Principal Meridian, Itasca County, Minnesota.

containing approximately 221.51 acres;

which shall hereafter be referred to as the "Premises." The attached Map Exhibit 1 depicts
the leased Premises.

**Exhibit C**

2. **Lease Term.** This lease shall be in effect for a period of 20 years from the effective date noted above.

3. **Use of Premises.** The premises are leased to the Lessee for the purpose of mining and processing fine tailings.

4. **State's Right to Lease Surface and Sell Timber.** The State reserves the right to sell and dispose of, under the provisions of law now or hereinafter governing the sale of timber on state lands, all the timber upon the land hereby leased, and reserves to the purchaser of such timber, or agents and servants of the purchaser, the right at all times to enter thereon, and to cut and remove any and all such timber therefrom, according to the terms of the purchaser's contract with the state, and without let or hindrance from the Lessee, but such purchaser shall not unnecessarily or materially interfere with the mining operations carried on thereon. The purchaser of the timber will agree to assume entire responsibility and liability for all damages and injury to all persons and property whether caused by the purchaser, the purchaser's officers, agents or employees, arising from activities undertaken based on the timber permit or the purchaser's use or occupancy of the premises covered by the timber permit.

The State further reserves the right to grant leases, permits or licenses to any portion of the surface of the demised premises to any person or corporation under authority of section 92.50, or other applicable laws, without let or hindrance from the Lessee, but such leases, permits or licenses shall not unnecessarily or materially interfere with the mining operations carried on thereon. The surface lessee will agree, for the benefit of both parties to this lease, to assume entire responsibility and liability for all damages and injury to all persons and property whether caused by the surface lessee or the surface lessee's officers, agents or employees, arising from activities undertaken based on the surface lease or the surface lessee's use or occupancy of the premises covered by the surface lease.

5. **Material Removal and Processing Plan.** A plan for mining and processing the iron-bearing materials shall be submitted in writing to the State for review and approval in writing by the Commissioner of Natural Resources, prior to the mining or processing of any iron-bearing material from the Premises. Such plan shall include, but not be limited to, the method and measurement of determining the quantity and volume of iron-bearing materials mined and processed, the locations of mining, the method of mining iron-bearing materials and the equipment that will be used, and if residues are to be re-deposited onto the Premises, the location of such planned depositions.

Upon the commencement of mining, failure by the Lessee to implement the plan as approved by the commissioner is a default of the lease herein. Any changes to the approved plan shall be submitted in writing to the State and be approved in writing by the Commissioner of Natural Resources before any such changes may be implemented.

6. **Rental.** Rental for the state-owned portion of the tailings basin shall be $19,936.00 per year for the term of the lease, payable on January 1 of each year.

Any amount paid for rental accrued for any calendar year shall be credited on royalty due only for iron-bearing materials mined and removed that may become due during the same calendar year in which the rental was due but no further, and only to the extent that such rental was paid or deposited into the particular fund to which the royalty for such iron-bearing materials is due. Rental paid for any calendar year shall not be credited on any royalty paid due to the failure to meet the quarterly production guarantee as specified in paragraph 11 herein. If this lease is canceled, terminated, or expires during a year for which rental has been paid, there shall be no reimbursement of the rental payment for that year.

7. **Royalty Payable.**

(a) The percent of iron recovered from the plant, hereinafter referred to as "Plant Iron Recovery", shall be determined by dividing the weight of the dry iron units in the concentrate by the weight of the dry iron units in the crude plant feed.

(b) For calendar months in which Plant Iron Recovery is at or below 60%, the base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be $0.50, subject to the escalator provisions of paragraph 8 herein.

(c) For calendar months in which Plant Iron Recovery is above 60%, the base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be determined using the following formula:

$$\$0.50 \times \frac{\% \text{ plant iron recovery}}{60\%} = \text{new base royalty}$$

For example, if Plant Iron Recovery for a calendar month is 67%, the new base royalty for each dry metric ton of iron bearing materials mined from the Premises during that calendar month would be:

$$\$0.50 \times \frac{0.67}{0.60} = \$0.5583$$

The new base royalty for months where Plant Iron Recovery is above 60% shall be calculated monthly and is subject to the escalator provisions of paragraph 8 herein.

(d) The Lessee shall be liable for royalty on all state-owned iron-bearing materials mined from the Premises. The State owns all of the iron-bearing materials located in the Canisteo Mine First Tailings Basin North and South.

(e) Subject to the lien of the State as provided herein for any royalty payable thereon, iron-bearing materials so mined, upon which such royalty is paid or payable (and not delinquent) hereunder, and the residues resulting from the treatment thereof, shall be the property of the Lessee.

(f) If the royalty due on the iron-bearing materials shall not be determined and accounted for as herein otherwise provided by the next quarterly payment date after the end of the

quarter in which such iron-bearing materials are removed, the State may determine such royalty by such reasonable method as the State deems appropriate and give the Lessee written notice thereof, whereupon such royalty shall be due and payable within 20 days after the mailing or delivery of such notice, unless the time therefore shall be extended by the commissioner. Final settlement and adjustment of the royalty due shall be made as soon as determination becomes possible.

8. **Escalator Clause.**
   (a) The royalties to be paid by the Lessee to the State on iron-bearing materials mined in each calendar quarter that the lease remains in force as hereinbefore specified shall be subject to increase by the monthly average price for iron ore published by <u>Platts Steel Market Daily</u> (FOB Brazil), defined as follows as the Brazil Price, as adjusted herein.

   *Brazil Price*
   <u>Platts Steel Market Daily</u> refers to a Brazil route under the caption currently titled "FOB netbacks per route/basis IODEX 62% Fe". The Brazil Price in dollars per dry metric ton is found under this caption in the column entitled "IODEX ($/dmt)". The monthly average of the daily published Brazil Price for the first month of each calendar quarter shall be used as the Brazil Price for purposes of calculating the royalty escalation for each calendar quarter. The monthly average shall be rounded to the nearest cent.

   *Iron Content Adjustment (62% iron to 65% iron)*
   The monthly average Brazil Price will be adjusted from 62% iron to 65% iron. <u>Platts Steel Market Daily</u> publishes a number in dollars per dry metric ton ($/dmt), currently titled in the daily publication as "Per 1% Fe differential (Range 60 - 63.5% Fe), $/dmt." The monthly average of the daily published price for 1% Fe differential (Range 60 – 63.5% Fe), in dollars per dry metric ton, shall be determined for the first month in each calendar quarter and used for determining the quarterly royalty escalator calculation. The monthly average Fe differential, rounded to the nearest cent, shall be multiplied by 3.00 to determine the iron content adjustment. The iron content adjustment figure shall be rounded to the nearest cent.

   *Adjusted Brazil Price*
   The iron content adjustment figure shall be added to the monthly average Brazil Price and the sum divided by 65. The resulting dollar figure, rounded to the nearest one-hundredth of a cent, shall then be converted into U.S. cents, hereinafter referred to as the Adjusted Brazil Price.

   If the Adjusted Brazil Price per dry metric ton iron unit exceeds 101.00 (U.S. cents), which is the Base Brazil Price negotiated by the Lessee and the State, the excess shall be computed and this excess shall become the numerator of a fraction, the denominator of which shall be the Base Brazil Price, and the resulting fraction shall be multiplied by the base royalty rate per metric ton removed.

   For example, if for January 2017, the monthly average published Brazil Price is 131.31 per dry metric ton, and the monthly average published 1% Fe differential is 2.43, the following adjustments will be made:

Iron Content Adjustment   $2.43 \times 3.00 = 7.29$
Adjusted Brazil Price   $(7.29 + 153.21)/65 = \$2.1323$ or 213.23 U.S. cents

Escalation to base royalty if Plant Iron Recovery is at or below 60%:
$((213.23-101.00)/101.00) \times \$0.50 = \$0.5556$

In this example, the royalty rate per dry metric ton for the first quarter of 2017 would be $1.0556, if Plant Iron Recovery is at or below 60% for all months in the calendar quarter
$\$0.50 + \$0.5556 = \$1.0556$

Using the same example above, but with a Plant Iron Recovery of 67% for each month of the first quarter of 2017, the base royalty would be:

$$\$0.50 \times \frac{0.67}{0.60} = \$0.5583$$

Escalation to the base royalty if Plant Iron Recovery is 67%:
$((213.23-101.00)/101.00) \times \$0.5583 = \$0.6204$

In this example, the royalty rate per dry metric ton for the first quarter of 2017 would be $1.0556, if Plant Iron Recovery is 67% for all months in the calendar quarter
$\$0.5583 + \$0.6204 = \$1.1787$

In no event shall the royalty rate payable be less than the minimum royalty rates prescribed in paragraph 7(b) and (c).

(b) In the event Platts Steel Market Daily or its successors cease to quote a prevailing iron ore price FOB Brazil or a prevailing Fe differential, or these quotations cease to reflect transactions sold at arms length, or these quotations cease to accurately reflect market conditions, the quotations to be used as previously provided must be the quotations independently published, which, after necessary adjustments, if any, provide the most reasonable substitutes for the quotations published in Platts Steel Market Daily, it being intended to substitute quotations that most accurately reflect arms length transactions of the prevailing price of iron ore FOB Brazil or the prevailing Fe differential, in the manner currently reported by Platts Steel Market Daily. In case such published quotations shall cease to be available, or cease to reflect arms length transactions, or cease to be deemed accurate, and the parties hereto fail within a reasonable time to agree upon such new method or formula for the adjustment of royalty rates hereunder, the same shall be determined by arbitration in the manner hereinafter provided.

9. **Method of Computing Royalty Rates.** In computing royalty rates hereunder, any fraction of a cent less than five-thousandths shall be disregarded and any fraction amounting to five-thousandths or more shall be counted as one-hundredth of a cent.

10. **Production Guarantee.**

   (a) From and after January 1, 2018, the Lessee agrees to mine and remove from the Premises 80,000 dry metric tons of state-owned iron-bearing materials during each calendar year. The production guarantee shall continue for the remainder of the term of the lease herein or until all state-owned iron-bearing materials in Canisteo Mine First Tailings Basin North and South are mined out to the satisfaction of the State, whichever occurs first.

   (b) If Lessee fails to mine and remove the tonnage of state-owned iron-bearing materials from the Canisteo Mine First Tailings Basin North and South as noted, above, in clause (a), it shall on or before the twentieth day of January following the calendar year during which such tonnage should have been mined and removed report to the State the deficiency between the tons mined and removed and the amount required to equal the required amount of production for that calendar year.

   Lessee shall pay on or before the twentieth day of January following the calendar year to the State, as a production guarantee royalty, an amount computed by multiplying $0.50 plus the escalation amount applicable as of the calendar quarter pursuant to paragraph 9, above, by the deficiency between the number of tons of iron-bearing materials mined and removed and the amount needed to equal the required production for that calendar year. The production guarantee royalty shall be paid in the same manner as the rentals and royalties provided for in this lease. Any amount paid as production guarantee royalty for the calendar year shall be credited against royalties for iron-bearing materials mined that may become due during the next calendar year but no further. For example, production guarantee royalty paid for calendar year 2019 shall be credited against royalties owed for iron-bearing materials mined during calendar year 2020, but no further. Production guarantee royalties paid shall not be credited against any future production guarantee royalties.

   (c) If Lessee pays a production guarantee royalty as provided above, the State shall have no further remedy, and shall claim no further damages, arising out of the failure of Lessee to mine and remove the required tonnages, except as provided for in paragraph 26(g) herein.

11. **State Lien for Unpaid Sums Due.** The State reserves and shall at all times have a lien upon all iron-bearing materials mined from the Premises and upon all improvements made by the Lessee upon the land covered by this lease for any unpaid sums due hereunder.

12. **Quarterly Royalty Payment on Iron-Bearing Materials Removed.** The Lessee covenants and agrees to pay to the State, on or before the twentieth day of April, July, October, and January in each year during the period this lease continues in force, royalty at the rates hereinbefore specified for iron-bearing materials mined from said Premises during the three months preceding the first day of the month in which such payment is due as hereinbefore provided.

13. **Statement of Iron-Bearing Materials Removed and Royalty Due.** The Lessee shall transmit to the State with each royalty payment an exact and truthful statement of the tonnage of iron-bearing materials mined during the three months for which such payment is made and

the royalty due thereon, determined as herein provided. The Lessee shall provide for all the operations required for such determination except as otherwise specified.

14. **Weighing, Sampling and Assaying.** (a) The Lessee shall submit a plan for determining the weight of iron-bearing materials mined from the Premises to the State and such plan must be approved in writing by the Commissioner of Natural Resources before any iron-bearing materials are mined from the Premises.

> (1) Using the state-approved plan, the Lessee will determine the weight of iron-bearing material mined and determine the moisture of such materials to calculate a dry weight. The moisture of the iron-bearing materials will be sampled and determined according to the sampling program as in paragraph 14(a)(2) below.

> (2) A sampling program for moisture determination and an assaying program for determining Plant Iron Recovery must be submitted to the State and approved in writing by the Commissioner of Natural Resources, prior to the mining of any iron-bearing material from the Premises.

> (3) The State shall periodically inspect the Premises, moisture sampling and assaying procedures, and scale calibrations.

(b) The Lessee shall install and properly maintain belt scales certified by the State of Minnesota or other weighing devices certified by the State of Minnesota for the determination of the weight of iron-bearing materials mined. The Lessee shall adopt suitable methods and practices for determining, allocating and recording such weights. The scales and weighing devices installed, and the methods and practices for determining, allocating and recording such weights, shall be subject to the prior review and approval by the State, and the Lessee shall comply with all reasonable requirements of the State with respect thereto.

(c) The State shall have the right to inspect, review and test the correctness of any weighing devices installed or weighing methods used by the Lessee and the weights shown thereby, and the manner and method of weighing, at any and all times. Any errors in weighing, when ascertained by the State, shall be promptly recognized and corrected by the Lessee.

(d) The State may appoint such special inspectors of such scales, weighing devices, and methods and practices as the State deems necessary to insure proper accounting and protect the interests of the State, and the Lessee shall reimburse the State monthly for the cost of all such inspection service upon notification thereof by the Commissioner.

15. **Arbitration Clause.** If any dispute shall arise between the parties as to the method of computing the weight and the royalty rate per dry metric ton of iron-bearing materials mined, or if the parties to this lease cannot agree upon substitute quotations as provided under paragraph 8(b) herein, each shall choose an arbitrator and the two thus selected shall choose a third. The decision of the arbitrators or any two of them shall be final and binding on the

parties in interest. The agreement or the decision of the arbitrators shall be attached as a supplement to the lease.

The Lessee shall reimburse the State for all costs and expenses incurred in connection with the determination of the weight of iron-bearing materials mined. Each party to the arbitration shall bear their respective share of the costs for arbitration as to substitute quotations as provided under paragraph 8(b).

16. **Ownership of Residues Deposited onto Premises or State Property.** a) Any residues resulting from the processing of iron-bearing materials mined from the Premises and re-deposited onto the Premises shall remain the property of the State upon the termination or cancellation of this lease, or upon the termination or cancellation of the State permit to mine regarding the Premises, whichever occurs first.

b) Any residues resulting from the processing of iron-bearing materials mined from the Premises and deposited onto property owned or administered by the State, other than the Premises, shall remain the property of the State upon the termination or cancellation of the State iron-bearing materials lease covering the said property where such residues are deposited, or upon the termination or cancellation of the State permit to mine covering the property where such residues are deposited, whichever occurs first.

If Lessee intends to subsequently reprocess residues through its plant, any residues deposited onto the Premises, or onto other property administered or owned by the State, must be segregated from any unmined iron-bearing materials. Lessee, in consultation with engineering staff of the Department of Natural Resources, Division of Lands and Minerals, shall designate a location for the deposition of residues to be reprocessed. This location must be identified in Lessee's mining and processing plan to be submitted to the Lessor according to the terms of this Lease.

Lessee shall not deposit any residues transferred from other properties onto the Premises, or onto other property administered or owned by the State, without the prior written approval of the State. Deposition of material not owned by the State onto the Premises, or onto other property administered or owned by the State, may require a separate lease from the State and the payment of fees.

17. **Ownership of Unmined Iron-Bearing Materials.** Any unmined state-owned iron-bearing materials on the Premises shall remain the property of the State.

18. **Monthly Reports.** Except as otherwise permitted by the State, the Lessee shall transmit to the State on or before the tenth of each month a statement in such form as the State shall prescribe, covering all iron-bearing materials mined from said Premises during the preceding calendar month, showing the weight of the iron-bearing materials, the royalty computed to be due thereon, and such other information pertaining thereto as the State may require. With the approval of the Commissioner of Natural Resources, for the purpose of computing and accounting for royalty, iron-bearing materials may be considered as mined from said land in the month in which it was weighed, but the Lessee shall nevertheless be liable for the royalty

on all iron-bearing materials from and after the actual time of mining from said Premises. The weights of iron-bearing materials as set forth in said monthly statements shall be prima facie binding as between the parties, but the State shall have the right at any time, and in such manner as it may see fit, to sample the iron-bearing materials, check the analyses, and inspect, review, and test the correctness of the methods, books, records, accounts, tabulations, maps, reports, and digital data, of the Lessee in sampling, analyzing, recording, and reporting such grades and weights, and to inspect, review, and test the correctness of the scales and other equipment used in weighing the iron-bearing materials and of the weights reported as aforesaid, it being understood that any errors in these respects, when ascertained, shall be corrected.

The monthly report shall be sent within ten (10) days after the end of each month to the Minnesota Department of Natural Resources, Division of Lands and Minerals, 1525 Third Avenue East, Hibbing, Minnesota 55746.

19. **State Inspection.**   The State shall have the right to inspect the Premises at any and all times for any purpose.  The books, records and documents of Lessee relevant to this lease are subject to examination by the State.  The provisions of this section shall survive the termination of this lease.

The State, or agents thereof, shall have the right to enter and inspect at any time any plant where iron-bearing materials from said Premises are treated or beneficiated, and to take such samples and make such tests as may be necessary to determine the effects of such treatment or beneficiation.

20. **Maintenance of Premises and Dikes.**   The Lessee hereby expressly agrees to keep and leave the premises neat, clean, and in safe condition, and to remove therefrom all refuse and debris that may from time to time accumulate.  The Lessee shall take all necessary precautions, including appropriate tailings basin dam/dike maintenance, to prevent spillage or sloughing of materials.

The Lessee shall be solely responsible for ensuring all tailings basin dikes are stable and secure. The Lessee shall indemnify and hold harmless the State from all claims arising out of tailings basin dike failure, spillage of materials, or other incidents relating to tailings basin dike maintenance, whether such claims are asserted by civil action or otherwise.

The Lessee shall be liable for royalty, as determined according to paragraphs 7 and 8 herein, on all state-owned iron-bearing materials which may spill off of the leased Premises. Such spilled iron-bearing materials shall be deemed as non-recoverable tailings.  Royalty payment made on state-owned non-recoverable iron-bearing materials shall be paid by the Lessee in accordance with paragraph 12 herein.  No amount of state-owned non-recoverable iron-bearing materials shall be credited against the Lessee's quarterly production guarantee as stated in paragraph 10 herein.

21. **Invasive Species.**  The Lessee is responsible for controlling invasive species on the Premises.

22. **Liability.**  This lease shall not be construed as imposing any liability on the State for injury to persons or property of the Lessee or any other persons or property, arising out of any use of the described Premises hereunder or under any other license, lease, easement or permit now or hereafter made.  The Lessee shall indemnify and hold harmless the State from all claims arising out of use of said Premises hereunder, whether such claims are asserted by civil action or otherwise.

23. **Legal Obligations.**  The provisions of this lease are subject to all applicable state and federal statutes, orders, rules and regulations, and all operations under this lease shall be conducted in conformity with them.

24. **Transfers.**  This lease shall extend to, and bind successors, heirs, legal representatives and assigns of the State and Lessee.  In addition, the Lessee shall not, without the State's prior written consent:
    (a) assign, convey, mortgage, pledge, encumber or otherwise transfer this lease or any interest under it;
    (b) allow any transfer or any lien upon Lessee's interest by merger, operation of law, or otherwise;
    (c) sublet the Premises or any part thereof; or
    (d) permit the use or occupancy of the Premises or any part thereof by anyone other than the Lessee.

25. **Taxes.**  The Lessee shall pay, when due, all taxes assessed against or levied upon the Premises or upon structures, improvements, furnishings, equipment and other personal property of the Lessee located on the Premises during the term of this lease.

26. **Termination/Cancellation.**
    (a) This lease may be terminated at any time by mutual written agreement.

    (b) The Lessee may at any time deliver to the State written notice of intention to terminate this lease, and this lease shall terminate 60 days after the delivery unless the notice is revoked by the Lessee by further written notice delivered to the State before the expiration of the 60 days.  All sums due to the State under this lease up to the effective date of termination must be paid by the Lessee.

    (c) This lease is granted upon the express condition that, if any sum owed under it by the Lessee for rental, royalty or otherwise remains unpaid after the time when it became due, or if the Lessee knowingly or willingly makes any false statement in any report, account, or tabulation submitted to the State pertaining to any matter under this lease, or if the Lessee fails to perform any of the conditions required by this lease, the State may cancel this lease by mailing or delivering to the Lessee 60 days' notice of the cancellation in writing, specifying such nonpayment or other default as the case may be.  This lease shall terminate at the expiration of the 60 days, and the Lessee and all persons claiming under the Lessee shall be wholly excluded from the Premises, except as provided herein.

If the default consists of a nonperformance of an act required under this lease other than the payment of rental or royalty, the Lessee may perform within the 60 days and the lease continues in effect. If the correction of any such default requires more time than 60 days after the notice has been received by the Lessee, the Commissioner of Natural Resources, upon written request of the Lessee and for good cause shown, may, at his or her discretion, grant an extension of the period of 60 days.

If the default consists of a nonpayment of rental or royalty and the Lessee performs within 15 days from the mailing or delivery of such notice of cancellation, the lease continues in effect; and if the Lessee performs at any time thereafter within the period of 60 days, the Commissioner of Natural Resources, at his or her discretion, may continue the lease in effect.

(d) Termination or cancellation does not relieve the Lessee from any liability for payment or other liability incurred under this lease.

(e) The Lessee shall have 90 days after the termination or cancellation of this lease in which to remove all equipment, materials, structures, and other property placed or erected by the Lessee upon said Premises and must restore the Premises to a condition satisfactory to the State. The Lessee shall not remove or impair any dikes, dams, structures or other supports necessary to the maintenance of the tailings basin. If the Lessee fails to remove its property and clean up the Premises, the State may dispose of such property and restore the Premises to a neat and orderly condition. In this case, the Lessee agrees to repay the expense incurred by the State.

(f) It is understood and agreed that upon termination of this lease by expiration of the term thereto or otherwise, the Lessee shall peacefully and quietly surrender the Premises to the State.

(g) At any time from and after July 1, 2018, the State may cancel this lease if Lessee is not mining and removing iron-bearing materials from the Premises.

27. **Lessee to Acquire Necessary Rights to Interests Not Owned by State.** It is understood and agreed that in case any interest in the land covered by this lease or in any minerals or iron-bearing materials therein is owned by anyone other than the State, this lease shall not be construed as authorizing any invasion of or trespass upon such other interest, that in case it shall be necessary to make use of any such other interest in connection with any operations hereunder, the Lessee shall obtain all necessary legal rights therefore before proceeding therewith, that the Lessee shall be liable for all damages to any such other interest caused by any operations hereunder, and that the State shall not incur or be subject to any liability therefore.

28. **Wetlands Construction.** In the event the Lessee wishes to create wetlands on the Premises, prior to the creation of any wetlands the Lessee will provide its wetlands construction plan to the State for review and approval in writing by the Commissioner of Natural Resources. Such plan shall include the acreages and locations of wetlands to be created. A separate agreement

between the Lessee and the State will be necessary to address outstanding issues involving the state-owned lands and tailings and the created wetlands, such as compensation to the State for state-owned lands and tailings in the wetlands.

29. **No Waiver.**  No delay on the part of the State in enforcing any conditions in this lease, including termination for violation of the terms of this lease, shall operate as a waiver of any rights of the State.

30. **Construction of Lease.**  If any clause or provision of this lease is or becomes illegal, invalid, or unenforceable because of present or future laws or any rule or regulation of any governmental body, the intention of the State and Lessee is that the remaining parts of this lease shall not be affected thereby.

31. **Notices.**  Any notice given under this lease shall be in writing and served upon the other party either personally or by depositing such notice in the United States mail with proper first class postage and address.  Unless changed by written notice to all parties, the mailing address for the State shall be:  Director, Division of Lands and Minerals, Minnesota Department of Natural Resources, 500 Lafayette Road, St. Paul, Minnesota 55155-4045; and the mailing address for the Lessee shall be:  Mag Mining, LLC, 102 NE Third Street, Suite 120, Grand Rapids, Minnesota 55744.

33. **Miscellaneous.**  This lease contains the entire agreement of the parties hereto with respect to the use of the premises.  This lease may be modified only by a writing executed and delivered by both parties.  Nothing contained in this lease shall be deemed or construed to create a partnership or joint venture of or between the State and the Lessee, or to create any other relationship between the parties other than that of landlord and tenant.

IN TESTIMONY WHEREOF, the parties hereto have set their hands in triplicate the date and year first above written.

Signed in the Presence of:

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

As to State

By
Peter Clevenstine, Assistant Director
Division of Lands and Minerals

Signed in the Presence of:

*[signature]*

*[signature]*

*[signature]*

*[signature]*

As to Lessee

MAG MINING, LLC

By _____*[signature]*_____

By _____*[signature]*_____

STATE OF MINNESOTA    )
                      ) SS
COUNTY OF St. Louis   )

    This instrument was acknowledged before me this 7th day of January, 2015, by Peter Clevenstine, Assistant Director, Division of Lands and Minerals, Department of Natural Resources, on behalf of the State of Minnesota.

_____*[signature]*_____
Notary Public
My commission expires: January 31, 2020

VICTORIA H. SELLNER
NOTARY PUBLIC - MINNESOTA
My Comm. Exp. Jan. 31, 2020

STATE OF _Minnesota_ )
                    ) SS
COUNTY OF _Itasca_ )

        This instrument was acknowledged before me this _06_ day of _January_ , 2015,
by _Matt Lehtinen_ , as _President_
and by _Joe BroKing_ , as _CFO_
of Mag Mining, LLC, a Delaware limited liability company, on behalf of the company.

_Jannifer Lynn Johns_
Notary Public
My commission expires: _January 31, 2019_

JANNIFER LYNN JOHNSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

Office of Commissioner of Natural Resources
STATE OF MINNESOTA

I hereby certify that this instrument was filed in this office
on _January 7_ , 20_15_.

By _Victoria H. Sellner_

This Instrument was drafted by:

Minnesota Department of Natural Resources
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

Canisteo #1 Basin



MAP Exhibit 1

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS

FIRST AMENDMENT TO
LEASE FOR IRON-BEARING MATERIALS
NUMBERED R-125
CANISTEO MINE FIRST TAILINGS
BASIN NORTH AND SOUTH

This first amendment to Lease No. R-125 made this 25 day of April, 2016 and effective April 1, 2015, by and between THE STATE OF MINNESOTA, under authority and subject to the provisions of Minnesota Statutes 2014, Section 98.285, subd. 3, acting by and through its Commissioner of Natural Resources, hereinafter called the "State" and Mag Mining, LLC, a Delaware limited liability company, hereinafter called the "Lessee."

WITNESSETH

The Lessee currently holds State Lease for Iron-Bearing Materials Numbered R-125, hereinafter referred to as the "Lease," that remains in effect.

The Lessee has requested certain revisions to the lease terms.

NOW, THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES HERETO, THAT STATE IRON-BEARING MATERIALS LEASE NUMBERED R-125 is amended as follows:

1. **Paragraph 6 of the Lease is amended to read as follows:**

6. **Rental.** Commencing January 1, 2016, rental for the state-owned portion of the tailings basin shall be $13,955.00 per year for the term of the lease, payable on January 1 of each year.

Any amount paid for rental accrued for any calendar year shall be credited on royalty due only for iron-bearing materials mined and removed that may become due during the same calendar year in which the rental was due but no further, and only to the extent that such rental was paid or deposited into the particular fund to which the royalty for such iron-bearing materials is due. Rental paid for any calendar year shall not be credited on any royalty paid due to the failure to meet the quarterly production guarantee as specified in paragraph 11 herein. If this lease is canceled, terminated, or expires during a year for which rental has been paid, there shall be no reimbursement of the rental payment for that year.

1

2. **Paragraph 7 of the Lease is amended to read as follows:**

   7. **Royalty Payable.**
   (a)  The percent of iron recovered from the plant, hereinafter referred to as "Plant Iron Recovery", shall be determined by dividing the weight of the dry iron units in the concentrate by the weight of the dry iron units in the crude plant feed.

   (b)  From and after April 1, 2015, for calendar months in which monthly Plant Iron Recovery is at or below 50%, the base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be $0.42, subject to the escalator provisions of paragraph 8 herein.

   (c)  From and after April 1, 2015, for calendar months in which monthly Plant Iron Recovery is above 50%, the base royalty for each dry metric ton of iron-bearing materials mined from the Premises shall be determined using the following formula:

   $$\$0.42 \times \frac{\% \text{ plant iron recovery}}{50\%} = \text{new base royalty}$$

For example, if Plant Iron Recovery for a calendar month is 67%, the new base royalty for each dry metric ton of iron bearing materials mined from the Premises during that calendar month would be:

   $$\$0.42 \times \frac{0.67}{0.50} = \$0.5628/\text{ton}$$

The new base royalty is subject to the escalator provisions of paragraph 8 herein.

   (d)  The Lessee shall be liable for royalty on all state-owned iron-bearing materials mined  from the Premises.  The State owns all of the iron-bearing materials located in the Canisteo Mine First Tailings Basin North and South.

   (e)  Subject to the lien of the State as provided herein for any royalty payable thereon, iron-bearing materials so mined, upon which such royalty is paid or payable (and not delinquent) hereunder; and, the residues resulting from the treatment or processing shall be the property of the State.

   (f)  If Lessee elects to reprocess residues placed on the Premises which have been previously processed in the same metallurgical processing plant, Lessee shall assay said residues with analytical methods, commercial lab analyses, and representative samples, which are approved by the State, prior to any assays being conducted, to determine the iron content of such residues.   Assaying shall be at the sole expense of Lessee.  Lessee shall pay to the State a royalty on reprocessed residues at a rate per ton determined as follows:

   $$\$0.42 \times (\text{residue iron content}/0.2050) = \text{residue royalty rate per ton}$$

2

For example, if the reprocessed residue iron content is 16.78% (dry), the base royalty rate of residues is $0.3438 per ton.

$$\$0.42 \times (.1678/0.2050) = \$0.3438/ton$$

  (g) If the royalty due on the iron-bearing materials shall not be determined and accounted for as herein otherwise provided by the next quarterly payment date after the end of the quarter in which such iron-bearing materials are removed, the State may determine such royalty by such reasonable method as the State deems appropriate and give the Lessee written notice thereof, whereupon such royalty shall be due and payable within 20 days after the mailing or delivery of such notice, unless the time therefore shall be extended by the commissioner. Final settlement and adjustment of the royalty due shall be made as soon as determination becomes possible.

### 3. Paragraph 8(a) is hereby amended to read:

  (a) The royalties to be paid by the Lessee to the State on iron-bearing materials mined in each calendar quarter that the lease remains in force as hereinbefore specified shall be subject to increase by the monthly average price for iron ore published by Platts Steel Market Daily (FOB Brazil), defined as follows as the Brazil Price, as adjusted herein.

  *Brazil Price*
  Platts Steel Market Daily refers to a Brazil route under the caption currently titled "FOB netbacks per route/basis IODEX 62% Fe". The Brazil Price in dollars per dry metric ton is found under this caption in the column entitled "IODEX ($/dmt)". The monthly average of the daily published Brazil Price for the first month of each calendar quarter shall be used as the Brazil Price for purposes of calculating the royalty escalation for each calendar quarter. The monthly average shall be rounded to the nearest cent.

  *Iron Content Adjustment (62% iron to 65% iron)*
  The monthly average Brazil Price will be adjusted from 62% iron to 65% iron. Platts Steel Market Daily publishes a number in dollars per dry metric ton ($/dmt), currently titled in the daily publication as "Per 1% Fe differential (Range 60 - 63.5% Fe), $/dmt." The monthly average of the daily published price for 1% Fe differential (Range 60 – 63.5% Fe), in dollars per dry metric ton, shall be determined for the first month in each calendar quarter and used for determining the quarterly royalty escalator calculation. The monthly average Fe differential, rounded to the nearest cent, shall be multiplied by 3.00 to determine the iron content adjustment. The iron content adjustment figure shall be rounded to the nearest cent.

  *Adjusted Brazil Price*
  The iron content adjustment figure shall be added to the monthly average Brazil Price and the sum divided by 65. The resulting dollar figure, rounded to the nearest one-hundredth of a cent, shall then be converted into U.S. cents, hereinafter referred to as the Adjusted Brazil Price.

If the Adjusted Brazil Price per dry metric ton iron unit exceeds 101.00 (U.S. cents), which is the Base Brazil Price negotiated by the Lessee and the State, the excess shall be computed and this excess shall become the numerator of a fraction, the denominator of which shall be the Base Brazil Price, and the resulting fraction shall be multiplied by the base royalty rate per metric ton removed.

For example, if for July 2017, the monthly average published Brazil Price is 153.21 per dry metric ton, the monthly average published 1% Fe differential is 5.01, and the monthly Plant Iron Recovery is at or below 50%, the following adjustments will be made:

Iron Content Adjustment    $5.01 \times 3.00 = 15.03$
Adjusted Brazil Price      $(15.03 + 153.21)/65 = \$2.5883$ or 258.83 U.S. cents


Escalation to base royalty   $((258.83-101.00)/101.00) \times \$0.42 = \$0.6563$

In this example, the escalated royalty rate per dry metric ton for the third quarter of 2017 would be $1.0763.
($0.42 + $0.6563 = $1.0763)

Using the same example as above, except with a monthly Plant Iron Recovery of 67%, the escalation to the base royalty would be as follows:
$((258.83-101.00)/101.00) \times \$0.5628 = \$0.8795$

$0.5628 + $0.8795 = $1.4423  escalated royalty rate

In no event shall the escalated royalty rate per ton payable be less than the base royalty rate stated in Paragraph 7(b) for months in which monthly Plant Iron Recovery is at or below 50%. For months in which monthly Plant Iron Recovery is above 50%, in no event shall the escalated royalty rate per ton payable be less that the base royalty rate as calculated using the formula found in Paragraph 7(c).

4. **Paragraph 16 of the Lease is hereby amended to read:**

16. **Ownership of Iron-Bearing Residues Re-Deposited into the Canisteo Mine First Tailings Basin North and South.** Any iron-bearing residues resulting from the processing of iron-bearing materials mined from the Premises and re-deposited onto the Premises shall remain the property of the State.

The written approval of the State is required before any iron-bearing residues mined from other properties are deposited onto the Premises. Such iron-bearing residues become the property of the State upon deposition. Lessee shall keep an accounting of the amount of material deposited onto the Premises from other properties.

All residues placed on the Premises must be segregated from unmined iron-bearing materials. Lessee, in consultation with the engineering staff of the Department of Natural Resources,

Division of Lands and Minerals, shall designate a location for the deposition of residues to be reprocessed. This location must be identified in Lessee's mining and processing plan to be submitted to and approved by the State according to Paragraph 5 of this Lease.

5. For the period of April 1, 2015 through June 30, 2016, the royalty payable each quarter shall be reduced by 18%. This royalty reduction shall not apply to the royalty payable on reprocessed residues.

Except as expressly provided herein, all of the provisions of the Lease shall remain in full force and effect.

IN TESTIMONY WHEREOF, the parties hereto have set their hands in triplicate the date and year first above written.

Signed in the Presence of:

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

As to State

By
Jess Richards, Director
Division of Lands and Minerals

Signed in the Presence of:

MAG MINING, LLC

By _____ CFO

By _____ CEO

As to Mag Mining LLC

STATE OF MINNESOTA )
                   ) SS
COUNTY OF Ramsey   )

     This instrument was acknowledged before me this 25 day of April, 20 16,
by Jess Richards, Director, Division of Lands and Minerals, Department of Natural Resources,
on behalf of the State of Minnesota.

_____
Notary Public
My commission expires: 1/31/20

PATRICIA D KANDAKAI
Notary Public
Minnesota
My Commission Expires January 31, 2020

6

STATE OF _____MN_____ )
                                    ) SS
COUNTY OF ___Itasca___ )

This instrument was acknowledged before me this _8_ day of _January_, 20_16_
by_____Joe Broking_____, as _____CFO_____
and by _____Larry Lehtinen_____, as ____CEO_____
of Mag Mining, LLC, a Delaware limited liability company, on behalf of the company.

JANNIFER LYNN JOHNSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

Notary Public
My commission expires _January 31, 2019_

Office of Commissioner of Natural Resources
STATE OF MINNESOTA


I hereby certify that this instrument was filed in this office
on __April 27_____, 20_16_.

By _Vicki Sellner_____


This Instrument was drafted by:

Minnesota Department of Natural Resources
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES
DIVISION OF LANDS AND MINERALS

THIRD AMENDMENT TO
LEASE FOR IRON-BEARING MATERIALS
NUMBERED R-103, AND
SECOND AMENDMENT TO
LEASES FOR IRON-BEARING MATERIALS
NUMBERED R-108 AND R-125

This agreement, made this 25th day of January, 2017, by and between THE STATE OF MINNESOTA, under authority and subject to the provisions of Minnesota Statutes 2014, section 93.285, subd. 3, acting by and through its Commissioner of Natural Resources, hereinafter called the "State" and ERP IRON ORE, LLC., a Virginia limited  liability company, hereinafter called ERPI or the "Lessee",

<u>WITNESSETH</u>

In accordance with the *Order Granting Joint Motion for an Order (I) Approving the Sale of Substantially All of the Debtors' Remaining Assets, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (Dkt. No. 1197), entered December 21, 2016, in the jointly administered under the caption *In re Magnetation LLC, et al.*, 15-50307 (WJF) (Bankr. D. Minn.) (the "Bankruptcy Case"), and the Settlement Agreement, Mag Mining, LLC has assumed and assigned to ERPI the following state leases, as further amended pursuant to the Settlement Agreement, hereinafter defined as "Mining Leases":

Lease No. R-103, for iron-bearing materials, Canisteo Mine Second Tailings Basin North and South, dated October 3, 2011, as amended January 6, 2014 and April 25, 2016.

Lease No. R-108, for iron bearing materials, Buckeye Tailings Basin # 2, dated May 31, 2012, as amended April 25, 2016.

Lease No. R-125, for iron bearing materials, Canisteo Mine First Tailings Basin North and South, dated January 7, 2015, as amended April 25, 2016.

The assumption and assignment of the leases is set forth in the Assumption and Assignment, State of Minnesota Leases, dated January 25, 2017.

In resolving issues pending in the Bankruptcy Case, the State and the Lessee have agreed on certain terms and conditions of the assumption and assignment to ERPI of the Mining Leases. Without limitation, the State and ERPI entered into a Settlement Agreement, dated January 25, 2017 (the "Settlement Agreement").

11

102171263

"Settlement Agreement").

NOW, THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES HERETO, as follows:

1. **Royalties.**

As set forth in the Settlement Agreement at paragraph 5(b), ERPI hereby accepts all duties and obligations under the terms and conditions of said Mining Leases for the remainder of the lease terms, and for the payment of all Assumed Liabilities (as defined in the Settlement Agreement) as set forth in paragraph 5(b) of the Settlement Agreement.

In addition, and as set forth in the Settlement Agreement at paragraph 5(d), the Royalties and Other Costs (as defined in the Settlement Agreement) shall be deferred and paid on or before January 1, 2018, with payments in three equal installments on July 1, 2017, October 1, 2017 and January 1, 2018.

2. **Event of Default.**

In consideration for the State's deferral of the payment of these amounts due to the State, ERPI agrees that failure by ERPI to make timely payments of the Royalties and Other Costs pursuant to the schedule set forth in paragraph 5(d) of the Settlement Agreement shall constitute an immediate event of default with respect to each and every one of the Mining Leases (an "Event of Default"). In the Event of Default, the unpaid amount of the Royalties and Other Costs due and owing shall constitute a lien on all real and personal property of ERPI in favor of the State, without need for further demand of ERPI by the State.

Except as expressly provided herein, all of the provisions of the Mining Leases shall remain in full force and effect.

IN TESTIMONY WHEREOF, the parties hereto have hereunto set their hands in triplicate the date and year first above written.

Signed in Presence of:

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____

Jess Richards, Director
Division of Lands and Minerals

As to State

12

102171263

Signed in Presence of:

As to ERP Iron Ore, LLC

ERP IRON ORE, LLC

By _____
Title: Authorized Signatory

STATE OF _____VA_____ )
                                              ) SS
COUNTY OF _Rockbridge_ )

     The foregoing instrument was acknowledged before me this _6_ day of _January_, 20_17_, by Thomas Clarke, as Authorized Signatory of ERP IRON ORE, LLC, a Virginia limited liability company, on behalf of the company.



_Jennifer Elaine Bell_
Notary Public
My commission expires: _10|31|2020_

17

102171263

Signed in Presence of:                    ERP IRON ORE, LLC


_____            By_____
                                              Title: Authorized Signatory

_____
As to ERP Iron Ore, LLC



STATE OF MINNESOTA          )
                                      ) SS
COUNTY OF _Ramsey_____)


        The foregoing instrument was acknowledged before me this _20th_ day of
_January____, 20_17_ by Jess Richards, Director, Division of Lands and Minerals, Department
of Natural Resources, on behalf of the State of Minnesota.


KATHERINE EMILY GIEL
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2021

                                _____
                                Notary Public
                                My commission expires: _Jan. 31, 2021_



STATE OF _____)
                                      ) SS
COUNTY OF _____)


        The foregoing instrument was acknowledged before me this _____ day of_____,
20____, by Thomas Clarke, as Authorized Signatory of ERP Iron Ore, LLC, a Virginia limited
liability company, on behalf of the company.



                                _____
                                Notary Public
                                My commission expires: _____



13

102171263

This Instrument was drafted by:

DEPT. OF NATURAL RESOURCES
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

14

I02171263

ASSUMPTION AND ASSIGNMENT
STATE OF MINNESOTA LEASES

Effective this 25th day of January, 2017, and in accordance with the *Order Granting Joint Motion for an Order (I) Approving the Sale of Substantially All of the Debtors' Remaining Assets, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (Dkt. No. 1197), entered December 21, 2016, in the case captioned *In re Magnetation, LLC, et al.*, No. 15-50307 (WJF) (Bankr. D. Minn. 2015), and that certain Settlement Agreement - State of Minnesota made as of January 25, 2017, Magnetation LLC and Mag Mining LLC hereby assume and assign the following state leases to ERP Iron Ore, LLC ("ERPI"), each as amended:

Lease No. R-103, for iron-bearing materials, Canisteo Mine Second Tailings Basin North and South, dated October 3, 2011.

Lease No. R-108, for iron bearing materials, Buckeye Tailings Basin # 2, dated May 31, 2012.

Lease No. R-125, for iron bearing materials, Canisteo Mine First Tailings Basin North and South, dated January 7, 2015.

Iron Ore Mining Lease No. 2105-N, dated March 7, 2013.

Iron Ore Mining Lease No. 2106-N, dated March 7, 2013.

Iron Ore Mining Lease No. 2107-N, dated March 7, 2013.

Iron Ore Mining Lease No. 2108-N, dated March 7, 2013.

Iron Ore Mining Lease No. I-5015-N, dated March 7, 2013.

LMIS000786, dated July 1, 2012.

LMIS000790, dated July 1, 2012.

Agreement for Maintenance and Use of DNR Water Level Observation Well By and Between The State of Minnesota and Magnetation, LLC, dated June 19, 2013.

102171263

IN TESTIMONY WHEREOF, the parties hereto have hereunto set their hands in triplicate the date and year first above written.

Signed in Presence of:

MAGNETATION LLC

By _Michael O. J Talarico_
Title: Chief Restructuring Officer

_Larry Leht_

As to Magnetation LLC

STATE OF _Minnesota_ )
                                        ) SS
COUNTY OF _Itasca_ )

HOPE ELIZABETH WILSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

The foregoing instrument was acknowledged before me this 13th day of _January_, 20 17, by Michael Talarico, as Chief Restructuring Officer of MAGNETATION LLC, a Delaware limited liability company, on behalf of the company.

_Hope Elizabeth Wilson_
Notary Public
My commission expires: 1|31|2019

Signed in Presence of:

MAG MINING LLC

By _Michael O. J Talarico_
Title: Chief Restructuring Officer

_Larry Leht_

As to Mag Mining, LLC

STATE OF _Minnesota_ )
                                        ) SS
COUNTY OF _Itasca_ )

HOPE ELIZABETH WILSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019

The foregoing instrument was acknowledged before me this 13th day of _January_, 20 17, by Michael Talarico, as Chief Restructuring Officer of MAG MINING, LLC, a Delaware limited liability company, on behalf of the company.

_Hope Elizabeth Wilson_
Notary Public
My commission expires: 1|31|2017

16

102171263

Signed in Presence of:

C. Vasylenko.

As to ERP Iron Ore, LLC

ERP IRON ORE, LLC

By _____
Title: Authorized Signatory

STATE OF ___VA_____ )
                                    ) SS
COUNTY OF _Rockbridge_ )

The foregoing instrument was acknowledged before me this _6_ day of _January_, 20_17_, by Thomas Clarke, as Authorized Signatory of ERP IRON ORE, LLC, a Virginia limited liability company, on behalf of the company.



Jennifer Elaine Bell
Notary Public
My commission expires: _10|31|2020_

17

102171263

The State of Minnesota, acting through its commissioner of natural resources, hereby consents to the above assignment and assumption of state leases this 26th day of January, 2017.

Signed in Presence of:

STATE OF MINNESOTA
DEPARTMENT OF NATURAL RESOURCES

By _____
Jess Richards, Director
Division of Lands and Minerals

_As to State_

STATE OF MINNESOTA      )
                        ) SS
COUNTY OF Ramsey        )

The foregoing instrument was acknowledged before me this 26th day of January, 20 17 by Jess Richards, Director, Division of Lands and Minerals, Department of Natural Resources, on behalf of the State of Minnesota.

KATHERINE EMILY GIEL
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2021.

_____
Notary Public
My commission expires: Jan. 31, 2021

This Instrument was drafted by:

DEPT. OF NATURAL RESOURCES
Division of Lands and Minerals
500 Lafayette Road
St. Paul, MN 55155-4045

9

102171263