UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>ERP Iron Ore, LLC,<br><br>       Debtor. | Chapter 7<br>BKY 18-50378 (WJF) |
| Nauni Manty, as chapter 7 trustee of the bankruptcy estate of the debtor,<br><br>       Plaintiff,<br><br>v.<br><br>Lighthouse Management Group, Inc., as Administrative Agent,<br><br>       Defendant. | Adv. No. _____<br><br>**COMPLAINT** |

Plaintiff Nauni Manty, as chapter 7 trustee of the bankruptcy estate of the debtor, for her complaint against Lighthouse Management Group, Inc., as Administrative Agent, states and alleges as follows:

1.	This complaint seeks avoidance of mortgage liens under 11 U.S.C. §§ 547, 550 and 551 in both real property and current and future proceeds from the sale of real property and the determination of priority of certain liens in personal and real property and the current and future proceeds therefrom.

**JURISDICTION, VENUE AND PARTIES**

2.	This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) as an action arising in or related to a case under title 11. This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A), (F) and (O). The debtor's bankruptcy case was commenced

by the filing of an involuntary petition for relief under chapter 7 on May 25, 2018. On July 16, 2018, the debtor consented to relief under the bankruptcy code. On July 17, 2018, the court ordered relief and on that same day, the debtor voluntarily converted the case to a case under chapter 11. The case was converted to a case under chapter 7 on December 1, 2018. This case is now pending in this court.

3. This adversary proceeding arises under 11 U.S.C. §§ 547, 550 and 551. This complaint is filed under Fed. R. Bankr. P. 7001(1).

4. Ms. Manty was appointed as the chapter 7 trustee of the debtor's bankruptcy estate on December 3, 2018. The trustee has standing to commence this adversary proceeding pursuant to 11 U.S.C. §§ 547, 550 and 551.

5. Venue of this adversary proceeding is proper pursuant to 28 U.S.C. § 1409.

6. The trustee consents to entry of final orders or judgment by the bankruptcy court.

7. The debtor was formed to acquire certain assets from Magnetation LLC and certain of its affiliates. During the course of the chapter 11 bankruptcy cases of Magnetation LLC and related debtors (together, "Magnetation"), which cases were jointly administered under Case No. 15-50307 in the United States Bankruptcy Court for the District of Minnesota, the bankruptcy court approved the sale of substantially all of Magnetation's assets, including the property involved in this adversary proceeding, to the debtor.

8. The defendant is a corporation organized under the laws of Minnesota with its principal place of business located at 900 Long Lake Road, Suite 180, New Brighton, Minnesota 55112. The defendant is administrative agent for certain mechanic's and/or miner's lien claimants.

# FACTS

9. At the time of filing, the debtor's assets included those commonly known as: (a) Plant 1, including the real property owned by the debtor and the improvements thereon, located near Keewatin, Minnesota with a mailing address of 35001 County Road 571, Keewatin, Minnesota; (b) Plant 2, including the real property owned by the debtor and the improvements thereon, located near Bovey, Minnesota with a mailing address of 27692 County Road 10, Bovey, Minnesota; (c) Jesse Load-Out, including the real property owned by the debtor and the improvements thereon, located near Grand Rapid, Minnesota with a mailing address of 27038 Midway Pit Haul Road, Grand Rapids, Minnesota; (d) Plant 4, which is real property leased by the debtor and improvements thereon located at or around 28754 County Road 61, Grand Rapids, Minnesota; and (e) other parcels of real property located in Itasca and St. Louis County, Minnesota. [Doc. No. 99 at 5-6 and Doc. No. 225 at p. 9, 11-12].

10. During the course of the chapter 7 case, the trustee sold certain of the debtor's assets, consisting of real and personal property.

11. Prairie River Minerals, LLC purchased certain of the debtor's real and personal property associated with Plant 1 and Jesse Load-Out, as such property is detailed and described in the amended order approving the sale. [Doc. No. 494, which amends Doc. No. 460]. Prairie River Minerals paid the estate $1,950,000.00 in connection with said sale. The order provides that:

> All liens, encumbrances or other interests on the property sold, including without limitation any liens, encumbrances or other interests held by Wilmington Savings Fund Society, FSB, as Indenture Trustee, Merida National Resources, LLC, Progress Rail Leasing Corporation, and Lighthouse Management Group, Inc., as administrative agent for certain mechanic's and/or miner's lien claimants, shall attach to the proceeds of the sale of the property with the same dignity, priority and extent as held against the property prior to the sale and such proceeds shall be held by the trustee in a segregated account pending further order of the court. Notwithstanding anything set forth in the trustee's sale motion or herein, any issues as to the characterization of the Property as real or personal property and as to

3

> priority of the secured creditors that assert liens in and to such Property can be determined at a later time and all of the secured creditors' rights as to such issues are hereby fully reserved, including any rights of offset or other claims and defenses that may be asserted by the trustee. The trustee's rights, if any, to surcharge are preserved.

[Doc. No. 494 at p.13 ¶ 8]. Pursuant to the order, the trustee is holding the net sale proceeds in a segregated account.

12.     MJM Minerals, LLC purchased certain of the debtor's real and personal property associated with Plant 2, as such property is detailed and described in the order approving the sale. [Doc. No. 477]. MJM Minerals paid the estate $1,700,000.00 in connection with said sale. The order provides that:

> All liens, encumbrances or other interests on the property sold, including without limitation any liens, encumbrances or other interests held by Wilmington Savings Fund Society, FSB, as Indenture Trustee, Merida National Resources, LLC, Progress Rail Leasing Corporation, and Lighthouse Management Group, Inc., as administrative agent for certain mechanic's and/or miner's lien claimants, shall attach to the proceeds of the sale of the property with the same dignity, priority and extent as held against the property prior to the sale and such proceeds shall be held by the trustee in a segregated account pending further order of the court. Notwithstanding anything set forth in the trustee's sale motion or herein, any issues as to the characterization of the property as real or personal property and as to priority of the secured creditors that assert liens in and to such property can be determined at a later time and all of the secured creditors' rights as to such issues are hereby fully reserved, including any rights of offset or other claims and defenses that may be asserted by the trustee. The trustee's rights, if any, to surcharge are preserved.

*Id.* at p. 4 ¶ 5. Pursuant to the order, the trustee is holding the net sale proceeds in a segregated account (together, the current and any future proceeds from the Prairie River Minerals' sale and the MJM Minerals' sale are the "Sale Proceeds").

13.     Prior to the filing, Wilmington Savings Fund Society, FSB, as Trustee, Collateral Agent, Paying Agent, Registrar and Calculation Agent ("Wilmington"), the debtor, and others entered into that certain Rate Senior Secured Amortizing PIK Toggle Notes Indenture dated as of January 30, 2017 (the "Indenture").

14. Pursuant to the Indenture, the debtor issued Floating Rate Senior Secured Amortizing PIK Toggle Notes (together with an PIK Notes (as defined in the Indenture) issued from time to time as permitted under the Indenture, the "Notes"), in the original, aggregate principal amount of $22,500,000.

15. The Notes are secured by a Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated July 19, 2017, executed by the debtor, as Mortgagor, to Wilmington, as Mortgagee, and recorded on July 21, 2017, with the Office of the St. Louis County Registrar of Titles, as Document No. 987511.0 for property described therein (the "St. Louis County Mortgage"). The St. Louis County Mortgage encumbers only the debtor's Torrens parcels in St. Louis County described therein. A true and correct copy of the St. Louis County Mortgage is attached as Exhibit 1 and incorporated herein.

16. The Notes are also secured by a Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated August 11, 2017, executed by the Debtor, as Mortgagor, to Wilmington, as Mortgagee, and recorded on August 24, 2017, with the Office of the Itasca County Registrar of Titles, as Document No. T000063622 for property described therein (the "Itasca County Mortgage"). The Itasca County Mortgage encumbers only the debtor's Torrens parcels described therein. A true and correct copy of the Itasca County Mortgage is attached as Exhibit 2 and incorporated herein.

17. The Notes are also secured by that certain Security Agreement made by the debtor and others in favor of Wilmington dated as of January 30, 2017, pursuant to which the debtor granted to Wilmington another security interest in all of the debtor's assets.

18. Wilmington perfected its security interests by filing a UCC Financing Statement with the Virginia Secretary of State's Office on February 3, 2017, as Document No. 1702033951-

3 and with the Minnesota Secretary of State's Office on February 3, 2017, as Document No. 932569300034.

19. On September 20, 2018, Wilmington filed a claim in the bankruptcy case (Claim No. 21) asserting a secured claim in an amount not less than $15,314,457.64 (the "Wilmington Secured Claim").

20. On December 17, 2018, Wilmington, Progress Rail Leasing Corporation, Merida Natural Resources, LLC, Thomas M. Clarke and Ana M. Clarke commenced an adversary proceeding against White County, Indiana, the Trustee and Lighthouse Management Group, Inc., Adversary No. 18-05034 (the "Adversary Proceeding").

21. On August 23, 2019, the trustee and Wilmington participated in a mediation before The Honorable Michael E. Ridgway and thereafter settled the claims against one another in connection with the Adversary Proceeding, including Wilmington's interest in the current and future proceeds from the sale of Wilmington's collateral in Minnesota (the "Minnesota Proceeds"). The Sale Proceeds, the Minnesota Proceeds, and the proceeds of any other real or personal property or monies being held by the trustee for non-avoidance action proceeds, whether current or future proceeds, may be referred to as "All Proceeds."

22. To evidence the settlement, the trustee and Wilmington entered into a Settlement Agreement dated October 24, 2019.

23. Pursuant to the Settlement Agreement, the trustee paid Wilmington $7,075,942.33 and the trustee and Wilmington entered into a Participation of Note and Mortgages pursuant to which Wilmington granted the trustee a 100% participation in Wilmington's interest in the current and future Minnesota Proceeds as well as its interest in the remaining Torrens real property and personal property that had not been sold and the future proceeds therefrom.

24. On October 22, 2019, the trustee filed an amended notice of settlement in the bankruptcy case regarding her settlement with Wilmington. [Doc. No. 511].

25. The bankruptcy court approved the settlement by Order dated November 6, 2019. [Doc. No. 522].

26. The defendant serves as administrative agent under a Settlement Agreement and Release dated January 27, 2017 (the "Settlement Agreement") and entered into in connection with the sale of assets to the debtor in the Magnetation bankruptcy cases. A true and correct copy of the Settlement Agreement is attached as <u>Exhibit 3</u> and incorporated herein.

27. In connection with the Settlement Agreement, the debtor executed a Promissory Note in favor of the defendant dated January 27, 2017, in the original principal amount of $32,017,807.74 (the "Note") and a Security Agreement dated January 27, 2017 (the "Security Agreement"). A true and correct copy of the Note is attached as <u>Exhibit 4</u> and incorporated herein. A true and correct copy of the Security Agreement is attached as <u>Exhibit 5</u> and incorporated herein.

28. Pursuant to the Settlement Agreement, the obligations under the Note will be secured pursuant to the terms of a security agreement and certain mortgages described in the security agreement. *See* Ex. 3 at ¶ 2(b). The Settlement Agreement also provides that the mortgages will encumber all of the property acquired by the debtor, whether a fee interest or a leasehold interest. *Id.*

29. As security for the Note, the debtor executed certain mortgages in favor of the defendant, including a Mortgage and Assignment of Rents and Leases, which was recorded with the White County, Indiana recorder on December 29, 2017, as Document No. 171207835, and a Mortgage dated July 19, 2017, which was recorded with the Office of the Registrar of Titles for St. Louis County, Minnesota on July 21, 2017, as Document No. 987512.0.

30. As security for the Note, the debtor also executed a Mortgage in favor of the defendant dated January 15, 2018, and recorded in the office of the Registrar of Title for Itasca County on January 18, 2018, as Document No. T000064134 (the "Original Itasca County Mortgage"). The real property included in the Original Itasca County Mortgage is set forth in *Exhibit A* to the mortgage. A true and correct copy of the Original Itasca County Mortgage is attached as Exhibit 6 and is incorporated herein. As you can see from the Original Itasca County Mortgage, various abstract parcels were not included.

31. The Original Itasca County Mortgage was subsequently revised to include the abstract parcels by the Modification to Mortgage dated April 27, 2018, and recorded in the Office of the Registrar of Title for Itasca County, Minnesota on May 18, 2018, as Doc. No. T000064493, and the Office of the County Recorder for Itasca County, Minnesota on May 18, 2018, as Doc. No. A000722329 (the "First Modification"). The First Modification provides that it expands the property (as defined in the Original Itasca County Mortgage) to include real estate as set forth in *Exhibit B* to the modification. This expansion and recording included the Itasca County abstract property. A true and correct copy of the First Modification is attached as Exhibit 7 and is incorporated herein.

32. The Original Itasca County Mortgage was also modified by the Second Modification to Mortgage dated April 27, 2018, and recorded in the Office of the Registrar of Title for Itasca County, Minnesota on May 18, 2018, as Doc. No. T000064494, and the Office of the County Recorder for Itasca County, Minnesota on May 18, 2018, as Doc. No. A000722330. The Second Modification provides that it further expands the property (as defined in the Original Itasca County Mortgage) to include the debtor's leasehold interest in certain abstract property as set forth

in the modification. A true and correct copy of the Second Modification is attached as <u>Exhibit 8</u> and is incorporated herein.

33. Under Minnesota law, a mortgage lien is perfected upon recording with the appropriate county office, which is the county registrar of titles for property classified as Torrens and the county recorder's office for property classified as abstract. The property included in the Original Itasca County Mortgage is classified as Torrens property. The additional property included in the First Modification and the Second Modification are classified as abstract.

34. On and prior to the dates the First Modification and the Second Modification were recorded, the defendant was a creditor of the debtor, and held a claim and a debt against the debtor. *See* Ex. 4.

35. Unsecured creditors of the debtor are not expected to recover 100% of their claims in the chapter 7 bankruptcy case.

**COUNT I – PREFERENCE**
**(As to the First Modification)**

36. The trustee restates and realleges all previous paragraphs as though fully set forth herein.

37. Section 547(b) of the bankruptcy code permits avoidance of a transfer: (1) of the debtor's interest in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed to the debtor before the transfer was made; (4) made while the debtor was insolvent; (5) made within 90 days prior to the bankruptcy filing or up to one-year prior to the bankruptcy filing if the creditor was an insider; (6) that enabled the creditor to receive more than it would have had the transfer not been made and if the creditor received an ordinary distribution as a creditor in the debtor's chapter 7 bankruptcy case.

9

38. The trustee conducted due diligence in the circumstances of the case and taking into account the defendant's known or reasonably known affirmative defenses. The trustee has had numerous conversations with the attorneys for the defendant in connection with the preference claim and the defendant's claimed affirmative defenses. It is the trustee's position that the affirmative defenses raised by the defendant are not viable and/or complete defenses.

39. The recording of the First Modification is a transfer of an interest of the debtor in the abstract property.

40. Prior to and at the time of the transfer, the defendant was a creditor of the debtor.

41. The transfer was made on account of antecedent debt owed by the debtor to the defendant.

42. The recording of the First Modification occurred on May 18, 2018, which is within 90 days prior to the debtor's bankruptcy filing.

43. The debtor was insolvent at the time of the transfer.

44. The transfer enabled the defendant to receive more than it would have received if the transfer had not been made and if the defendant received payment of such debt in a chapter 7 bankruptcy case, as an unsecured creditor.

45. Therefore, the trustee seeks an order determining that the First Modification is avoided, including All Proceeds and including any parcels of real property related to the First Modification.

46. Pursuant to 11 U.S.C. § 550(a), the trustee may recover, for the benefit of the bankruptcy estate, the interest in the property transferred, or, if the court so orders, the value of such property interest.

47. To the extent that the defendant is not the initial transferee of the transfer, it is the immediate or mediate transferee of the initial transferee of the transfer and cannot satisfy the burden that it took the transfer for value in good faith or without knowledge of the voidability of the transfer.

48. Pursuant to 11 U.S.C. § 551, the avoided First Modification and All Proceeds and parcels of abstract property associated with the First Modification are preserved for the benefit of the bankruptcy estate.

### COUNT II – PREFERENCE
### (As to the Second Modification)

49. The trustee restates and realleges all previous paragraphs as though fully set forth herein.

50. Section 547(b) of the bankruptcy code permits avoidance of a transfer: (1) of the debtor's interest in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed to the debtor before the transfer was made; (4) made while the debtor was insolvent; (5) made within 90 days prior to the bankruptcy filing or up to one-year prior to the bankruptcy filing if the creditor was an insider; (6) that enabled the creditor to receive more than it would have had the transfer not been made and if the creditor received an ordinary distribution as a creditor in the debtor's chapter 7 bankruptcy case.

51. The trustee conducted due diligence in the circumstances of the case and taking into account the defendant's known or reasonably known affirmative defenses. The trustee has had numerous conversations with the attorneys for the defendant in connection with the preference claim and the defendant's claimed affirmative defenses. It is the trustee's position that the affirmative defenses raised by the defendant are not viable and/or complete defenses.

52. To the extent that the property included in the Second Modification includes property that is titled and owned by the debtor, the recording of the Second Modification is a transfer of an interest of the debtor in property.

53. Prior to and at the time the transfer, the defendant was a creditor of the debtor.

54. The transfer was made on account of antecedent debt owed by the debtor to the defendant.

55. The recording of the Second Modification occurred on May 18, 2018, which is within 90 days prior to the debtor's bankruptcy filing.

56. The debtor was insolvent at the time of the transfer.

57. To the extent that the property included in the Second Modification includes property that is titled and owned by the debtor, the transfer enabled the defendant to receive more than it would have received if the transfer had not been made and if the defendant received payment of such debt in a chapter 7 bankruptcy case, as an unsecured creditor.

58. Therefore, to the extent that the property included in the Second Modification includes property titled and owned by the debtor, the trustee seeks an order determining that the Second Modification is avoided, including All Proceeds associated with the Second Modification.

59. Pursuant to 11 U.S.C. § 550(a), the trustee may recover, for the benefit of the bankruptcy estate, the interest in the property transferred, or, if the court so orders, the value of such property interest.

60. To the extent that the defendant is not the initial transferee of the transfer, it is the immediate or mediate transferee of the initial transferee of the transfer and cannot satisfy the burden that it took the transfer for value in good faith or without knowledge of the voidability of the transfer.

61.     Pursuant to 11 U.S.C. § 551, to the extent that the Second Modification and All Proceeds associated with the Second Modification are avoided, they are preserved for the benefit of the bankruptcy estate.

### COUNT III – PRIORITY – DECLARATORY JUDGMENT

62.     The trustee restates and realleges all previous paragraphs as through fully set forth herein.

63.     The St. Louis County Mortgage and the Itasca County Mortgage were recorded against the real and personal property described therein before the defendant recorded its mortgages against the same property.

64.     The UCC Financing Statements filed by Wilmington in both Virginia and Minnesota were filed before the defendant filed its UCC Financing Statements against the same assets.

65.     The trustee's right to All Proceeds, personal property and the Torrens real property is prior and superior to any interest claimed by the defendant in this action.

66.     The trustee is entitled to a declaratory judgment in her favor declaring that her right to All Proceeds, personal property and Torrens real property is prior and superior to any interest claimed by defendant in this action.

**WHEREFORE**, the trustee prays for judgment against the defendant, as follows:

a.  Under Count I, for avoidance and recovery of the First Modification, including All Proceeds and abstract parcels of real property associated with the First Modification 11 U.S.C. §§ 547, 550 and 551;

b.  Under Count II, to the to the extent that the property included in the Second Modification includes property titled and owned by the debtor, for avoidance and recovery of the Second Modification, including All Proceeds associated with the Second Modification under 11 U.S.C. §§ 547, 550 and 551;

    c.      Under Count III, for an order declaring that the trustee's right to All Proceeds, Torrens real property and personal property is prior and superior to any interest claimed by the defendant in this action;

    d.      For the trustee's costs and disbursements herein;

    e.      For pre- and post-judgment interest as allowed by law; and

    f.      For such other and further relief as the court deems just and equitable.

Dated: May 19, 2020                                  MANTY & ASSOCIATES, P.A.

                                                        */e/ Nauni Manty*
                                                        Nauni Manty (#230352)
                                                        Jacqueline J. Williams (#386611)
                                                        401 Second Avenue North, Suite 400
                                                        Minneapolis, MN 55401
                                                        Telephone: (612) 465-0990
                                                        Email: nauni@mantylaw.com
                                                        Email: jwilliams@mantylaw.com

                                                        *Attorneys for the Trustee*

## **VERIFICATION**

I, Nauni Manty, the trustee and plaintiff named in the complaint, declare under penalty of perjury that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief.

Dated: May 19, 2020

_____
Nauni Manty, Trustee